

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
10/04/2019

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| | § | **Case No. 19-35654 (MI)** |
| **EP ENERGY CORPORATION**, *et al.*,[1] | § | |
| | § | **Jointly Administered** |
| | § | |
| Debtors. | § | |

**CORRECTED INTERIM ORDER PURSUANT TO**
**11 U.S.C. §§ 105, 361, 362, 363, 503 AND 507 AND BANKRUPTCY RULES**
**2002, 4001 AND 9014 (I) AUTHORIZING USE OF CASH COLLATERAL, (II)**
**GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,**
**(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated October 4, 2019 (the "**Motion**"),[2] of EP Energy Corporation

(the "**Company**") and certain of its subsidiaries and affiliates, including EP Energy LLC

(the "**Borrower**"; the Borrower and its direct and indirect subsidiaries, the "**Credit Parties**"), as

debtors and debtors-in-possession (collectively with the Company, the "**Debtors**")[3] in the above-

captioned chapter 11 cases (the "**Chapter 11 Cases**") commenced on October 3, 2019 (the

"**Petition Date**") for interim and final orders pursuant to sections 105, 361, 362, 363, 503 and 507

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy**

**Code**"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the

"**Bankruptcy Rules**"), and Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Local Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

[3] All of the Credit Parties are Debtors; however, the Company is not a Credit Party.

the United States Bankruptcy Court for the Southern District of Texas (this "**Court**") and the

Southern District of Texas Complex Chapter 11 Case Procedures (together, the "**Local Rules**")

seeking authorization for the Debtors to:

(I)      use cash collateral (as such term is defined in section 363(a) of the Bankruptcy

Code, the "**Cash Collateral**") pursuant to section 363 of the Bankruptcy Code, subject to material

compliance with the Budget (as defined herein), and provide adequate protection to the following

parties with respect to the applicable prepetition secured debt obligations of:

(a)      the lenders party to the RBL Credit Agreement (as defined herein) (the "**RBL Lenders**") and the other Secured Parties, including the Hedge Banks party to Hedge Transactions (each as defined in the RBL Credit Agreement) (collectively, solely in their capacities as such, the "**RBL Secured Parties**") and JPMorgan Chase Bank, N.A., as administrative agent and collateral agent for the RBL Secured Parties (in such capacities, the "**RBL Agent**") under that certain Credit Agreement, dated as of May 24, 2012 (as amended, restated, amended and restated, supplemented or otherwise modified as of the Petition Date, the "**RBL Credit Agreement**", and together with all security, pledge and guaranty agreements and all other Credit Documents and Hedge Agreements (as defined therein), each as amended, restated, amended and restated, supplemented or otherwise modified as of the Petition Date, the "**RBL Documents**") among the Borrower in its capacity as borrower thereunder, EPE Acquisition LLC, as Holdings, the RBL Lenders and the RBL Agent;

(b)      the noteholders (collectively and solely in their capacities as such, the "**Intermediate Lien Noteholders**") under (i) the Indenture, dated as of November 29, 2016 (as amended, supplemented or otherwise modified as of the Petition Date, the "**1.25 Lien Indenture**") among the Borrower and Everest Acquisition Finance Inc. as issuers thereunder, the subsidiary guarantors party thereto and Wilmington Trust, National Association, as trustee (in such capacity, the "**1.25 Lien Indenture Trustee**") and as collateral agent (in such capacity, the "**1.25 Lien Collateral Agent**"); and (ii) the Indenture, dated as of May 23, 2018 (as amended, supplemented or otherwise modified as of the Petition Date, the "**1.125 Lien Indenture**" and collectively with the 1.25 Lien Indenture the "**Intermediate Lien Indentures**") and the notes issued pursuant to the Intermediate Lien Indentures the "**Intermediate Lien Notes**" and the Intermediate Lien Indentures together with the other documents governing the Intermediate Lien Notes the "**Intermediate Lien Debt Documents**") among the Borrower and Everest Acquisition Finance Inc. as issuers thereunder, the subsidiary guarantors party thereto and Wilmington Trust, National Association, as trustee (in such capacity, the "**1.125 Lien Indenture Trustee**" and collectively with the 1.25 Lien Indenture Trustee the "**Intermediate**

Lien Indenture Trustees") and as collateral agent (in such capacity, the "**1.125 Lien Collateral Agent**" and collectively with the 1.25 Lien Collateral Agent the "**Intermediate Lien Collateral Agents**"); and

(c)    the noteholders (collectively and solely in their capacities as such, the "**1.5 Lien Noteholders**") under (i) the Indenture, dated as of February 6, 2017 (as amended, supplemented or otherwise modified as of the Petition Date, the "**8.00% 1.5 Lien Indenture**") among the Borrower and Everest Acquisition Finance Inc. as issuers thereunder, the subsidiary guarantors party thereto and Wilmington Trust, National Association, as trustee (in such capacity, the "**8.00% 1.5 Lien Indenture Trustee**") and as collateral agent (in such capacity, the "**8.00% 1.5 Lien Collateral Agent**"); and (ii) the Indenture, dated as of January 3, 2018 (as amended, supplemented or otherwise modified as of the Petition Date, the "**9.375% 1.5 Lien Indenture**," and collectively with the 8.00% 1.5 Lien Indenture, the "**1.5 Lien Indentures**," and the notes issued pursuant to the 1.5 Lien Indentures, the "**1.5 Lien Notes**," and the 1.5 Indentures together with the other documents governing the 1.5 Lien Notes, the "**1.5 Lien Debt Documents**," and the 1.5 Lien Debt Documents together with the Intermediate Lien Debt Documents and the RBL Documents, the "**Prepetition Debt Documents**") among the Borrower and Everest Acquisition Finance Inc., as issuers thereunder, the subsidiary guarantors party thereto, and Wilmington Trust, National Association, as trustee (in such capacity, the "**9.375% 1.5 Lien Indenture Trustee**," and collectively with the 8.00% 1.5 Lien Indenture Trustee, the "**1.5 Lien Indenture Trustees**" and, together with the Intermediate Lien Indenture Trustees the "**Junior Lien Trustees**"), and as collateral agent (in such capacity, the "**9.375% 1.5 Lien Collateral Agent**," and collectively with the 8.00% 1.5 Lien Collateral Agent, the "**1.5 Lien Collateral Agents**" and, together with the Intermediate Lien Collateral Agents the "**Junior Lien Collateral Agents**"; and the Junior Lien Collateral Agents collectively with the Junior Lien Trustees, the RBL Agent, the RBL Secured Parties, the Intermediate Lien Noteholders and the 1.5 Lien Noteholders, the "**Prepetition Secured Parties**");

(II)    subject to entry of the Final Order (as defined herein), the waiver by the Debtors of any right to seek to surcharge against the Prepetition Collateral (as defined herein) pursuant to section 506(c) of the Bankruptcy Code and the waiver by the Debtors of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral;

(III)    subject to entry of the Final Order, authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Credit Parties' claims and causes of action arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code or any other state or federal law (collectively, the "**Avoidance Actions**");

(IV)     to schedule, pursuant to Bankruptcy Rule 4001, a hearing (the "**Interim Hearing**") for this Court to consider entry of an interim order (this "**Order**") authorizing and approving the interim relief requested in the Motion;

(V)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of the Final Order (the "**Final Order**") authorizing and approving on a final basis the relief requested in the Motion;

(VI)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order; and

(VII)     waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Order and providing for the immediate effectiveness of this Order.

The Interim Hearing having been held by this Court on October 3, 2019, and upon the record made by the Debtors at the Interim Hearing, including without limitation, the admission into evidence of the *Declaration of David Rush in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* filed on the Petition Date, and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED, AND ADJUDGED**, that:

1.     *Jurisdiction.*   This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice.*  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on: (a) the Office of the United States Trustee for the Southern District

of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (c) counsel to the RBL Agent, Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002-2730 (Attn:  Charles S. Kelley, Esq.), and Mayer Brown LLP, 71 S. Wacker Drive, Chicago, IL 60606 (Attn: Sean T. Scott, Esq.); (d) counsel to Apollo Global Management, LLC , Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019 (Attn: Jeffrey Saferstein, Esq. and Jacob A. Adlerstein, Esq.); (e) counsel to J. Aron & Company, Willkie Farr & Gallagher LLP 787 Seventh Avenue New York, NY 10019 (Attn: Ana Alfonso, Esq.); (f) counsel to the Ad Hoc 1.125L/1.25L Noteholder Group, Morrison & Foerster LLP, 250 W 55th Street, New York, NY 10019 (Attn: Dennis L. Jenkins, Esq.); (g) counsel to the Ad Hoc Unsecured Noteholder Group, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn: Kristopher M. Hansen, Esq. and Jonathan D. Canfield, Esq.); (h) counsel to Elliott Management Corporation, Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Gerard Uzzi Esq. and Eric Stodola, Esq.); (i) the Internal Revenue Service; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Securities and Exchange Commission; and (l) any other party entitled to notice pursuant to Bankruptcy Rule 2002; and any other party entitled to notice pursuant to Local Rule 9013-1(d) (collectively, the "**Notice Parties**").  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b), (c), and (d) and the Local Rules, and no further notice of the relief sought at the Interim Hearing is necessary or required.

3.     *Approval of Motion.*  The Motion is granted on an interim basis as set forth herein. Except as otherwise expressly provided in this Order, any objection to the entry of this Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.    *Debtors' Stipulations.*   Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 17 and 18 herein), the Debtors, on behalf of themselves and their respective estates, admit, stipulate, and agree, and this Court finds that:

(a)    as of the Petition Date, the Credit Parties were indebted and liable on a joint and several basis to the RBL Lenders, without defense, objection, counterclaim or offset of any kind, in the aggregate principal amount of not less than $629,420,912 in respect of loans (such loans, collectively, the "**RBL Loans**") and other extensions of credit made, including any letters of credit issued pursuant to, the RBL Credit Agreement, plus all accrued and unpaid interest thereon and any reasonable fees and out-of-pocket expenses (including reasonable fees and out-of-pocket expenses of attorneys provided for in the RBL Credit Agreement) related thereto as provided in the RBL Documents, plus all other outstanding amounts (including, without limitation, any contingent or unliquidated indemnification or reimbursement obligations) that would constitute Obligations (or other similar term) under and as defined in the RBL Credit Agreement (collectively, with the Prepetition Hedge Obligations (as defined below), the "**Prepetition RBL Obligations**");

(b)    as of the Petition Date, the Borrower was party to, and had certain obligations with respect to, certain Hedge Transactions (as defined in the RBL Documents), which obligations are guaranteed on a joint and several basis by each of the Guarantors (as defined in the RBL Credit Agreement) and the obligations (including, without limitation, any contingent obligations and mark to market movements) of the Borrower and the Guarantors under and with respect to such Hedge Transactions (such obligations, the "**Prepetition Hedge Obligations**") constitute Prepetition RBL Obligations secured by the Prepetition Collateral (as defined herein). The Borrower and Guarantors are indebted and/or liable with respect to the Prepetition Hedge

Obligations without objection, defense, counterclaim or offset of any kind.  The Prepetition Hedge Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Credit Parties and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the RBL Agent or the RBL Secured Parties by or on behalf of any of the Credit Parties prior to the Petition Date under or in connection with any of the RBL Documents or Hedge Transactions is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(c)     the liens, security interests, and mortgages granted by the Credit Parties to the RBL Agent (for the ratable benefit of the RBL Secured Parties) to secure the Prepetition RBL Obligations are:  (i) legal, valid, binding, properly perfected, enforceable, first priority (in each case, subject to permitted exceptions under the RBL Credit Agreement) liens on and security interests in substantially all of the Credit Parties' material real or personal property constituting Collateral (as defined in the RBL Documents, and herein referred to as, the "**Prepetition Collateral**" which Prepetition Collateral shall include, for the avoidance of doubt, all proceeds received by the Credit Parties in connection with the Prepetition Hedge Obligations including, without limitation, any monthly settlement payments, any termination payments and/or any other similar amounts) to secure the Prepetition RBL Obligations (including, without limitation, the Prepetition Hedge Obligations); (ii) not subject to avoidance, recharacterization, offset, subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other

challenge; and (iii) after giving effect to this Order and subject to the Carve-Out (as defined herein), subject and subordinate only to other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are permitted under the RBL Documents to be senior to the liens securing the Prepetition RBL Obligations;

(d)        as of the Petition Date, the Credit Parties were indebted to the Intermediate Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,500,000,000 in respect of the Intermediate Lien Notes pursuant to the Intermediate Lien Debt Documents, plus accrued and unpaid interest thereon and fees and expenses, if any, as provided in the Intermediate Lien Debt Documents, plus all other amounts that would constitute Obligations (or other similar term) under, and as defined in, the Intermediate Lien Note Indentures (collectively, the "**Prepetition Intermediate Lien Obligations**"); *provided that*, in the event of a final determination that the Intermediate Lien Noteholders are undersecured as of the Petition Date, payments received by the Intermediate Lien Noteholders pursuant to this Order, if any, may be recharacterized and applied as either (i) payments of principal on the Intermediate Lien Notes, or (ii) otherwise, in accordance with an approved plan or as otherwise ordered by the Court;

(e)        the liens and security interests granted to the Intermediate Lien Collateral Agents (for the ratable benefit of the Intermediate Lien Noteholders) to secure the Prepetition Intermediate Lien Obligations are: (i) valid, binding, perfected, enforceable, second priority (in each case, subject to permitted exceptions under the Intermediate Lien Note Indentures) liens on and security interests in substantially all of the Prepetition Collateral; (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Intercreditor Agreements (as defined

herein) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve-Out and the liens and security interests granted to secure the Adequate Protection Obligations (as defined herein), (B) prior to repayment in full of the Prepetition RBL Obligations, and the liens securing the Prepetition RBL Obligations, and (C) other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the liens securing the Prepetition Intermediate Lien Obligations);

(f)      as of the Petition Date, the Credit Parties were indebted to the 1.5 Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $2,091,792,000 in respect of the notes issued to the 1.5 Lien Noteholders pursuant to the 1.5 Lien Debt Documents, plus accrued and unpaid interest thereon and fees and expenses as provided in the 1.5 Lien Debt Documents, plus all other outstanding amounts that would constitute Obligations (or other similar term) under, and as defined in, the 1.5 Lien Note Indentures (collectively, the "**Prepetition 1.5 Lien Obligations**," and, together with the Prepetition RBL Obligations and the Prepetition Intermediate Lien Obligations, the "**Prepetition Obligations**"); *provided that*, in the event of a final determination that the 1.5 Lien Noteholders are undersecured as of the Petition Date, payments received by the 1.5 Lien Noteholders pursuant to this Order, if any, may be recharacterized and applied as either (i) payments of principal on the 1.5 Lien Notes, or (ii) otherwise, in accordance with an approved plan or as otherwise ordered by the Court;

(g)      the liens and security interests granted to the 1.5 Lien Collateral Agents (for the ratable benefit of the 1.5 Lien Noteholders) to secure the Prepetition 1.5 Lien Obligations are:

(i) valid, binding, perfected, enforceable, third priority (in each case, subject to permitted exceptions under the 1.5 Lien Note Indentures) liens on and security interests in substantially all of the Prepetition Collateral; (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Intercreditor Agreements (as defined herein) and as a result of the value of the Prepetition Collateral pursuant to section 506(a) of the Bankruptcy Code) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve-Out and the liens and security interests granted to secure the Adequate Protection Obligations (as defined herein), (B) (I) prior to repayment in full of the Prepetition RBL Obligations, and the liens securing the Prepetition RBL Obligations and (II) prior to repayment in full of the Prepetition Intermediate Lien Obligations, liens securing the Prepetition Intermediate Lien Obligations, and (C) other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the liens securing the Prepetition 1.5 Lien Obligations) and are permitted by the 1.5 Lien Documents;

(h)     none of the RBL Secured Parties are control persons or insiders of the Credit Parties or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Debt Documents;

(i)     no portion of any of the Prepetition RBL Obligations shall be subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, except with respect to subordination as set forth in the Intercreditor Agreements (as defined herein);

(j)     subject to paragraphs 17 and 18 of this Order, the Credit Parties, on behalf of themselves and their respective estates, forever and irrevocably release, discharge, and acquit

all former and current RBL Secured Parties, affiliates of the RBL Secured Parties, and each of their respective former and current officers, directors, employees, agents, representatives, consultants, accountants, attorneys, affiliates, and predecessors and successors-in-interest (collectively, the "**Releasees**"), solely in their capacity as RBL Secured Parties, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Prepetition Debt Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties, *provided*, *that,* the releases set forth in this section shall be limited to such claims arising prior to or including the date of the entry of this Order.  Other than with respect to any continuing obligations of the Hedge Banks under the Prepetition Hedge Transaction documents, the Credit Parties further waive and release any defense, right of counterclaim, right of setoff or deduction of the payment of the Prepetition Obligations that the Credit Parties now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Order;

(k)     no portion of any of the Prepetition RBL Obligations shall be subject to contest, attack, avoidance, impairment, disallowance, defense, counterclaim, recharacterization, reduction, recoupment, setoff, recovery or, except as set forth in the Intercreditor Agreements (as defined herein), subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(l)     the RBL Secured Parties, the Credit Parties and the other parties thereto are party to that certain:  (i) Amended and Restated Senior Lien Intercreditor Agreement, dated August 24, 2016; (ii) Priority Lien Intercreditor Agreement, dated August 24, 2016; (iii) Additional Priority Lien Intercreditor Agreement, dated November 29, 2016; and (iv) Senior Priority Lien Intercreditor Agreement, dated May 23, 2018 (collectively, together with the consent and acknowledgments executed in connection therewith, the "**Intercreditor Agreements**") that set forth the relative lien priorities and other rights and remedies of the Prepetition Secured Parties with respect to, among other things, the Prepetition Collateral;

(m)     with respect to those Intercreditor Agreements to which they are a party, such Intercreditor Agreements are valid and binding agreements and obligations of the RBL Agent, the Junior Lien Trustees, the other Prepetition Secured Parties and the Credit Parties, respectively, and are enforceable under section 510 of the Bankruptcy Code;

(n)     pursuant to the Intercreditor Agreements, the liens on the Prepetition Collateral and Adequate Protection Collateral (as defined here) held by the Junior Lien Collateral Agents for the benefit of the Intermediate Lien Noteholders and the 1.5 Lien Noteholders are subordinate to the liens held on the Prepetition Collateral and Adequate Protection Collateral (as defined here) held by the RBL Agent for the benefit of the RBL Secured Parties; and

(o)     the aggregate value of the Prepetition Collateral securing the Prepetition RBL Obligations materially exceeds the aggregate amount of the Prepetition RBL Obligations.

5.      *Consent by the Prepetition Secured Parties.*  The RBL Agent consents to the Credit Parties' use of Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Order.  Pursuant to the Intercreditor Agreements, as a result of the RBL Agent's consent to the use of Cash Collateral as provided in this Order, the other Prepetition Secured Parties are also deemed to have consented to entry of this Order.

6.      *Findings Regarding Cash Collateral.*

(a)      Good cause has been shown for the entry of this Order.

(b)      The Credit Parties have an immediate need to use the Cash Collateral to, among other things, permit the orderly continuation of their businesses, preserve and maintain the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Credit Parties including fees, costs, and expenses related to the Chapter 11 Cases, capital expenditures and payments owed with respect to certain of the Prepetition Obligations as and to the extent set forth in this Order and materially in accordance with the Budget (as defined herein), and maximize the value of the Debtors' estates.

(c)      The terms of use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)      The use of the Cash Collateral and the grant of adequate protection hereunder have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the RBL Secured Parties.

(e)      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the interim relief set forth in this Order, the Debtors' estates and their business operations will be immediately and irreparably

harmed.  The use of the Cash Collateral in accordance with this Order is in the best interest of the

Debtors' chapter 11 estates.

7.      *Cash Collateral.*  All or substantially all of the Credit Parties' cash as of the Petition

Date, including without limitation, all cash and other amounts on deposit or maintained by the

Credit Parties in any account or accounts with any Prepetition Secured Party and any cash proceeds

of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral

and, therefore, are Cash Collateral of the Prepetition Secured Parties (subject in all cases to the

Intercreditor Agreements), within the meaning of section 363(a) of the Bankruptcy Code.

8.      *Use of Cash Collateral.*  The Credit Parties are hereby authorized to use the Cash

Collateral during the period from the Petition Date through and including the Termination Date

(as defined herein) as and to the extent set forth in this Order and in accordance with the terms and

conditions of this Order and subject to material compliance with the budget attached hereto as

**Exhibit A** consisting of a cash flow forecast of projected receipts and disbursements for the 13-

week period following the Petition Date (as such budget may be modified from time to time by

the Credit Parties with the prior written consent of the RBL Agent, which consent shall not be

unreasonably withheld, as set forth in this paragraph and in paragraph 9(a)(v) of this Order, the

"**Budget**"); *provided that*, (a) the Prepetition Secured Parties are granted adequate protection as

set forth herein, and (b) except on the terms of this Order, the Credit Parties are not authorized to

use the Cash Collateral.  As used herein, "**Termination Date**" means a Cash Collateral Event of

Default (as defined herein).

9.      *Adequate Protection Obligations.*

(a)      *RBL Adequate Protection Obligations*.  The RBL Agent and the RBL

Secured Parties (for the avoidance of doubt, including the Hedge Banks) are entitled, pursuant to

sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their valid, perfected and enforceable interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral resulting from the sale, lease or use by the Credit Parties of the Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**RBL Adequate Protection Obligations**").  The foregoing shall not, nor shall any other provision of this Order, be construed as a determination or finding that there has been or will be any diminution in value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.  As adequate protection for the RBL Adequate Protection Obligations, the RBL Agent and the RBL Secured Parties are hereby granted the following, subject to the Carve-Out:

(i)      RBL Adequate Protection Liens.  As security for the RBL Adequate Protection Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Credit Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the RBL Agent of any property, the following security interests in and liens and mortgages upon all property identified in clauses (1), (2) and (3) below (collectively, the "**Adequate Protection Collateral**") are hereby granted to the RBL Agent, for its own benefit and the benefit of the RBL Secured Parties, subject only to the Carve-Out (all such liens and security interests granted to the RBL Agent, for its benefit and for the benefit of the RBL Secured Parties, pursuant to this Order, the "**RBL Adequate Protection Liens**"):

(1)      Liens Priming the Liens of the Prepetition Secured Parties.  Subject to the Carve-Out, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral.  The RBL Adequate Protection Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of each of the Prepetition Secured Parties (including the applicable Adequate Protection Liens granted to such Prepetition Secured Parties).

(2)      First Lien On Unencumbered Property.  Subject to the Carve-Out, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in,

all tangible and intangible prepetition and postpetition property in which the Credit Parties have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such postpetition perfection is expressly permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Unencumbered Property**"), including, without limitation, any and all unencumbered cash, all oil, gas and other hydrocarbons and all products and substances derived therefrom (including all raw materials and work in process therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, oil and gas leases, servicing rights, servicing receivables, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of the Credit Parties and the proceeds of all of the foregoing and, subject to entry of the Final Order, the proceeds or property recovered in respect of any Avoidance Actions.

(3)   <u>Liens Junior to Certain Existing Liens</u>.  Subject to the Carve-Out, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, perfected junior lien on, and security interest in, all tangible and intangible prepetition and post-petition property in which the Credit Parties have an interest, whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Non-Primed Liens**"), which security interests and liens in favor of the RBL Agent and the RBL Secured Parties shall be junior to the Non-Primed Liens.

(4)   <u>Liens Senior to Certain Other Liens</u>.  Except with respect to Non-Primed Liens, no claim or lien, security interest or mortgage having a priority senior to or *pari passu* with those granted by this Order to the RBL Agent and the RBL Secured Parties pursuant to this section other than the Carve-Out shall be granted or allowed while any RBL Adequate Protection Obligations remain outstanding, and the RBL Adequate Protection Liens shall not be:  (a) subject or subordinate to (i) any lien, security interest or mortgage that is avoided and preserved for the benefit of the Credit Parties and their estates under section 551 of the Bankruptcy Code or (ii) any liens, security interests or mortgages arising after the Petition Date; or (b) subordinated to or made *pari passu* with any other lien, security interest or mortgage under sections 363 or 364 of the Bankruptcy Code or otherwise.  The RBL Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such Chapter 11 Cases or proceedings, the "**Successor Cases**"),

and/or upon the dismissal of any of the Chapter 11 Cases.  The RBL Adequate Protection Liens shall not be subject to section 510 of the Bankruptcy Code (other than as set forth in the Intercreditor Agreements), to the "equities of the case" exception of section 552 of the Bankruptcy Code, or to section 506(c) of the Bankruptcy Code, or sections 549, 550 or 551 of the Bankruptcy Code.

(5)  <u>Buildings</u>.  However, notwithstanding any provision in this Order to the contrary, in  no event shall any enclosed structure (having two walls and a roof) or manufactured mobile home (each, a "**Building**") be included in the definition of Adequate Protection Collateral, in each case until such time as the RBL Agent notifies the applicable Credit Parties that such property shall be included in the definition of Adequate Protection Collateral, upon the RBL Agent's determination and RBL Secured Parties' determination that all applicable Flood Insurance Regulation requirements have been satisfied.  Subject to the Carve-Out, upon such notice by the RBL Agent and the RBL Secured Parties, any and all Buildings shall automatically be included in the definition of Adequate Protection Collateral, and shall be encumbered pursuant to this Order without any further action by any party. As used herein, "**Flood Insurance Regulations**" means (a) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (b) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statue thereto, (c) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, *et seq.),* as the same may be amended or recodified from time to time, and (d) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

(ii)  <u>RBL 507(b) Claims</u>.  The RBL Adequate Protection Obligations shall constitute allowed superpriority claims as provided in section 507(b) of the Bankruptcy Code  (the "**RBL 507(b) Claims**") against each of the Credit Parties on a joint and several basis, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503 and 726 of the Bankruptcy Code, subject and subordinate only to the Carve-Out, which RBL 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the Credit Parties, excluding the Carve-Out, and including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of any Avoidance Actions.  For the avoidance of doubt, the RBL 507(b) Claims shall include amounts due to the RBL Agent and RBL Secured Parties for all out-of-pocket expenses (including attorneys' fees and legal expenses of counsel and settlement costs) incurred in connection with these Chapter 11 Cases.

(iii)  <u>Interest, Fees and Expenses</u>.  The Credit Parties are authorized and directed to pay, as adequate protection, to the RBL Agent all accrued and unpaid interest (including interest accrued prior to the Petition Date) on the outstanding amounts under the RBL Documents constituting Prepetition RBL Obligations at the applicable non-default rate set forth in the RBL Documents, and to pay all other accrued and unpaid fees and disbursements owing to the RBL Agent under the RBL Documents, as set forth below. For

the avoidance of doubt, the payment of adequate protection payments pursuant to this paragraph shall be without prejudice to the rights of the RBL Agent and RBL Secured Parties to assert claims for payment of additional amounts, including additional interest at any other rates, in accordance with the RBL Documents. As additional adequate protection to the RBL Agent and the RBL Secured Parties (including the Hedge Banks), the Credit Parties shall pay to the RBL Agent or other applicable RBL Secured Party all prepetition and postpetition reasonable and documented fees and out-of-pocket expenses of counsel and other professional advisors payable to the RBL Agent or other applicable RBL Secured Party under the RBL Documents.  None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Invoices with respect to such fees and expenses (which shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a summary description of services provided and the expenses) shall be provided to the Debtors, the U.S. Trustee and the statutory committee of unsecured creditors (the "**Committee**"), if any, appointed in the Chapter 11 Cases who may object to the reasonableness, as such standard is used in section 506(b) of the Bankruptcy Code, of such fees and expenses within five (5) Business Days of the receipt of such invoices, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses. Promptly following the completion of the five (5) Business Day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph in this Court, the Debtors shall pay the professional fees and expenses provided for in this paragraph.

(iv)    Other Covenants.    The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's October 4, 2019 order granting the Debtors' cash management motion.  The Credit Parties shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without prior consultation with the RBL Agent at least five (5) Business Days prior to the date on which the Credit Parties seek the authority of this Court for such use, sale or lease.  The Credit Parties shall comply with the covenants contained in Section 9.3 of the RBL Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral.

(v)    Reporting.    The Credit Parties shall comply with the reporting requirements set forth in the Prepetition Debt Documents, with copies of all such reporting to be provided to the RBL Agent.  As additional adequate protection, the Credit Parties shall provide the following additional reporting to the RBL Agent:

(a)    weekly (or less frequently as may be agreed to between the Credit Parties and the RBL Agent) update calls with the RBL Agent and its advisors;

(b)    a copy of each update to the Credit Parties' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

- 18 -

(c)      promptly, but in any event no later than the twentieth (20th) day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the RBL Agent, of (I) an accounts payable aging and an accounts receivable aging and (II) all written demands or claims related to or asserting any liens in respect of property or assets of the Borrower or any Credit Party (including liens imposed by law, such as landlords', vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $500,000;

(d)      on November 7, 2019 and on each fourth Thursday thereafter, the Debtors will provide to the RBL Agent a new 13-week Budget covering the 13-week period commencing on the immediately preceding Saturday and otherwise in form and substance substantially similar to the Budget attached hereto as Exhibit A (each a "**Proposed Budget**") which Proposed Budget, upon written approval (or lack of written objection for five (5) Business Days) by the RBL Agent, shall become the Budget (as defined herein) effective as of the following Saturday;

(e)      on October 17, 2019 and on each Thursday thereafter, a bi-weekly variance report comparing actual receipts and disbursements against the Budget then in effect;

(f)      notice of any material change to projected disbursements set forth in the Budget, as applicable, in an aggregate amount in excess of $20,000,000 through March 31, 2020;

(g)      promptly, and in any event no later than the thirtieth (30th) day of each calendar month, beginning with the year to date period ended October 31, 2019, a consolidated monthly balance sheet and income statement for the previous month; and

(h)      information on any Hedge Agreements of the Credit Parties which are entered, terminated or unwound after the Petition Date as soon as practicable after any such Hedge Agreement is entered, terminated or unwound; and

(i)      such other reports and information as the RBL Agent may reasonably request.

(vi)      _Inspection Rights_.   The RBL Secured Parties shall have the inspection rights set forth under the RBL Documents.

(b)      _Intermediate Lien Adequate Protection Obligations_.  The Intermediate Lien Indenture Trustees, the Intermediate Lien Collateral Agents and the Intermediate Lien Noteholders

are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their valid, perfected and enforceable interests in the Prepetition Collateral resulting from the sale, lease or use by the Credit Parties of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Intermediate Lien Adequate Protection Obligations**"). The foregoing shall not, nor shall any other provision of this Order, be construed as a determination or finding that there has been or will be any diminution in value of Prepetition Collateral and the rights of all parties as to such issues are hereby preserved. As adequate protection, the Intermediate Lien Indenture Trustees, the Intermediate Lien Collateral Agents and the Intermediate Lien Noteholders are hereby granted the following, subject in all respects to the Carve-Out:

   (i) <u>Intermediate Lien Adequate Protection Liens</u>. As security for the payment of the Intermediate Lien Adequate Protection Obligations, the Intermediate Lien Indenture Collateral Agents (for themselves and for the benefit of the Intermediate Lien Noteholders and the Intermediate Lien Trustees) are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Credit Parties of security agreements, pledge agreements, mortgages, financing statements or other agreements), a valid, binding, continuing, enforceable, perfected junior lien on, and security interest in, all of the Adequate Protection Collateral subject and subordinate only to (I) the RBL Adequate Protection Liens, (II) the Carve-Out, and (III) the Non-Primed Liens, and subject further to the Intercreditor Agreements (the "**Intermediate Lien Adequate Protection Liens**").

   (ii) <u>Intermediate Lien 507(b) Claims</u>. The Intermediate Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**Intermediate Lien 507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (I) the Carve-Out, and (II) the RBL 507(b) Claims, to the extent set forth in the applicable Intercreditor Agreements.

(c)      *1.5 Lien Adequate Protection Obligations*.  The 1.5 Lien Indenture Trustees, the 1.5 Lien Collateral Agents and the 1.5 Lien Noteholders are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their valid, perfected and enforceable interests in the Prepetition Collateral resulting from the sale, lease or use by the Credit Parties of the Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**1.5 Lien Adequate Protection Obligations**" and collectively, together with the RBL Adequate Protection Obligations and the Intermediate Lien Adequate Protection Obligations, the "**Adequate Protection Obligations**"). The foregoing shall not, nor shall any other provision of this Order, be construed as a determination or finding that there has been or will be any diminution in value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.  As adequate protection, the 1.5 Lien Indenture Trustees, the 1.5 Lien Collateral Agents and the 1.5 Lien Noteholders are hereby granted the following, subject in all respects to the Carve-Out:

(i)      1.5 Lien Adequate Protection Liens.  As security for the payment of the 1.5 Lien Adequate Protection Obligations, the 1.5 Lien Collateral Agents (for themselves and for the benefit of the 1.5 Lien Noteholders and the 1.5 Lien Trustees) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Credit Parties of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Adequate Protection Collateral (the "**1.5 Lien Adequate Protection Liens**" and, together with the RBL Adequate Protection Liens and the Intermediate Lien Adequate Protection Liens, the "**Adequate Protection Liens**"), subject and subordinate only to (I) the RBL Adequate Protection Liens, the (II) the Intermediate Lien Adequate Protection Liens, the (III) the Carve-Out, and the (IV) the Non-Primed Liens, and subject further to the Intercreditor Agreements.

(ii)      1.5 Lien 507(b) Claims.  The 1.5 Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**1.5 Lien 507(b) Claims**", together with the RBL 507(b) Claims

and the Intermediate Lien 507(b) Claims, the "**507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (I) the Carve-Out, (II) the RBL 507(b) Claims, and (III) the Intermediate Lien 507(b) Claims; such subordination referenced in subsections (II) and (III) to the extent set forth in the applicable Intercreditor Agreements.

10.   <u>Carve-Out</u>.

(a)   For purposes hereof, the "**Carve-Out**" shall mean: (i) fees owing to the U.S. Trustee incurred in connection with the Chapter 11 Cases; (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code; (iii) professional fees, expenses, and disbursements incurred by professional persons employed by the Credit Parties or any Committee (collectively, "**Professional Fees and Expenses**") incurred on and after the Petition Date and before the occurrence of a Carve-Out Trigger Date (defined in this paragraph); and (iv) Professional Fees and Expenses incurred after the occurrence of a Carve-Out Trigger Date, in an amount not to exceed $7,500,000 (the "**Post-Trigger Date Carve-Out**").   For the purposes hereof, a "**Carve-Out Trigger Date**" means the first (1st) Business Day after the RBL Agent provides a written notice to the Credit Parties and their counsel that a Cash Collateral Event of Default (or an event which with the giving of notice would constitute a Cash Collateral Event of Default) has occurred.

(b)   Upon the occurrence of the Carve-Out Trigger Date, the Credit Parties shall deposit into an interest-bearing escrow account at a financial institution acceptable to the RBL Agent (the "**Carve-Out Account**") an amount equal to the sum of:  (i) all fees and expenses required to be paid pursuant to paragraph 10(a)(i) and 10(a)(ii) hereof; (ii) all billed and unpaid Professional Fees and Expenses (including outstanding holdbacks) incurred on or after the Petition Date and prior to the Carve-Out Trigger Date; (iii) all unbilled Professionals Fees and Expenses

- 22 -

incurred on or after the Petition Date and prior to the Carve-Out Trigger Date; and (iv) $7,500,000. The failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out.  The amount in the Carve-Out Account shall be reduced on a dollar-for-dollar basis for Professional Fees and Expenses that are paid after the Carve-Out Trigger Date and the Carve-Out Account shall not be replenished for any such amounts so paid.

(c)     The RBL Agent and the RBL Secured Parties retain automatically perfected and continuing first priority security interests in any residual interest in the Carve-Out Account available following satisfaction in full of all obligations benefiting from the Carve-Out (the "**Residual Carve-Out Amount**").  Subject to the terms of the Intercreditor Agreements, (i) the Intermediate Lien Collateral Agents, Intermediate Lien Indenture Trustees and Intermediate Lien Noteholders shall retain automatically perfected and continuing second priority security interests, and (ii) the 1.5 Lien Collateral Agents, 1.5 Lien Indenture Trustees and 1.5 Lien Noteholders shall retain automatically perfected and continuing third priority security interests in the Residual Carve-Out Amount.  Promptly (but in no event later than five (5) Business Days) following the satisfaction in full of all obligations benefiting from the Carve-Out, the Credit Parties shall deliver the Residual Carve-Out Amount, if any, to the RBL Agent.

11.     *Events of Default and Remedies After Events of Default.*

(a)     <u>Cash Collateral Events of Default</u>.  The occurrence of any of the following events other than with the written consent of the RBL Agent shall constitute a "**Cash Collateral Event of Default**":

(i)     failure of the Credit Parties to make any payment under this Order within two (2) Business Days after such payment becomes due;

(ii)     failure of the Credit Parties to comply in any material respect with any other provision of this Order;

(iii)     the Credit Parties shall grant, create, incur or suffer to exist any material postpetition liens or security interests other than: (I) those granted pursuant to this Order; (II) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (III) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation or regulations; (IV) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (V) any other junior liens or security interests that the Credit Parties are permitted to incur under the Prepetition Debt Documents;

(iv)     an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Order in a manner adverse to the RBL Secured Parties without the written consent of the RBL Agent;

(v)     this Court shall terminate or reduce the periods pursuant to section 1121 of the Bankruptcy Code, during which the Credit Parties have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(vi)     the Final Order is not entered within forty-five (45) days hereof;

(vii)     the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $5 million;

(viii)     the entry of any postpetition judgment against any Credit Party in excess of $5 million that would otherwise not be treated as a claim in these Chapter 11 Cases;

(ix)     the Credit Parties shall for more than one (1) Business Day fail to hold in accounts with the RBL Agent, or in accounts over which the RBL Agent has an account control agreement, unrestricted cash or cash equivalents in an aggregate amount of not less than $25 million;

(x)     the payment of any prepetition claims that are junior in interest or right to the claims and/or liens and mortgages on such collateral held by the RBL Agent on behalf of the RBL Secured Parties, other than as permitted by an order entered in the Chapter 11 Cases;

(xi)     the existence of any claims or charges, or the entry of any order of this Court authorizing any claims or charges, other than as permitted under this Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Prepetition RBL Obligations or the RBL Adequate Protection Obligations, or there shall arise or be granted by this Court, except with the written consent of the RBL Agent, (I) any claim (other than claims in respect of Hedge Transactions which are *pari passu* to the Prepetition RBL Obligations or the RBL Adequate Protection Obligations) having priority over any or all administrative expenses of the kind specified in clause (b)

- 24 -

of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the 507(b) Claims, or (II) subject to the Non-Primed Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the Prepetition Debt Documents or in this Order (but only in the event specifically consented to by the RBL Agent), whichever is in effect;

(xii)    this Court shall have entered an order dismissing any of the Credit Parties' Chapter 11 Cases;

(xiii)    this Court shall have entered an order converting any of the Credit Parties' Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(xiv)    this Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Credit Parties' Chapter 11 Cases;

(xv)    a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition RBL Obligations or asserting any other cause of action against and/or with respect to the Prepetition RBL Obligations, the Prepetition Collateral, the RBL Agent or RBL Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party); or

(xvi)    the Credit Parties or any of their subsidiaries, shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the RBL Agent or RBL Secured Parties relating to the Prepetition RBL Obligations.

(b)    *Remedies After Cash Collateral Event of Default*.  Upon the occurrence and during the continuance of a Cash Collateral Event of Default, and the giving of five (5) Business Days' prior written notice by the RBL Agent to the Debtors, the U.S. Trustee and counsel to any Committee (with a copy to counsel to the Debtors and counsel to the Junior Lien Trustees), the Credit Parties' right to use Cash Collateral shall terminate subject to the Debtors' rights to seek an emergency hearing on whether a Cash Collateral Event of Default has in fact occurred and is continuing.

12.    *Limitation on Charging Expenses against Collateral*.  Subject to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of

the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the RBL Agent and no such consent shall be implied from any other action or inaction by the RBL Secured Parties.

13.    *Limitations under Section 552(b) of the Bankruptcy Code.*  The RBL Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the RBL Secured Parties with respect to (a) proceeds, products, offspring or profits of any of the Prepetition Collateral or (b) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

14.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the RBL Secured Parties pursuant to the provisions of this Order or any subsequent order of this Court shall (except as provided in paragraph 17 of this Order) be received free and clear of any claim, charge, assessment or other liability.

15.    *Perfection of Adequate Protection Liens.*

(a)    Subject to the Intercreditor Agreements, without further notice, order or leave required, the RBL Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the applicable Adequate Protection Liens granted to it hereunder.  Whether or not the RBL Agent, in its sole discretion, chooses to file any such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, takes possession of or control over, or

- 26 -

otherwise confirms perfection of the applicable Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or, other than as set forth in the Intercreditor Agreements, subordination as of the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of the RBL Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     The Credit Parties shall execute and deliver to the RBL Agent all such agreements, financing statements, instruments and other documents as the RBL Agent may reasonably request to evidence, confirm, validate or perfect the applicable Adequate Protection Liens.

16.     *Preservation of Rights Granted Under this Order.*

(a)     Subject to the Carve-Out, (i) other than any permitted liens under the Prepetition Debt Documents (and subject to the terms of the Intercreditor Agreements), no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the RBL Agent shall be granted or allowed while any portion of the Adequate Protection Obligations remains outstanding, and (ii) the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Credit Parties' estates under section 551 of the Bankruptcy Code or, except as set forth in the Intercreditor Agreements, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations incurred by the Credit Parties to the Prepetition Secured Parties prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order.

(c)      Except as expressly provided in this Order, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the Prepetition Secured Parties granted by this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Credit Parties have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Order shall continue in the Chapter 11 Cases, and in any Successor Cases, and the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims, and the other administrative claims granted pursuant to this Order, and all other rights and remedies of the Prepetition Secured Parties granted by this Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied.

17.     *Effect of Stipulations on Third Parties*.

(a)     The stipulations and admissions contained in this Order, including, without limitation, in paragraphs 4 and 7 of this Order, shall be binding upon the Debtors under all circumstances.  Subject to entry of a Final Order, the stipulations and admissions contained in this Order, including, without limitation, in paragraphs 4 and 7 of this Order, shall be binding upon all other parties-in-interest unless: (i) any party-in-interest (including the Committee, if any) (a "**Challenge Party**") that successfully seeks and obtains standing to do so has timely filed a motion, adversary proceeding, or other pleading (in each case, setting forth the legal and factual basis for any Challenge in specific detail) seeking such standing (subject to the limitations contained herein, including without limitation, in this paragraph) by the later of 60 days after entry of this Order and 60 days after the formation of the Committee (if any) (the "**Challenge Period**"); and (ii) an order is entered and becomes final in favor of the Challenge Party sustaining a Challenge; *provided that* any such Challenge Period deadline is subject to extension as may be specified by this Court for cause shown, or if the RBL Agent agrees in writing to such an extension. For purposes hereof, the term "**Challenge**" shall refer to all claims or defenses in respect of the Prepetition RBL Obligations challenging the validity, enforceability, priority or extent of the Prepetition RBL Obligations or the liens on Prepetition Collateral securing the Prepetition RBL Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses against any of the RBL Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, each in their capacity as such, in connection with any matter related to the Prepetition RBL Obligations; *provided*, *that* subject to this paragraph, as to the Credit Parties, all such Challenges are hereby irrevocably waived, released, and relinquished as of the Petition Date;

*provided* *further*, *that* during the Challenge Period, the Debtors' admissions, stipulations and waivers herein shall not be binding on any chapter 7 or 11 trustee appointed or elected for any of the Debtors.

(b)      If no such Challenge is timely filed in respect of the Prepetition RBL Obligations:  (i) the Prepetition RBL Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination (except as set forth in the applicable Intercreditor Agreements or this Order), defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, recovery, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (ii) the valid and perfected liens on the Prepetition Collateral securing the Prepetition RBL Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 4 as applicable, not subject to setoff, subordination (except as set forth in the Intercreditor Agreements or this Order), defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (iii) the Prepetition RBL Obligations, the RBL Agent and the RBL Secured Parties (each in their capacity as such), as the case may be, and the liens on the Prepetition Collateral granted to secured the Prepetition Obligations, shall not be subject to any other or further challenge, except with respect to the value of the Prepetition Collateral, by any party-in-interest (including any Committee), and all such parties-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Credit Parties).  Nothing in this Order shall confer standing on any party-in-interest to assert any Claims or Defenses or otherwise bring any cause of action.

(c)      If any Challenge is timely filed, the stipulations and admissions contained in paragraphs 4 and 7 of this Order shall nonetheless remain binding and preclusive (as provided in this paragraph) on all parties-in-interest (including the Committee, if any), except as to any such findings and admissions that were expressly and successfully challenged in such Challenge.

(d)      In the event that there is a timely successful Challenge by a final non-appealable order, pursuant and subject to the limitations contained in this paragraph, to the repayment of the Prepetition Obligations pursuant to this Order based upon a successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition Obligations or the liens securing the same, this Court shall have the power to unwind or otherwise modify (which might include the disgorgement or reallocation of interest, fees, principal or other incremental consideration paid in respect of the Prepetition Obligations or the avoidance of liens and/or guarantees with respect to the Debtors) to the extent that such payment resulted in the payment of any portion of the Prepetition Obligations determined by this Court to be an unsecured claim or other amount not allowable under section 502 of the Bankruptcy Code.

18.      *Limitation on Use of Prepetition Collateral.*  The Credit Parties shall use the Cash Collateral solely as provided in this Order.  Notwithstanding anything herein or in any other order of this Court to the contrary, none of the Prepetition Collateral (including the Cash Collateral) or the Carve-Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Prepetition Debt Documents, the Hedge Agreements or the liens or claims granted under this Order; (b) assert any Claims and Defenses or any other causes of action against the RBL Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the RBL Secured Parties hereunder or under the Prepetition Debt

Documents, in the case of each of the foregoing clauses, without the RBL Agent's consent; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court; *provided* *that*, notwithstanding anything to the contrary herein but subject to the entry of a Final Order, no more than an aggregate of $50,000 of the Cash Collateral may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or investigate any Claims and Defenses against the Prepetition Secured Parties.

19.    *Binding Effect; Successors and Assigns*.  The provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases, including without limitation, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* *that*, except to the extent expressly set forth in this Order and subject to the terms of the Intercreditor Agreements, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

20.    *Limitation of Liability*.  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, the RBL Secured Parties shall not solely by reason thereof be deemed in control of the operations of the Debtors or to be acting as a

"responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).  Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon any RBL Secured Party of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

21.     *Intercreditor Agreements*.  Nothing in this Order shall amend or otherwise modify the terms or enforceability of the Intercreditor Agreements, including without limitation, the turnover and bankruptcy-related provisions contained therein, and the Intercreditor Agreements shall each remain in full force and effect.  The rights of the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreements.

22.     *Proofs of Claim*.  None of the Prepetition Secured Parties shall be required to file proofs of claim or otherwise request payment of an administrative expense in any of the Chapter 11 Cases or any Successor Cases for any claim in respect of the Prepetition Obligations. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the RBL Agent, on behalf of the RBL Secured Parties, the Intermediate Lien Indenture Trustees, on behalf of the Intermediate Lien Noteholders, and the 1.5 Lien Indenture Trustee, on behalf of the 1.5 Lien Noteholders, respectively, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim or request for payment of an administrative expense and/or aggregate proofs of claim or request for payment of administrative expenses in each of the Chapter 11 Cases or any Successor Cases for any claim allowed herein; for avoidance of doubt, any such proof of claim or request for payment of an

administrative expense, in each case, may (but is not required to) be filed as one consolidated proof of claim or request for payment of administrative expense against all of the Credit Parties, rather than as separate proofs of claim or request for payment of administrative expense against each Credit Party. Any proof of claim or request for payment of administrative expense filed by the RBL Agent or applicable Junior Lien Trustee or Junior Lien Collateral Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective Prepetition Secured Parties.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the Prepetition Secured Parties with respect to the Prepetition Obligations.  Without limiting the foregoing, nothing herein shall impair or be deemed to impair the rights of any party to a Hedge Transaction (as defined in the RBL Documents) to exercise any rights or remedies available to such party pursuant to the terms of such Hedge Transaction.

23.     *No Waiver.*  The failure or delay by the RBL Secured Parties, including the Hedge Banks, to seek relief or otherwise exercise their rights and remedies under this Order, the Prepetition Debt Documents or otherwise (including, without limitation, any delay and/or forbearance by any Hedge Bank with respect to its termination, liquidation and/or acceleration rights in connection with any Hedge Transactions) shall not constitute a waiver of any of the RBL Secured Parties' rights hereunder, thereunder, or otherwise.  This Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the RBL Secured Parties, including the Hedge Banks, under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court.

24.     *Preservation of Rights in Connection with Certain Contracts or Transactions*.  The rights of any entity, including any Hedge Banks, in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code, whatever they might or might not be, are hereby preserved in all respects and no such entity shall lose any of its rights under such sections as a result of any delay and/or forbearance by such entity in the exercise of its rights thereunder (including, without limitation, its termination, liquidation and/or acceleration rights).

25.     *Authorizations Regarding Hedge Transactions*.  Pursuant to sections 105(a) and 363(b), and to the extent applicable, section 364 of the Bankruptcy Code, the Debtors are authorized to continue performance under the Hedge Transactions (as defined in the RBL Documents) and to honor, pay, or otherwise satisfy the Prepetition Hedge Obligations as they come due.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit each Hedge Bank to immediately and unconditionally (but, for the avoidance of doubt, subject to any grace or cure periods under, and other provisions of, the Hedge Agreements and any other RBL Documents governing the applicable Hedge Transactions) exercise and enforce any and all rights and remedies provided for in the Hedge Agreements, including but not limited to rights and remedies relating to the suspension of performance thereunder, the termination, liquidation, or acceleration thereof, withholding of performance thereof, and setoff, netting, and application of any payment, settlement payment, termination value, termination payment, and any other amounts that the Hedge Banks would be entitled to receive from or otherwise be obligated to pay to any Debtor under Hedge Transactions in accordance with the terms of the Hedge Agreements, without the need for any further Court

order, and the exercise of any such rights and remedies by the Hedge Banks shall not be stayed, avoided, or otherwise limited as result of the pendency of these Chapter 11 Cases.

26.      *Collateral Agent Replacement.*  The Credit Parties and the Prepetition Secured Parties are permitted to take any actions necessary or appropriate (including filing documents with appropriate filing agencies or authorities) to effectuate the replacement of any collateral agents or trustees with respect to, and in accordance with the terms of, the Prepetition Debt Documents.

27.      *No Third-Party Rights*.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

28.      *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.

29.      *Final Hearing*.  The Final Hearing is scheduled for November 7, 2019, at 1:30 p.m.] prevailing Central Time, before this Court.

30.      *Retention of Jurisdiction*.  This Court shall have and retain exclusive jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

31.     *Final Hearing Notice*.   The Debtors shall promptly serve copies of this Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.   Any party-in-interest objecting to the relief sought at the Final Hearing shall file written objections no later than November 4, 2019 at 4:00 p.m., prevailing Central time.

32.     Other than the consensual and/or contractual priming described in this Interim Order, no RBL Adequate Protection Lien, Intermediate Lien Adequate Protection Lien and/or 1.5 Lien Adequate Protection Lien shall, on a non-consensual basis, prime any valid and unavoidable lien (including any properly perfected lien under § 546), security interest and/or encumbrance existing as of the Petition Date.   All rights of any party claiming a royalty, separate property interest, other interest not comprising property of the Estate,

Signed: October 04, 2019

_____
Marvin Isgur
United States Bankruptcy Judge

- 37 -

**<u>EXHIBIT A</u>**

**BUDGET**

**EP Energy 13 Week Cash Flow Forecast**

9/30 Strip Pricing
$ in 000's

| Week # -> / Week Ending -> | 1 Oct 4,19 | 2 Oct 11,19 | 3 Oct 18,19 | 4 Oct 25,19 | 5 Nov 1,19 | 6 Nov 8,19 | 7 Nov 15,19 | 8 Nov 22,19 | 9 Nov 29,19 | 10 Dec 6,19 | 11 Dec 13,19 | 12 Dec 20,19 | 13 Dec 27,19 | 13-Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | |
| Oil Sales | 0 | - | - | 98,612 | - | - | - | 106,604 | - | - | - | 100,014 | - | 305,230 |
| Gas Sales | 1,108 | - | - | 8,409 | - | - | - | - | 8,554 | - | - | - | 8,472 | 26,543 |
| NGL Sales | 429 | - | - | 4,240 | - | - | - | - | 5,332 | - | - | - | 5,322 | 15,323 |
| Non-Operated Production Receipts | 76 | - | 470 | 390 | - | - | 470 | 390 | - | - | 470 | - | 390 | 2,656 |
| Joint Interest Billing Receipts | 12 | - | 221 | 1,545 | 2,649 | - | 221 | 1,551 | - | 1,659 | - | 222 | 1,541 | 9,622 |
| Hedge Receipts / Disbursements | - | 232 | - | - | (712) | 3,178 | - | - | - | 40 | 1,999 | - | - | 4,736 |
| Other Receipts | - | - | - | - | 5,385 | - | - | - | - | - | - | - | - | 5,385 |
| **Total Operating Receipts** | $ 1,625 | $ 232 | $ 691 | $ 113,196 | $ 7,321 | $ 3,178 | $ 691 | $ 108,545 | $ 13,886 | $ 1,699 | $ 2,469 | $ 100,235 | $ 15,725 | $ 369,494 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll | - | - | (2,275) | - | (2,018) | - | (2,275) | - | (2,018) | - | (2,030) | - | - | (10,616) |
| Benefits | - | (157) | (506) | (157) | (584) | (126) | (474) | (126) | (584) | (158) | (509) | (158) | (158) | (3,696) |
| Royalties | - | - | - | - | (31,279) | - | - | - | (37,360) | - | - | - | (39,109) | (107,748) |
| Capex | (1,829) | (20,804) | (15,746) | (15,746) | (15,746) | (12,017) | (8,606) | (8,606) | (8,606) | (8,606) | (2,082) | (2,082) | (2,082) | (122,556) |
| LOE | (559) | (3,213) | (3,972) | (3,972) | (3,972) | (3,633) | (3,603) | (3,603) | (3,603) | (3,603) | (2,834) | (2,834) | (2,834) | (42,234) |
| Transportation | (376) | (2,781) | (1,781) | (1,781) | (1,349) | (2,349) | (1,349) | (1,349) | (1,349) | (2,563) | (1,563) | (1,563) | (1,563) | (21,712) |
| Severance, Ad Val Tax | - | - | - | (4,730) | - | - | - | (8,196) | (3,252) | - | - | (8,500) | (24,236) | (48,914) |
| G&A (Incl. Rent, Insurance) | (332) | (452) | (288) | (288) | (653) | (288) | (290) | (290) | (290) | (655) | (221) | (221) | (221) | (4,488) |
| Other | (145) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (3,145) |
| **Total Operating Disbursements** | $ (3,241) | $ (27,657) | $ (24,818) | $ (26,924) | $ (55,851) | $ (18,662) | $ (16,846) | $ (22,418) | $ (57,310) | $ (15,834) | $ (9,488) | $ (15,607) | $ (70,452) | $ (365,108) |
| **Operating Cash Flow** | $ (1,616) | $ (27,425) | $ (24,127) | $ 86,272 | $ (48,530) | $ (15,485) | $ (16,155) | $ 86,127 | $ (43,424) | $ (14,135) | $ (7,019) | $ 84,629 | $ (54,727) | $ 4,386 |
| **Interest & Fees** | | | | | | | | | | | | | | |
| RBL Interest & Fees | - | - | - | (72) | - | - | - | (59) | - | - | - | - | (49) | (180) |
| 1.125 Lien Interest & Fees | - | - | - | - | - | - | (38,750) | - | - | - | - | - | - | (38,750) |
| 1.25 Lien Interest & Fees | - | - | - | - | - | - | - | - | - | (20,000) | - | - | - | (20,000) |
| 1.5 Lien Interest & Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Unsecured Bond Interest & Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Interest & Fees** | $ - | $ - | $ - | $ (72) | $ - | $ - | $ (38,750) | $ (59) | $ - | $ (20,000) | $ - | $ - | $ (49) | $ (58,930) |
| **Total Restructuring Costs** | $ (7,723) | $ (200) | $ - | $ - | $ - | $ - | $ (2,399) | $ - | $ - | $ - | $ (2,860) | $ (2,850) | $ - | $ (16,032) |
| **Net Cash Flow** | $ (9,339) | $ (27,625) | $ (24,127) | $ 86,200 | $ (48,530) | $ (15,485) | $ (57,304) | $ 86,068 | $ (43,424) | $ (34,135) | $ (9,879) | $ 81,778 | $ (54,776) | $ (70,576) |
| Beginning Cash Balance | 190,835 | 181,496 | 153,871 | 129,744 | 215,944 | 167,414 | 151,930 | 94,625 | 180,693 | 137,270 | 103,135 | 93,256 | 175,034 | 190,835 |
| Net Cash Flow | (9,339) | (27,625) | (24,127) | 86,200 | (48,530) | (15,485) | (57,304) | 86,068 | (43,424) | (34,135) | (9,879) | 81,778 | (54,776) | (70,576) |
| Ending Cash Balance | $ 181,496 | $ 153,871 | $ 129,744 | $ 215,944 | $ 167,414 | $ 151,930 | $ 94,625 | $ 180,693 | $ 137,270 | $ 103,135 | $ 93,256 | $ 175,034 | $ 120,259 | $ 120,259 |