## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING PROPOSED
DISCLOSURE STATEMENT; (II) ESTABLISHING SOLICITATION AND VOTING
PROCEDURES; (III) ESTABLISHING RIGHTS OFFERING PROCEDURES;
(IV) SCHEDULING CONFIRMATION HEARING; (V) ESTABLISHING NOTICE AND
OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN;
AND (VI) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE
<u>ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 6, 2020 AT 2:00 PM (PREVAILING CENTRAL TIME) IN COURTROOM 404, 4th FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN 28 DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

EP Energy Corporation and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**"), respectfully represent as follows in support of this motion (this "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

**Relief Requested**

1.      Pursuant to sections 1125, 1126, 1128, 1145, and 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3003, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 3016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of June 10, 2019, the "**Complex Chapter 11 Procedures**"), the Debtors request approval of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"):

     i.      approving the proposed *Disclosure Statement for Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors* (the "**Proposed Disclosure Statement**") as containing adequate information pursuant to section 1125 of the Bankruptcy Code;[2]

     ii.      scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the proposed Chapter 11 Plan (the "**Plan**");

     iii.      approving the below described solicitation procedures for the Plan;

     iv.      approving the below described confirmation procedures for the Plan;

     v.      approving the proposed procedures for the Rights Offering (the "**Rights Offering Procedures**"); and

     vi.      granting related relief.

2.      For the convenience of the Court and parties in interest, the below chart provides a summary of the key dates sought pursuant to the Proposed Order:

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Disclosure Statement Hearing | January 6, 2020 at 2:00 p.m. (Prevailing Central Time) |
| Voting Record Date | January 6, 2020 |

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Proposed Disclosure Statement.

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Rights Offering Record Date | January 7, 2020 |
| Mailing Deadline for Confirmation Hearing Notice | Three days after entry of Proposed Order |
| Solicitation Mailing Deadline | Five business days after entry of the Proposed Order |
| Plan Supplement Deadline | January 30, 2020 |
| Rule 3018(a) Motion Deadline | February 3, 2020 |
| Voting Deadline | February 6, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Rights Expiration Time | February 6, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Plan Objection Deadline | February 6, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Ballot Certification Deadline | February 8, 2020 |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | February 11, 2020 |
| Confirmation Hearing | February 13, 2020 at 8:30 a.m. (Prevailing Central Time) |

3.      For further reference of the Court and parties in interest, the Debtors provide

below a list of the various exhibits and documents cited throughout this Motion:

| DOCUMENT | EXHIBIT |
|---|---|
| Proposed Order | Exhibit A to the Motion |
| Notice of Disclosure Statement Hearing | Exhibit B to the Motion |
| Disclosure Statement | Filed Contemporaneously Herewith |
| Plan | Exhibit A to the Disclosure Statement |
| Rights Offering Procedures | Exhibit F to the Disclosure Statement |
| Confirmation Hearing Notice | Exhibit 1 to the Proposed Order |
| Form of RBL Claims (Class 3) Ballot | Exhibit 2 to the Proposed Order |
| Form of 1.5L Notes Claims (Classes 6 and 7) Master Ballot | Exhibit 3 to the Proposed Order |
| Form of 1.5L Notes Claims (Classes 6 and 7) Beneficial Holder Ballot | Exhibit 4 to the Proposed Order |
| Form of General Unsecured Claims (Class 7) Ballot | Exhibit 5 to the Proposed Order |
| Form of Unsecured Notes Claims (Class 7) Master Ballot | Exhibit 6 to the Proposed Order |
| Form of Unsecured Notes Claims (Class 7) Beneficial Ballot | Exhibit 7 to the Proposed Order |
| Form of Convenience Claims (Class 8) Ballot | Exhibit 8 to the Proposed Order |
| Form of Existing Parent Equity Interests (Class 11) Master Ballot | Exhibit 9 to the Proposed Order |

| DOCUMENT | EXHIBIT |
|---|---|
| Form of Existing Parent Equity Interests (Class 11) Beneficial Holder Ballot | Exhibit 10 to the Proposed Order |
| Form of Existing Parent Equity Interests (Class 11) Registered Holder Ballot | Exhibit 11 to the Proposed Order |
| Notice of Non-Voting Status | Exhibit 12 to the Proposed Order |

### Jurisdiction

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5.     On October 3, 2019 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

7.     On October 21, 2019, the United States Trustee for the Southern District of Texas (Houston Division) (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases (the "**Creditors' Committee**").  *See Notice of Appointment of Official Committee of Unsecured Creditors* (Docket No. 200).  No trustee, examiner, or statutory committee—other than the Creditors' Committee—has been appointed in these chapter 11 cases.

8.     The Debtors are an oil and natural gas exploration and production company headquartered in Houston, Texas.  The Company operates through a diverse base of producing assets and is focused on the development of drilling inventory located in three areas:  the Eagle Ford shale in South Texas, the Permian basin in West Texas, and Northeastern Utah.

9.     Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of David Rush in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (Docket No. 16).

## Summary of Plan

10.     As described in more detail in the Proposed Disclosure Statement, the Plan provides for a comprehensive restructuring of the Company's balance sheet and a significant investment of capital in the Debtors' business.

11.     The Debtors' proposed restructuring under the Plan contemplates, among other things:

    i.     a reduction of current debt on the Debtors' balance sheet by approximately $3.3 billion;

    ii.     Up to a $475 million equity rights offering (the "**Rights Offering**"), $463 million of which is being backstopped by certain affiliates of, or funds managed by, (a) Apollo Global Management, LLC ("**Apollo**"), (b) Elliott Management Corporation ("**Elliott**" and, together with Apollo, the "**Initial Supporting Noteholders**"), (c) Access Industries, Inc. ("**Access**"), and (d) Avenue Capital Group (collectively, with the Initial Supporting Noteholders and Access, the "**Supporting Noteholders**").

    iii.     access to an approximately $629 million exit credit facility (the "**Exit Facility**") for which over 96% of the Company's existing RBL Lenders have committed to provide support, and which the Debtors' prepetition RBL Facility and postpetition DIP Facility will "roll" into on the effective date of the Plan ("**Effective Date**").

12.     The Company also may, subject to the terms of the Plan Support Agreement and Exit Commitment Letter, (i) consummate a private placement of New Common Shares for an aggregate purchase price of up to $75 million (the "**Private Placement**"), (ii) have Apollo and Access contribute their equity interests in Wolfcamp Drillco Operating L.P. to the Reorganized

Debtors on the Effective Date of the Plan in exchange for New Common Shares, and (iii) obtain an incremental amount of up to $300 million in exit financing under the Exit Facility.

13.     The Debtors will use the proceeds of the Rights Offering (and the Private Placement, if consummated) to, among other things, fund the costs and expenses of these Chapter 11 Cases, fund distributions under the Plan, and pay down the DIP Facility and Exit Facility as well as for working capital after emergence from chapter 11.

14.     The Plan provides for the following treatment of claims and equity interests:

i.   To the extent the DIP Facility is not paid down in full from the proceeds of the Rights Offering or the Private Placement, each holder of Allowed DIP Claims will receive, on a dollar-for-dollar basis, first-lien, first-out revolving loans or revolving commitments (as applicable) under the Exit Credit Agreement and letter of credit participations under the Exit Credit Agreement.

ii.  Holders of Allowed RBL Claims will receive, on a dollar-for-dollar basis, first lien, second-out term loans under the Exit Credit Agreement; *provided*, that each holder of an Allowed RBL Claim that elects to participate in the first-out revolving portion of the Exit Facility by the Voting Deadline shall receive, on a dollar-for-dollar basis, first lien, first-out revolving loans under the Exit Credit Agreement and letter of credit participations under the Exit Credit Agreement.

iii. Holders of Allowed 1.125L Notes Claims will be reinstated in the principal amount of $1 billion; *provided*, that the Debtors may, with the consent of the Initial Supporting Noteholders, deliver a notice of redemption with respect to, or otherwise voluntarily prepay (including by way of tender offer), a portion of the 1.125L Notes.

iv.  Holders of Allowed 1.25L Notes Claims will be reinstated in the principal amount of $500 million; *provided*, that the Debtors may, with the consent of the Initial Supporting Noteholders, deliver a notice of redemption with respect to, or otherwise voluntarily prepay (including by way of tender offer), a portion of the 1.25L Notes.

v.   Holders of Allowed 1.5L Notes Claims will receive, on account of the secured portion of such Allowed 1.5L Notes Claims, their pro rata share of (i) 99.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Private Placement, the Backstop Commitment Premium, the Jeter Shares, and the EIP Shares, and (ii) the right to participate in the Rights Offering.

vi.  Holders of Allowed Unsecured Claims (*i.e.*, Unsecured Notes Claims, 1.5L Notes Deficiency Claims, and General Unsecured Claims) will receive their pro rata share of 1.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement, the Jeter Shares, and the EIP Shares.

vii.  Holders of Existing Parent Equity Interests will receive, on account of available assets of EP Energy, their pro rata share of $500,000 in cash.

**The Proposed Disclosure Statement**

15.  Pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b), the Debtors prepared and filed the Proposed Disclosure Statement to provide parties with adequate information and disclosure regarding the terms of the Plan.  The Debtors intend to provide parties with copies of the Proposed Disclosure Statement, once approved, in connection with the Debtors' solicitation of votes to accept or reject the Plan.

**A.      Approval of the Proposed Disclosure Statement**

16.  Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding a proposed chapter 11 plan of reorganization.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

17.  Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan.  *See, e.g.*, *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015) ("The proponent of a reorganization

plan . . . must provide a court-approved disclosure statement that contains 'adequate information' about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan."); *In re Tex. Rangers Baseball Partners,* 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan."). The essential requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)).

18.     Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d). Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement. *See, e.g.*, *Texas Extrusion Corp. v. Lockheed Corp*. (*In re Texas Extrusion Corp*.), 844 F.2d 1142, 1157 (5th Cir. 1988) (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court"); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement." (citing *In re River Village Assoc.,* 181 B.R. 795, 804 (E.D. Pa. 1995)). Congress granted bankruptcy courts wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various facts and circumstances that accompany chapter 11 cases. *See* H.R. REP. NO. 595, 95th Cong., 1st Sess. 408–09 (1977); *see also In re Cajun Elec. Power Coop.* Inc., 150 F.3d 503, 518

(5th Cir. 1998) ("[W]ith respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court.'" (quoting S. REP. NO. 95-989, at 121 (1978)). Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Texas Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.").

19.     To determine whether a disclosure statement contains adequate information, courts generally examine whether the disclosure statement contains the following types of information, as applicable:

(a)     the circumstances that gave rise to the filing of the bankruptcy petition;

(b)     an explanation of the available assets and their value;

(c)     the anticipated future of the debtor(s);

(d)     the source of the information provided in the disclosure statement;

(e)     a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

(f)     the condition and performance of the debtor while in chapter 11;

(g)     information regarding claims against the estate;

(h)     a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(i)     the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j)     information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

(k)     a summary of the plan of reorganization or liquidation;

(l)     an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

(m)     the collectability of any accounts receivable;

(n)     any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(o)     information relevant to the risks being taken by the creditors and interest holders;

(p)     the actual or projected value that can be obtained from avoidable transfers;

(q)     the existence, likelihood, and possible success of nonbankruptcy litigation;

(r)     the tax consequences of the plan; and

(s)     the relationship of the debtor with its affiliates.

See, e.g., *In re Metrocraft Publ'g. Servs, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re ReoStar Energy Corp.*, 2012 Bankr. LEXIS 2418, at *4–5 (Bankr. N.D. Tex. May 30, 2012) (noting that "courts have developed checklists for determining whether a disclosure statement meets the requirements of section 1125"). Such a list is not meant to be comprehensive, and a debtor is not required to provide all the information on the list. Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present. *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (adopting a similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of a similar list but cautioning that "no one list of categories will apply in every case").

20.     The Proposed Disclosure Statement provides many of the types of information identified in the applicable categories above, including, but not limited to:

(a)     an overview of the Plan (Section VI);

(b)     key events leading to the commencement of the Debtors' chapter 11 cases (Section IV);

(c)     a description of the Debtors' capital structure (Section III.D);

(d)     the operation of the Debtors' businesses (Section III.A);

10

(e)    the indebtedness of the Debtors and information regarding pending claims (Section III.D);

(f)    a disclaimer, which indicates that no statements or information concerning the debtors or their assets or securities are authorized, other than those set forth in the Proposed Disclosure Statement (Section VII);

(g)    a description of events during the chapter 11 cases (Section V);

(h)    an overview of a liquidation analysis under chapter 7 (Section XII.C and Exhibit D);

(i)    the accounting and valuation methods used to produce the financial information in the disclosure statement (Section XI);

(j)    risk factors affecting the Debtors (Section IX);

(k)    financial information, valuations, and pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the Plan (Section XI and Exhibit E);

(l)    a description of the rights offering procedures as applicable to the Plan (Exhibit F);

(m)    requirements for confirmation of the Plan (Section XI); and

(n)    tax consequences of the Plan (Section VIII).

21.    In addition to the types of information that courts typically look for in a disclosure statement, the Proposed Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan (Section XII), and concludes with the Debtors' recommendation that holders of Claims or Interests eligible to vote should vote to accept the Plan because it provides the highest and best recoveries to holders of Claims or Interests. *See* Section XIII.

22.    Based on the foregoing, the Debtors submit that the Proposed Disclosure Statement contains adequate information for a voting party to make an informed judgment regarding whether to vote to accept or reject the Plan, and therefore satisfies the requirements of section 1125 of the Bankruptcy Code. Thus, the Debtors respectfully request that the Court

approve the Proposed Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

**B.     The Proposed Disclosure Statement Provides Adequate Notice of Release, Exculpation, and Injunction Provisions in the Plan**

23.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction."  Fed. R. Bankr. P. 3016(c).

24.     The Plan includes injunctions, releases, and exculpations in sections 10.5, 10.6, 10.7, 10.8, and 10.9.  The Proposed Disclosure Statement in Article VI describes in detail the releases provided under the Plan, the entities to be providing such releases, the entities to be released, and the Claims and causes of action to be released.  Additionally, Article VI sets forth the terms of the proposed exculpation provision under the Plan, and the proposed injunction related to the release and exculpation provisions in the Plan.  Each of the foregoing sections is set forth in the Proposed Disclosure Statement in conspicuous, bold print.  Accordingly, the Debtors respectfully submit that the Proposed Disclosure Statement complies with Bankruptcy Rule 3016(c).

**C.     Approval of the Notice of Disclosure Statement Hearing**

25.     In accordance with Bankruptcy Rules 2002(a) and 3017 and Local Rule 2002-1, contemporaneously with the filing of this Motion, the Debtors filed and served (or caused to be served) a notice of the hearing on this Motion (the "**Disclosure Statement Notice**"), substantially in the form annexed hereto as **Exhibit B**, by electronic transmission, by overnight mail or by first class mail to (i) the U.S. Trustee, (ii) Stroock & Stroock & Lavan LLP, 180 Maiden

Lane, New York, NY 10038 (Attn: Kristopher M. Hansen, Esq., Frank A. Merola, Esq., Kenneth Pasquale, Esq., Erez R. Gilad, Esq., and Jonathan D. Canfield, Esq.) and Polsinelli PC, 1000 Louisiana Street, Suite 6400, Houston, TX 77002 (Attn: Trey Monsour, Esq.), counsel to the Official Committee of Unsecured Creditors, (iii) Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002 (Attn: Charles S. Kelley, Esq.) and Mayer Brown LLP, 71 S. Wacker Drive, Chicago, IL 60606 (Attn: Sean T. Scott, Esq.), counsel to the RBL Agent, (iv) Morrison & Foerster LLP, 250 W 55th Street, New York, NY 10019 (Attn: Dennis L. Jenkins, Esq.), counsel to the Ad Hoc 1.125L/1.25L Noteholder Group; (v) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: Sidney P. Levinson, Esq.), counsel to Access Industries, Inc., (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019 (Attn: Jeffrey Saferstein, Esq., Jacob A. Adlerstein, Esq., and Brian Bolin, Esq.), counsel to Apollo Global Management, LLC, (vii) Avenue Capital Group, 11 West 42nd Street, 9th Floor, New York, NY 10036 (Attn: Randal T. Klein), (viii) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Gerard Uzzi, Esq. and Eric Stodola, Esq.), counsel to Elliott Management Corporation, (ix) the Securities and Exchange Commission, (x) the Office of the United States Attorney, 1000 Louisiana Street, Suite 2300, Houston, TX 77002, (xi) the Internal Revenue Service, (xii) the registered and beneficial holders of Interests (as defined in the Plan) in the Debtors, (xiii) the beneficial holders of the 1.5L Notes and Unsecured Notes (as defined in the plan), (xiv) any other known holders of Claims against the Debtors, and (xv) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Disclosure Statement Notice provides at least 28 days' notice of the hearing to approve the Proposed Disclosure Statement (the "**Disclosure Statement Hearing**") and of the deadline by which objections to approval of the Proposed Disclosure Statement must be

filed (the "**Disclosure Statement Objection Deadline**").  The Debtors respectfully submit that such notice is sufficient under the circumstances.  The Debtors request the Court find that such notice is due and proper and that no further notice is necessary.

26.     The Debtors submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline for all purposes and, accordingly, request that the Court approve such procedures.

## **The Solicitation Procedures**

27.     In connection with the Proposed Disclosure Statement and Plan, the Debtors propose to implement the solicitation and balloting procedures described below.  The Debtors have retained Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**") as their claims, noticing, and solicitation agent through the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 114).

**A.     Parties Entitled to Vote**

28.     Pursuant to the Plan, the Debtors have created thirteen (13) classes of Claims and Interests.  Of those classes, the Debtors submit that the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (collectively, the "**Voting Classes**"):

| Class | Description |
|-------|-------------|
| Class 3 | RBL Claims |
| Class 6 | Secured 1.5L Notes Claims |
| Class 7 | Unsecured Claims |
| Class 8 | Convenience Claims |
| Class 11 | Existing Parent Equity Interests |

29.     A creditor or interest holder that holds a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)     as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b)     as of the Voting Record Date, such creditor's Claim or interest holder's Interest has been disallowed, expunged, disqualified or suspended;

(c)     such creditor has timely filed a proof of claim in accordance with the *Order Setting Bar Date for Filing Proofs of Claims* (Docket No. 98) (the "**Bar Date Order**")[3] as of the Voting Record Date and the Debtors have not scheduled such creditor's Claim or scheduled such creditor's claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)     such creditor's Claim or interest holder's Interest is subject to an objection or request for estimation filed on or before January 17, 2020, subject to the procedures set forth below.

30.     Section 1126(f) of the Bankruptcy Code provides that, for purposes of soliciting votes on confirmation of a plan of reorganization, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).  The Plan leaves unimpaired certain Claims and Interests.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Claims and Interests are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the plan (collectively, the "**Unimpaired Classes**").

31.     Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."  11 U.S.C. § 1126(g).  Holders of Subordinated Claims and

---

[3] Pursuant to the Bar Date Order, the deadline for creditors or other parties in interest to file a proof of claim is December 16, 2019.  The deadline for governmental units to file a proof of claim is March 31, 2020.

Other Equity Interests will receive no recovery under the Plan.  Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, such holders are deemed to reject the Plan and are not entitled to vote on the plan (the "**Deemed Rejecting Classes**" and, together with the **Unimpaired Classes**, the "**Non-Voting Classes**").

32.    Holders of Claims or Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 4 | 1.125L Notes Claims | Unimpaired | Presumed to Accept |
| Class 5 | 1.25L Notes Claims | Unimpaired | Presumed to Accept |
| Class 9 | Intercompany Claims | Unimpaired | Presumed to Accept |
| Class 10 | Subordinated Claims | Impaired | Deemed to Reject |
| Class 12 | Other Equity Interests | Impaired | Deemed to Reject |
| Class 13 | Intercompany Interests | Unimpaired | Presumed to Accept |

**B.    The Voting Record Date**

33.    Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, and except to the extent the Court orders otherwise, the debtor must mail the relevant solicitation materials to all creditors and equity security holders, including "holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).

34.    To identify and establish the universe of creditors entitled to vote on the Plan, the Debtors request that the Court set January 6, 2020 as the date for determining (i) which

creditors and equity security holders in Class 3 (RBL Claims); Class 6 (Secured 1.5L Notes Claims); Class 7 (Unsecured Claims); Class 8 (Convenience Claims); and Class 11 (Existing Parent Equity Interests) are entitled to vote on the Plan and (ii) which creditors and equity security holders in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status (as defined below) (the "**Voting Record Date**").

35.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (defined below) and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot (defined below) on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

36.     The Debtors believe that the Voting Record Date is appropriate, as it facilitates the determination of which creditors and equity security holders are entitled to vote on the Plan or, in the case of non-voting creditors and equity security holders in Non-Voting Classes, to receive the Notice of Non-Voting Status.  Accordingly, the Debtors request the Court approve such date.

## C.     Temporary Allowance / Disallowance of Claims

37.     Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim or interest may accept or reject a chapter 11 plan.  A class of claims accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more

than one-half in number of the allowed claims of such class held by creditors that voted.  11 U.S.C.

§ 1126(c).   A class of interests accepts a plan if such plan has been accepted by creditors that hold

at least two-thirds in amount of the allowed interests of such class held by creditors that voted. 11

U.S.C. § 1126(c).   Bankruptcy Rule 3018(a) provides that the Court may temporarily allow a

claim in an amount that the Court deems appropriate for the purpose of such claim holder accepting

or rejecting a plan.

### D.    Establishing Claims or Interest Amounts for Voting Purposes

38.    **RBL Claims**.  The amount of each RBL Claim for voting purposes only

will be established by reference to the list of participant lenders to the RBL Facility and those

participant lenders' corresponding RBL amounts as of the Voting Record Date as reflected on the

loan register maintained by the RBL Agent, which shall be provided by the RBL Agent to the

Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

39.    **Unsecured Claims and Convenience Claims (Other than Notes Claims)**.

The amount of each Unsecured Claim and Convenience Claim, for voting purposes, only (with the

exception of Unsecured Claims arising from Secured 1.5L Notes or Unsecured Notes) shall be

established pursuant to the following hierarchy:

(a)    If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b)    If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c)    If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim  timely filed in

accordance with the Bar Date Order as of the Voting Record Date, provided that if the amount set forth on a timely-submitted proof of claim is wholly liquidated, contingent, and/or disputed, then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00; and

(d)   If neither (a), (b), nor (c) apply, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, provided that if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

40.    Any creditor holding an Unsecured Claim that elects to be treated as a Convenience Class Claim in 8 shall have its Claim reduced to $100,000 for voting purposes.

41.    **1.5L Notes Claims and Unsecured Notes Claims**.  The amount of each 1.5L Notes Claim and Unsecured Notes Claim for voting purposes only will be established by reference to the books and records of the applicable Nominee (defined below) as of the Voting Record as evidenced by the securities position report from the Depository Trust Company ("**DTC**"), which shall be provided to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

42.    For solicitation and tabulation purposes, the Debtors will provide one ballot to a Holder of a 1.5L Notes Claim for the purpose of voting the Holder's Claims in both Class 6 and Class 7 simultaneously in the applicable amounts as determined by formula

43.    **Existing Parent Equity Interests**.  The amount of each Existing Parent Equity Interests for voting purposes only will be established by reference to (a) the applicable books and records of the Debtors' transfer agent and (b) the books and records of the applicable Nominee (defined below) as of the Voting Record as evidenced by the securities position report from DTC, which shall be provided by the transfer agent and DTC to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

44.     The Debtors further request that, if the Debtors have filed an objection to, or a request for estimation of, a Claim or Interest on or before **January 17, 2020**, such Claim is temporarily disallowed for voting purposes, except as ordered by the Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by this Court prior to or concurrent with entry of an order confirming the Plan.

45.     The Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process.  If any creditor seeks to challenge the allowance of its claim for voting purposes, the Debtors propose that the creditor file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes in a different amount.  The Debtors request that the Court, pursuant to section 105(a) of the Bankruptcy Code, (a) fix **February 3, 2020** (the "**Rule 3018(a) Motion Deadline**") as the deadline for the filing and serving of motions pursuant to Bankruptcy Rule 3018(a) requesting temporary allowance of a movant's Claim for purposes of voting (the "**Rule 3018(a) Motion(s)**") and (b) require that such Rule 3018(a) Motions be filed with the Court and served on undersigned counsel and the other Notice Parties so as to be **actually received** not later than 4:00 p.m. (Prevailing Central Time) on the Rule 3018(a) Motion Deadline.  The Debtors propose that the Court consider only those Rule 3018(a) Motions that have been timely filed and served in accordance with the provisions of this paragraph.  The Debtors further propose that upon entry of an order of the Court granting a Rule 3018(a) Motion, such creditor's Ballot (as defined below) be counted in accordance with the above designated guidelines, unless temporarily Allowed in a

different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.

**E.      Approval of Solicitation Packages and Procedures for Distribution Thereof**

46.      Bankruptcy Rule 3017(d) lists the materials that must be provided to holders of claims or interests for the purpose of soliciting votes on a chapter 11 plan and providing adequate notice of the hearing to consider confirmation thereof.   Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement, — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:
>
> (a)      the plan or a court-approved summary of the plan;
>
> (b)      the disclosure statement approved by the court;
>
> (c)      notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (d)      any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

47.      In accordance with the foregoing, the Debtors propose to mail, or cause to be mailed, solicitation packages (the "**Solicitation Packages**") containing the information described below as soon as practicable after entry of the Proposed Order approving the Proposed Disclosure Statement (as approved, the "**Disclosure Statement**"), but not later than four business days after the date of entry of such order (the "**Solicitation Date**"), to the U.S. Trustee and holders of Claims or Interests in Voting Classes, as required by Bankruptcy Rule 3017(d).

48.     In accordance with Bankruptcy Rule 3017(d), Solicitation Packages shall contain copies of:

    (a)    the Proposed Order, as entered by the Court and without attachments;

    (b)    the Notice of (I) Approval of Disclosure Statement, (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of the Plan, (IV) Procedures for Objecting to the Confirmation of the Plan, and (V) Procedures and Deadline for Voting on the Plan (the "**Confirmation Hearing Notice**");

    (c)    a CD-ROM or USB flash drive containing the Disclosure Statement, which shall include the Plan as an attachment (except as provided below); and

    (d)    if the recipient is entitled to vote on the Plan (as set forth herein), a Ballot (as defined below) customized for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below, and a postage-prepaid return envelope.[4]

49.     If the recipient is holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan (as set forth herein), then they will be served the Confirmation Hearing Notice and the Notice of Non–Voting Status (as defined and described below) only.

50.     To reduce costs and the impact on the environment, the Debtors propose to send the Disclosure Statement and Plan in electronic format (on a CD-ROM or USB flash drive) instead of printed hard copies.  Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://cases.primeclerk.com/EPEnergy/Home-Index.  However, if service by CD-ROM or USB imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a computer or the Internet), the Debtors propose that such creditor may request a paper copy of the Plan and the Disclosure Statement by contacting Prime Clerk LLC by email at EPEnergyinfo@primeclerk.com,

---

[4] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada).  Upon receipt of such request, the Debtors will provide such party with a paper copy of the Plan and the Disclosure Statement at no cost to the party within five days thereafter.

51.    The Debtors will not mail Solicitation Packages to creditors that have Claims that have already been paid in full; *provided, however*, that if any such creditor would be entitled to receive a Solicitation Package for any other reason, then the Debtors will send such creditor a Solicitation Package in accordance with the procedures set forth herein.

52.    The Debtors anticipate that the United States Postal Service may return some Solicitation Packages as undeliverable.  The Debtors submit that it is costly and wasteful to mail Solicitation Packages to the same addresses from which mail previously was returned as undeliverable.  Therefore, the Debtors request the Court waive the strict notice rule and excuse the Debtors from mailing Solicitation Packages to addresses from which the Debtors received mailings returned as undeliverable, unless the Debtors are provided with a new mailing address sufficiently before the Voting Deadline.

53.    Although the Debtors have made, and will make, every effort to ensure that the Solicitation Packages as described herein and as approved by the Court are in final form, the Debtors nonetheless request authority to make non-substantive changes (subject to the terms of the Plan Support Agreement, dated October 18, 2019, to which each Debtor is a party), to the Disclosure Statement, the Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

54.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and that the proposed Solicitation Packages comply with Bankruptcy Rule 3017(d).  Accordingly, the Debtors request the Court's approval thereof.

**F.      Approval of Notice of Non-Voting Status**

55.     Bankruptcy Rule 3017(d) permits a court to order that the Plan and Disclosure Statement need not be mailed to unimpaired classes.  In lieu thereof, a court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense . . . and notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to the members of such classes. Fed. R. Bankr. P. 3017(d).

56.     As discussed above, Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes Claims), and Class 5 (1.25L Notes Claims) are Unimpaired and presumed to accept the Plan and, therefore, holders in these classes are not entitled to vote on the Plan.  Accordingly, the Debtors propose to mail to holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes Claims), and Class 5 (1.25L Notes Claims), in lieu of a Solicitation Package, the Confirmation Hearing Notice and a notice of non-voting status, substantially in the form attached to the Proposed Order as **Exhibit 12** (the "**Notice of Non-Voting Status**").

57.     Class 10 (Subordinated Claims) and Class 12 (Other Equity Interests) are Impaired and are expected to receive no recovery under the Plan and, therefore, holders of Claims or Interests in these Classes are deemed to have rejected the Plan and not entitled to vote on the Plan.  Accordingly, the Debtors propose to mail to holders of Class 10 (Subordinated Claims) and

Class 12 (Other Equity Interests), in lieu of a Solicitation Package, the Confirmation Hearing Notice and the Notice of Non-Voting Status.

58.     The Notice of Non-Voting Status provides (i) notice of the Court's approval of the Disclosure Statement, (ii) notice of the filing of the Plan, (iii) notice of the holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan.  In addition, the Non-Voting Status Notice contains the full text of the release, exculpation, and injunction provisions set forth in Article 10 of the Plan and advises such holders in Non-Voting Classes that they will be bound by the third-party release provision in section 10.7(b) of the Plan unless they timely and properly choose to opt out.  The Notice of Non-Voting Status also includes a form to complete and return if the party elects to opt-out of such third-party release provision. The Debtors submit that the Notice of Non-Voting Status satisfies the requirements of paragraph 30 of the Complex Case Procedures regarding consensual releases against non-debtor parties with respect to the Holders of Claims or Interests in the Non-Voting Classes.

59.     Additionally, with respect to Class 9 (Intercompany Claims) and Class 13 (Intercompany Interests), the Debtors request a waiver of any requirement to serve the Notice of Non-Voting Status or any other type of notice in connection with solicitation of the Plan because such Claims or Interests are held by the Debtors or the Debtors' affiliates and are Unimpaired by the Plan.

60.     The Debtors submit the above-described notices and procedures with respect to Non-Voting Classes satisfy the requirements of Bankruptcy Rule 3017(d) and, therefore, respectfully request the Court approve them.

**G.      Approval of Forms of Ballots**

61.      Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  The Debtors propose to distribute to holders of Claims or Interests in Voting Classes that are otherwise eligible to vote (as set forth herein), ballots substantially in the forms attached to the Proposed Order as Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 (collectively, the **"Ballots"**), which are incorporated herein by reference. Although the Ballots are based on Official Bankruptcy Form No. B 314, they have been modified to address the specific circumstances of these chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate for each Voting Class.

62.      All holders of Claims or Interests in Voting Classes will receive Ballots that include an election regarding certain non-debtor release provisions in the Plan (the "**Non-Debtor Release Provisions**").  Notwithstanding anything contained herein to the contrary, only those holders of Claims or Interests in Voting Classes who vote to reject the Plan may elect to opt out of the third-party release provision in section 10.7(b) of the Plan.

63.      The Debtors propose to distribute the following two forms of Ballots to holders of 1.5L Notes Claims entitled to vote on the Plan in Class 6 (Secured 1.5L Notes Claims) and Class 7 (Unsecured Claims): (i) a form of Ballot for a beneficial owner of a 1.5L Notes Claim (the "**1.5L Notes Beneficial Holder**" and the corresponding ballot, the "**1.5L Beneficial Holder Ballot**") and (ii) a form of Ballot for the bank, broker, or other financial institution that holds the 1.5L Notes "in street name" at DTC on behalf of the 1.5 Beneficial Holder (the "**1.5L Notes Nominee**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**1.5L Notes Master Ballot**").

64.     In addition, the Debtors propose to distribute the following three forms of Ballots, as applicable, to holders of Claims entitled to vote on the Plan in Class 7 (Unsecured Claims): (i) a form of Ballot for a holder of General Unsecured Claims; (ii) a form of Ballot for a beneficial owner of the Unsecured Notes (a "**Class 7 Beneficial Holder**" and the corresponding ballot, the "**Class 7 Beneficial Holder Ballot**") and (iii) a form of Ballot for the bank, broker, or other financial institution that holds the Unsecured Notes "in street name" at DTC on behalf of the Class 7 Beneficial Holder (the "**Class 7 Nominee**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Class 7 Master Ballot**").

65.     Finally, Debtors propose to distribute the following three forms of Ballots, as applicable, to holders of Interests entitled to vote on the Plan in Class 11 (Existing Parent Equity Interests): (i) a form of Ballot for registered holders of Existing Parent Equity Interests (the "**Class 11 Registered Holder Ballot**"); (ii) a form of Ballot for a beneficial holder of Existing Parent Equity Interests (a "**Class 11 Beneficial Holder**," and the corresponding ballot, the "**Class 11 Beneficial Holder Ballot**," together with the 1.5L Notes Beneficial Holder Ballot and Class 7 Beneficial Holder Ballot, the "**Beneficial Holder Ballots**"); and (iii) a form of Ballot for the bank, broker, or other financial institution "in street name" at DTC on behalf of the Class 11 Beneficial Holder (the "**Class 11 Nominee**," and, together with 1.5L Notes Nominees and Class 7 Nominees, the "**Nominees**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Class 11 Master Ballot**" and, together with the 1.5L Notes Master Ballot and Class 7 Master Ballot, the "**Master Ballots**").

66.     The Debtors request that the Court require such Nominees, upon receipt of the Solicitation Packages, to promptly distribute such Solicitation Packages (including Beneficial

Holder Ballots) to Beneficial Holders using the following method within five business days of receipt of the Solicitation Packages:

> The Nominee shall obtain the votes of Beneficial Holders by forwarding to the Beneficial Holders the unsigned Beneficial Holder Ballots, together with the Solicitation Package, a pre-addressed, postage-paid return envelope provided by, and addressed to, the Nominee, and other materials requested to be forwarded. Each such Beneficial Holder must then indicate her, his, or its vote on the Beneficial Holder Ballot, complete the information requested on the Beneficial Holder Ballot, review the certifications contained on the Beneficial Holder Ballot, execute the Beneficial Holder Ballot, and return the Beneficial Holder Ballot to the Nominee. After collecting the Beneficial Holder Ballots, the Nominee should, in turn, complete the Master Ballot compiling the votes and other information from the Beneficial Holder Ballots, execute the Master Ballot, and deliver the Master Ballot to the Voting Agent so that it is RECEIVED by the Voting Agent on or before the Voting Deadline.  Each Nominee should advise its Beneficial Holders to return their Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it sufficient time to prepare and return the Master Ballot to the Voting Agent so that it is RECEIVED by the Voting Agent on or before the Voting Deadline.  For the avoidance of doubt, if it is the Nominee's customary practice to transmit the information contained in the Solicitation Package to its Beneficial Holder clients by e-mail or any other method, the Nominee is authorized to follow those customary practices.  Moreover, if it is the Nominee's customary practice to collect votes from its Beneficial Holder clients by telephone, e-mail, "voter information form", or otherwise (in lieu of a Beneficial Holder Ballot), the Nominee is authorized the follow those customary practices.

67.     The Debtors also propose to distribute Ballots to each of the (i) holders of RBL Claims in Class 3 and (ii) holders of Convenience Claims in Class 8.

68.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots from holders in Class 3, holders in Class 7 that are not voting their Note Claims, holders in Class 8, and registered holders of the Existing Parent Equity Interests in Class 11 (to the extent they are determined to be entitled to vote) via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website maintained by Prime Clerk ("**E-Ballot**").  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing E-Ballot (which allows a holder to submit an electronic signature).  If applicable,

instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted through E-Ballot in this manner and the voting party's electronic signature will be deemed to be immediately legally valid and effective.

## H.    The Voting Deadline

69.    Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan. . . ."  Fed. R. Bankr. P. 3017(c).  The Debtors anticipate mailing substantially all of the Solicitation Packages by no later than five business days after entry of the Proposed Order.  Based on such schedule, the Debtors propose that, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent:  (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via E-Ballot so that (in each instance) it is actually received by the Voting Agent no later than February 6, 2020 at 4:00 p.m. (Prevailing Central Time)] or some other date fixed by the Court (the "**Voting Deadline**").  The Debtors submit that the proposed 24-day solicitation period is a sufficient period within which creditors can make an informed decision whether to accept or reject the Plan.

## I.    Tabulation Procedures

70.    **For Votes Cast Not by (or on Behalf of) Beneficial Holders of the Debtors' Securities**. The Debtors request that the following procedures apply to tabulating Ballots cast not by (or on behalf of) Beneficial Holders of the Debtors Securities:

> (a)    Whenever a holder of Claims or Interests casts more than one Ballot voting the same Claim(s) or Interests before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent, and thus, to supersede any

prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked; provided, that in the case of any Ballot cast by a Supporting Noteholder with respect to its Claims in Class 6, such Supporting Noteholder shall be permitted, by written notice to the Debtors, to revoke such Ballot at any time following the termination of the Plan Support Agreement.

(b)     Whenever a holder of Claims or Interests casts a Ballot that is properly completed, executed and timely returned to the Voting Agent, but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c)     Whenever a holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent, but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)     A holder of Claims or Interests shall be deemed to have voted the full amount of its Claim or Interest in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor.  Any creditor's or equity security holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e)     A holder of Claims or Interests that holds a claim against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f)     Whenever a holder of Claims or Interests casts multiple Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

(g)     A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h)     The following Ballots shall not be counted:

    i.     Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

    ii.     Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii.     Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

iv.     Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim or Interest in a Voting Class;

v.      Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

vi.     Any Ballot which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.    Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

71.     **For Votes Cast by (or on Behalf of) Beneficial Holders of the Debtors' Securities.** The Debtors request that the following procedures apply to tabulating Ballots cast by (or on behalf of) Beneficial Holders of the Debtors' Securities:

(a)     votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees of certain Notes Claims and Interests, as applicable, as of the Voting Record Date, as evidenced by the applicable records. Votes submitted by a Nominee will not be counted in excess of the amount of such Claims or Interests held by such Nominee as of the Voting Record Date;

(b)     if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominee;

(c)     if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date, of certain Notes Claims or Interests;

(d)     each Beneficial Holder shall have the amount voted adjusted by the Solicitation Agent through the application of a factor as provided by the Debtors' professionals to account for interest and fees that comprise their claim; and

(e)     a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

72.     To assist in the solicitation process, the Debtors request that the Court grant the Voting Agent the authority to contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies. The Debtors request that the Court give authorization to the Debtors and/or their Voting Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, with the consent of the Initial Supporting Noteholders, not to be unreasonably withheld, which determination will be final and binding.

73.     The Debtors request that the Court grant authority to the Debtors to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

74.     The Debtors further request from the Court authorization to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Claim holders, with the consent of the Initial Supporting Noteholders, not to be unreasonably withheld.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

### **Rights Offering Procedures**

75.     In connection with the Plan, after having obtained approval of the procedures set forth in Exhibit F of the Disclosure Statement and summarized below (the "**Rights Offering Procedures**")[5] by entry of the Proposed Order, the Debtors will launch a rights offering to Eligible Claimants (defined below) (the "**Rights Offering**"), pursuant to which the Eligible

---

[5] In the event of any inconsistency between the Rights Offering Procedures as set forth in Exhibit F of the Disclosure Statement and the description set forth herein, the terms of the Rights Offering Procedures set forth in Exhibit F of the Disclosure Statement shall govern. Capitalized terms used in this section and not otherwise defined have the meanings ascribed to them in the Rights Offering Procedures.

Claimants will be offered a right (each, a "**Subscription Right**") to subscribe for newly-issued common shares in EP Energy Corporation (the "**New Common Shares**") at an aggregate purchase price of up to $475 million, $463 million of which the Backstop Parties have agreed to backstop. The Backstop Parties have committed to (i) exchange $138 million in principal amount of Reinstated 1.25 Lien Notes (as defined in the Backstop Agreement) for New Common Shares at the Exchange Purchase Price (as defined in the Backstop Agreement) and (ii) purchase additional New Common Shares at the Cash Purchase Price (as defined in the Backstop Agreement) for cash consideration of up to $325 million (reduced dollar for dollar for cash proceeds received in the Rights Offering).

76.     Only Eligible Claimants may participate in the Rights Offering.   An "Eligible Claimant" is a holder of Allowed Secured 1.5L Notes Claims on the Rights Offering Record Date that is, in the case of an Initial Commitment Party, either (i) an institutional accredited investor as defined in Rule 501 of Regulation D under the Securities Act or (ii) a qualified institutional buyer as defined in Rule 144A under the Securities Act and, in the case of any other Eligible Claimant, both (i) an accredited investor as defined in Rule 501 of Regulation D under the Securities Act and (ii) a qualified institutional buyer as defined in Rule 144A under the Securities Act.

77.     Each Eligible Claimant is entitled, subject to and in accordance with the Rights Offering Procedures, to subscribe for New Common Shares for aggregate consideration up to such Eligible Claimant's pro rata share (measured as the proportion that the aggregate amount of Allowed Secured 1.5L Notes Claims held by such Eligible Claimant bears to the aggregate amount of all Allowed Secured 1.5L Notes Claims as of the Subscription Record Date) of $475 million, provided that   it (i) timely and properly execute and deliver its Rights Offering

Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) and Subscription Agreement, and make certain customary representations and warranties set forth therein, to the Subscription Agent in advance of the Subscription Expiration Deadline; and (ii) (x) timely pay the applicable Aggregate Purchase Price and (y) in the case of certain Commitment Parties, timely deliver its applicable Exchange Subscription Amount.

78.     Each Eligible Claimant may exercise all or any portion of its Subscription Rights, subject to the terms and conditions of the Plan, the Rights Offering Procedures, and the Subscription Agreement.

79.     The Rights Offering has been backstopped by the Commitment Parties in an amount equal to $463 million.  Each of the Commitment Parties, severally and not jointly, has agreed, pursuant to the Backstop Commitment Agreement, to the extent the cash proceeds of the Rights Offering are less than $325 million, to purchase New Common Shares in the amounts specified in Schedule 2 of the Backstop Agreement that results in the aggregate cash proceeds to the Debtors being equal to $325 million. Certain of the Commitment Parties, severally and not jointly, have also agreed, pursuant to the Backstop Commitment Agreement, to purchase New Common Shares pursuant to the Rights Offering in exchange for assigning to the Debtors for cancellation Reinstated 1.25 Lien Notes with an aggregate principal amount equal to $138 million. Pursuant to the terms and conditions of the Backstop Agreement, the Debtors will pay the Backstop Parties the Backstop Commitment Premium (as defined in the Backstop Agreement).

80.     In addition, as set forth in more detail in the Rights Offering Procedures, Eligible Claimants who participate in the Rights Offering are required to make certain agreements, representations, and acknowledgements, and are subject to certain transferability restrictions and limitations on revocation.

81.     The Rights Offerings Subscription Forms and Rights Offering Procedures will be distributed to holders of Allowed Secured 1.5L Notes Claims on or before January 7, 2020 (the "**Subscription Commencement Date**").  The Rights Offering shall expire at 5:00 p.m. (New York Time) on February 6, 2020, or such other date as the Debtors may agree (as defined in the Rights Offering Procedures) (the "**Subscription Expiration Deadline**").  The proposed duration of the Rights Offering will afford Eligible Claimants at least 28 days to participate in the Rights Offering, and is reasonable under the circumstances.  To validly exercise Subscription Rights, the Rights Offering Subscription Form and requisite funds from participating Eligible Claimants (other than the Initial Backstop Parties) must be actually received by the Subscription Agent on or before the Subscription Expiration Deadline.

82.     If an Eligible Claimant fails to validly exercise its Subscription Right in accordance with the Rights Offering Procedures, such Eligible Claimant shall be deemed to have irrevocably relinquished and waived its Subscription Right.

83.     The New Common Shares issuable upon exercise of a Subscription Right will be distributed and issued without registration under the Securities Act of 1933, as amended (the "**Securities Act**"), in reliance upon the exemption provided by Section 4(a)(2) thereof, and may not be sold or transferred except pursuant to an effective registration statement or pursuant to an exemption from registration under the Securities Act. Therefore, each of the New Common Shares issued upon exercise of a Subscription Right, and each book-entry position or certificate issued in exchange for or upon the transfer, sale or assignment of any such New Common Share shall be deemed to contain or be stamped or imprinted with, as applicable, a legend in form and substance substantially similar to the following:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON [ISSUANCE DATE], HAVE NOT BEEN

REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**ACT**"), OR ANY OTHER APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER.

84.    The Debtors submit that the Rights Offering is being conducted in good faith and in compliance with the Bankruptcy Code.  In accordance with section 1125(e) of the Bankruptcy Code, a person that participates, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or a newly organized successor to the debtor under the plan, is not liable, on account of participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

85.    All questions concerning the timeliness, viability, form, and eligibility of any exercise of Subscription Rights will be determined in good faith by the Debtors, with the consent of the Requisite Commitment Parties, and, if necessary, subject to a final and binding determination by the Court.  The Debtors, with the consent of the Requisite Commitment Parties, may waive or reject any defect or irregularity in, or permit such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any Subscription Rights. Subscription Agreements will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith with the consent of the Requisite Commitment Parties.

86.    Accordingly, the Debtors are seeking this Court's approval of the Rights Offering Procedures in connection with the approval of the Proposed Disclosure Statement and respectfully submit that the Rights Offering Procedures are reasonable, in furtherance of the Plan, and in the best interests of the Debtors and their estates.

## Confirmation

### A.     The Confirmation Hearing

87.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of a chapter 11 plan.  Fed. R. Bankr. P. 3017(c).  Pursuant to Bankruptcy Rule 2002(b), creditors must receive at least 28 days' notice of a confirmation hearing.  In accordance with these rules, and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that a hearing on confirmation of the Plan (the "**Confirmation Hearing**") for **February 13, 2020 at 8:30 a.m. (prevailing Central Time)**, or on such date and time as is convenient to the Court.  The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  The Debtors request the Court find that the proposed date for the Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules, and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

### B.     Objection Procedures

88.     Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing of objections to the confirmation of a plan.  Further, Bankruptcy Rule 2002(b) requires at least 28 days' notice be given by mail to all creditors of the time fixed for filing objections to confirmation. The Debtors request that the Court set February 6, 2020 at 4:00 p.m. (Prevailing Central Time), as the deadline to file objections to confirmation of the Plan (the "**Plan Objection Deadline**"). The Plan Objection Deadline will provide holders of Claims or Interests with sufficient notice of the deadline for filing objections to confirmation of the Plan, while still affording the Debtors and other parties time to file a responsive brief and, if possible, resolve consensually any objections

received. The Debtors further request that they be authorized to file replies to any timely objections or responses no later than February 11, 2020.

89. The Debtors further request that the Court direct that any objections to the confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service.

90. The Debtors further request that registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline. All other parties in interest must file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

91. The Debtors further request that they be authorized to file and serve an omnibus reply (the "**Omnibus Reply**") to any such objections and that the Court set February 11, 2020 as the deadline for filing and service of replies or an Omnibus Reply to any objections to confirmation of the Plan.

92. The Debtors also request that the Court establish February 11, 2020 as the deadline for the Debtors to file their brief in support of confirmation of the Plan (the "**Confirmation Brief**").

93. The Debtors respectfully request that the Court approve the procedures for filing objections to the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002, 3017, and 3020.

C.      **Plan Supplement**

94.      Pursuant to the Plan, the Debtors intend to file a "Plan Supplement" consisting of a supplemental appendix to the Plan which shall be consistent with the Plan Support Agreement and contain, among other things, substantially final forms of (i) the New Corporate Governance Documents, (ii) the Employee Incentive Plan, (iii) the Exit Facility Documents, (iv) a schedule of retained Causes of Action, (v) the Schedule of Rejected Contracts; and (vi) the Claims Resolution Procedures, and information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; *provided*, that, through the Effective Date, the Debtors shall have the right to amend the documents contained in, and the exhibits to, the Plan Supplement in accordance with the terms of the Plan and the Plan Support Agreement.

95.      The Debtors request that the Court authorize the Debtors to file the Plan Supplement with the Bankruptcy Court no later than seven calendar days before the Voting Deadline (the "**Plan Supplement Filing Deadline**").

96.      The Debtors submit that the Plan Supplement Filing Deadline is prudent and attainable under the circumstances of these chapter 11 cases.  Thus, the Debtors respectfully request that the Court approve the Plan Supplement Filing Deadline.

D.      **Confirmation Hearing Notice**

97.      Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all creditors and equity security holders in accordance with Bankruptcy Rule 2002.  Bankruptcy Rule 2002 requires notice to, among others, all creditors, indenture trustees, and equity security holders of the time set for filing objections to, and the hearing to consider confirmation of a plan.  In addition, Bankruptcy Rule 2002(c)(3) provides that if a plan provides for an injunction against conduct not otherwise enjoined under the

Bankruptcy Code, the plan confirmation notice must include, in conspicuous language, a statement that the plan proposes an injunction, a brief description of the nature of the injunction, and identification of the entities that would be subject to such injunction.  Fed. R. Bankr. P. 3020(b).

98.     In accordance with the foregoing, in addition to including the notice in the Solicitation Packages, by no later than the Solicitation Date, the Debtors propose to provide a copy of the Confirmation Hearing Notice setting forth (i) the Voting Deadline, (ii) the Plan Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Confirmation Hearing, and (iv) information about the Plan injunctions in compliance with Bankruptcy Rule 2002(c)(3) with service provided by electronic and/or first class mail on the Notice Parties.

99.     The Debtors further request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Confirmation Hearing, no later than 28 days prior to the Confirmation Hearing, in the *Houston Chronicle* and the national edition of *USA Today*.

100.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002(b) and (d).  Accordingly, the Debtors request that the Court find that such notice is due and proper and no further notice is necessary.

**E.     Procedures with Respect to the Assumption of Executory Contracts and Unexpired Leases**

101.     Section 8.1 of the Plan provides that each of the Debtors' executory contracts and unexpired leases will be deemed assumed by the applicable Debtor as of the Effective Date, unless such agreement:  (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or

terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts (as defined in the Plan), which shall be acceptable to the Initial Supporting Noteholders. Section 8.1 of the Plan further provides that the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) on the Business Day immediately before the Confirmation Hearing, or such earlier time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Rejected Contracts, subject to the consent of the Initial Supporting Noteholders, to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the Business Day immediately before the rescheduled or continued Confirmation Hearing.

102.    Pursuant to Section 8.2 of the Plan, the Debtors shall serve a Cure Notice (as defined in the Plan), which shall be reasonably acceptable to the Initial Supporting Noteholders, on parties to executory contracts and unexpired leases no later than thirty days prior to the Confirmation Hearing. Section 8.2 of the Plan further provides that if a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign does not receive a Cure Notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0). Any counterparty to an executory contract or unexpired lease shall have until the Plan Objection Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount listed on the Cure Notice. Further, the Debtors intend to serve the Confirmation Hearing Notice on all parties to executory contracts and unexpired leases, reflecting the Debtors' intention

41

to assume the executory contracts or unexpired leases in connection with the Plan (unless one of the exceptions set forth in section 8.1 of the Plan applies) and indicating that the Cure Amount shall be zero dollars ($0) unless such counterparty received a separate Cure Notice.

103.    Section 8.2 of the Plan also provides that the Bankruptcy Court will determine any Assumption Dispute (as defined in the Plan) by entry of an order; *provided*, that the Debtors or the Reorganized Debtors, as applicable, may settle any Assumption Dispute with the consent of the Initial Supporting Noteholders, and without any further notice to any other party or any action, order, or approval of the Bankruptcy Court; *provided, further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtors may with the consent of the Initial Supporting Noteholders assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such Assumption Dispute.

104.    The Debtors respectfully submit that the notice of the Debtors' assumption of executory contracts and unexpired leases is appropriate under the circumstances.

## Notice

105.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn: Kristopher M. Hansen, Esq., Frank A. Merola, Esq., Kenneth Pasquale, Esq., Erez R. Gilad, Esq., and Jonathan D. Canfield, Esq.) and Polsinelli PC, 1000 Louisiana Street, Suite 6400, Houston, TX 77002 (Attn: Trey Monsour, Esq.), counsel to the Official Committee of Unsecured Creditors; (iii) Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002 (Attn: Charles S. Kelley, Esq.) and Mayer Brown LLP, 71 S Wacker Drive, Chicago, IL 60606 (Attn: Sean T. Scott, Esq.), counsel to the RBL Agent; (iv) Morrison & Foerster LLP, 250 W 55th Street, New York, NY 10019 (Attn: Dennis L. Jenkins, Esq.), counsel to the Ad Hoc 1.125L/1.25L Noteholder Group; (v) Debevoise &

Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn:  Sidney P. Levinson, Esq.),

counsel to Access Industries, Inc.; (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP,

1285 6th Avenue, New York, NY 10019 (Attn: Jeffrey Saferstein, Esq., Jacob A. Adlerstein, Esq.,

and Brian Bolin, Esq.), counsel to Apollo Global Management, LLC; (vii) Avenue Capital Group,

11 West 42nd Street, 9th Floor, New York, NY 10036 (Attn: Randal T. Klein),  (viii) Milbank

LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Gerard Uzzi, Esq. and Eric Stodola, Esq.),

counsel to Elliott Management Corporation; (ix) the Securities and Exchange Commission; (x) the

Office of the United States Attorney, 1000 Louisiana Street, Suite 2300, Houston, TX 77002;

(xi) the Internal Revenue Service; and (xii)  all parties who have requested notice in these chapter

11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

## No Previous Request

106.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 19, 2019
Houston, Texas

_/s/ Alfredo R. Pérez_

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
         Clifford.Carlson@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted _pro hac vice_)
Ronit Berkovich (admitted _pro hac vice_)
Scott R. Bowling (admitted _pro hac vice_)
David J. Cohen (admitted _pro hac vice_)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Matt.Barr@weil.com
         Ronit.Berkovich@weil.com
         Scott.Bowling@weil.com
         DavidJ.Cohen@weil.com

_Attorneys for Debtors_
_and Debtors in Possession_

## <u>EXHIBIT A</u>

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

ORDER (I) APPROVING PROPOSED DISCLOSURE STATEMENT;
(II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES;
(III) ESTABLISHING RIGHTS OFFERING PROCEDURES; (IV) SCHEDULING
CONFIRMATION HEARING; (V) ESTABLISHING NOTICE AND OBJECTION
PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; AND
(VI) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE
ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the Motion, dated November 18, 2019 (the "**Motion**"),[2] of EP Energy

Corporation and its debtor affiliates, as debtors and debtors in possession (collectively, the

"**Debtors**"), for an order pursuant to sections 1125, 1126, 1128, 1145, and 105 of titFle 11 of the

United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3003, 3016, 3017, 3018, 3020,

and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-

1 and 3016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the

Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Cases

in the Southern District of Texas (effective as of June 10, 2019, the "**Complex Chapter 11**

**Procedures**"), the Debtors request entry of an order:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

i.     approving the Proposed Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors (Docket No. __) (the "**Proposed Disclosure Statement**") as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

ii.    scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the proposed Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors (Docket No. __) (the "**Plan**");

iii.   approving the solicitation procedures for the Plan;

iv.   approving the confirmation procedures for the Plan;

v.    approving the proposed procedures for the Rights Offering (the "**Rights Offering Procedures**"), all as more fully described in the Motion; and

vi.   granting related relief;

all as more fully set forth in the motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of Texas, (ii) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn:  Kristopher M. Hansen, Esq., Frank A. Merola, Esq., Kenneth Pasquale, Esq., Erez R. Gilad, Esq., and Jonathan D. Canfield, Esq.) and Polsinelli PC, 1000 Louisiana Street, Suite 6400, Houston, TX 77002 (Attn:  Trey Monsour, Esq.), counsel to the Official Committee of Unsecured Creditors, (iii) Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002 (Attn: Charles S. Kelley, Esq.) and Mayer Brown LLP, 71 S Wacker Drive, Chicago, IL 60606 (Attn: Sean T. Scott, Esq.), counsel to the RBL Agent, (iv)  Morrison & Foerster LLP, 250 W 55th Street, New York, NY 10019 (Attn: Dennis L. Jenkins, Esq.), counsel to the Ad Hoc 1.125L/1.25L Noteholder Group, (v) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn:  Sidney P. Levinson, Esq.), counsel to Access Industries, Inc., (vi) Paul, Weiss,

Rifkind, Wharton & Garrison LLP, 1285 6th Avenue, New York, NY 10019 (Attn: Jeffrey Saferstein, Esq., Jacob A. Adlerstein, Esq., and Brian Bolin, Esq.), counsel to Apollo Global Management, LLC, (vii) Avenue Capital Group, 11 West 42nd Street, 9th Floor, New York, NY 10036 (Attn: Randal T. Klein), (viii) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Gerard Uzzi, Esq. and Eric Stodola, Esq.), counsel to Elliott Management Corporation, (ix) the Securities and Exchange Commission, (x) the Office of the United States Attorney, 1000 Louisiana Street, Suite 2300, Houston, TX 77002, (xi) the Internal Revenue Service, and (xii)  all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"); and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Disclosure Statement Hearing**"); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED THAT:**

**Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline**

1.      The procedures described in the Motion pursuant to which the Debtors provided notice to parties of the time, date, and place of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline, including the form and content of the Disclosure Statement Notice, provided due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1.  No further notice is required.

2.      The following dates and deadlines are hereby established (subject to modifications as necessary) with respect to the Proposed Disclosure Statement, solicitation of the Plan, voting on the Plan, rights offering, and confirmation of the Plan:

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
| --- | --- |
| Disclosure Statement Hearing | January 6, 2020 at 2:00 p.m. (Prevailing Central Time) |
| Voting Record Date | January 6, 2020 |
| Rights Offering Record Date | January 7, 2020 |
| Mailing Deadline for Confirmation Hearing Notice | Three days after entry of Proposed Order |
| Solicitation Mailing Deadline | Five business days after entry of the Proposed Order |
| Plan Supplement Deadline | January 30, 2020 |
| Rule 3018(a) Motion Deadline | February 3, 2020 |
| Voting Deadline | February 6, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Rights Expiration Time | February 6, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Plan Objection Deadline | February 6, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Ballot Certification Deadline | February 8, 2020 |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | February 11, 2020 |
| Confirmation Hearing | February 13, 2020 at 8:30 a.m. (Prevailing Central Time) |

**The Disclosure Statement**

3.      The Proposed Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c). No further information is necessary.

**Balloting and Voting Procedures**

4.      The procedures set forth in the Motion for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

**Ballots**

5.      The ballots substantially in the forms annexed hereto as Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 (collectively, the "**Ballots**"), including all voting instructions provided therein, are consistent with Official Bankruptcy Form No. B 314, address the particular needs of these chapter 11 cases, and provide adequate information and instructions for each party entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

**Parties Entitled to Vote**

6.      Pursuant to the Plan, holders of Claims or Interests in Class 3 (RBL Claims), Class 6 (Secured 1.5L Notes Claims), Class 7 (Unsecured Claims), Class 8 (Convenience Claims), and Class 11 (Existing Parent Equity Interests) are impaired and are entitled to receive distributions under the Plan.  Accordingly, holders of Allowed Claims or Interests in such Classes are entitled to vote on account of such Claims or Interests (to the extent set forth herein).

**Parties Not Entitled to Vote**

7.      Pursuant to the Plan, holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes Claims), Class 5 (1.25L Notes Claims), Class 9 (Intercompany Claims), and Class 13 (Intercompany Interests) are Unimpaired and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan and are not entitled to vote on account of such Claims and Interests.

8.      Pursuant to the Plan, holders of Claims or Interests in Class 10 (Subordinated Claims) and Class 12 (Other Equity Interests) are Impaired and will receive no recovery and, accordingly, pursuant to section 1126(g) of the Bankruptcy Code, are conclusively deemed to reject the Plan and are not entitled to vote on account of such Claims and Interests.

**Notice of Non-Voting Status**

9.     The Notice of Non-Voting Status, substantially in the form attached hereto as Exhibit 12, complies with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and Complex Chapter 11 Procedures and, together with the Confirmation Hearing Notice, provides adequate notice to holders of Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes Claims), Class 5 (1.25L Notes Claims), Class 9 (Intercompany Claims), Class 10 (Subordinated Claims), Class 12 (Other Equity Interests), and Class 13 (Intercompany Interests) of their non-voting status.  No further notice is necessary.

**Solicitation**

10.     The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, Voting Deadline, Plan Objection Deadline, Rights Offering Subscription, Confirmation Hearing, and other related matters.

11.     The period proposed by the Debtors in the Motion during which the Debtors will solicit votes to accept the Plan is a reasonable and sufficient period of time for holders of Claims and Interests in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

12.     The procedures set forth in the Motion for tabulating Ballots are fair and appropriate.

**Rights Offering Procedures**

13.     The Rights Offering Procedures, as set forth in Exhibit F of the Disclosure Statement, are fair and appropriate.

14.     The Rights Offering Subscription Form, including all instructions provided therein, provides adequate information and instructions for each individual entitled to participate in the Rights Offering.  No further information or instructions are necessary.

**Notice of Confirmation Hearing and Plan Objection Deadline**

15.     The procedures set forth in the Motion regarding notice to all parties of the Confirmation Hearing and the Plan Objection Deadline, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020.  No further notice is required.

**Approval of Notices to Contract and Lease Counterparties**

16.     The procedures set forth in the Motion regarding notice to all parties of the assumption of the applicable Debtors' executory contracts and unexpired leases, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020.  No further notice is required.

17.     All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Confirmation Hearing.  No further notice is required.

18.     The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED THAT:**

19.     The Motion is granted as set forth herein.

20.     The Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is APPROVED.

21.     The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the proposed injunction, exculpation, and release provisions contained in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan, in accordance with Bankruptcy Rule 3016(c).

22.     The form and manner of service of the Disclosure Statement Notice complies with all applicable Bankruptcy Rules and Local Rules and no further notice is necessary.

23.     All objections, if any, to the Disclosure Statement, the Motion, or any of the procedures or exhibits referenced therein that have not been withdrawn or resolved as provided for in the record of the Disclosure Statement Hearing are overruled.

**Solicitation Procedures**

*Parties Entitled to Vote*

24.     Pursuant to the Plan, the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (collectively, the "**Voting Classes**"):

| Class | Description |
|---|---|
| Class 3 | RBL Claims |
| Class 6 | Secured 1.5L Notes Claims |
| Class 7 | Unsecured Claims |
| Class 8 | Convenience Claims |
| Class 11 | Existing Parent Equity Interests |

25.     A creditor or interest holder that holds a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)     as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

8

(b)     as of the Voting Record Date, such creditor's Claim or interest holder's Interest  has been disallowed, expunged, disqualified or suspended;

(c)     such creditor has timely filed a proof of claim in accordance with the Bar Date Order as of the Voting Record Date and the Debtors have not scheduled such creditor's Claim or scheduled such creditor's claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)     such creditor's Claim or interest holder's Interest is subject to an objection or request for estimation filed on or before January 17, 2020 subject to the procedures set forth below.

26.     Pursuant to the Plan, the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the plan.

27.     Holders of Subordinated Claims and Other Existing Equity Interests are expected to receive no recovery under the Plan.  Such holders are deemed to reject the Plan and are not entitled to vote on the plan.

28.     Holders of Claims or Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 4 | 1.125L Notes Claims | Unimpaired | Presumed to Accept |
| Class 5 | 1.25L Notes Claims | Unimpaired | Presumed to Accept |
| Class 9 | Intercompany Claims | Unimpaired | Presumed to Accept |
| Class 10 | Subordinated Claims | Impaired | Deemed to Reject |
| Class 12 | Other Equity Interests | Impaired | Deemed to Reject |
| Class 13 | Intercompany Interests | Unimpaired | Presumed to Accept |

**The Voting Record Date**

29.     The Voting Record Date shall be set as January 6, 2020.  Only holders of Claims in Class 3 (RBL Claims); Class 6 (Secured 1.5L Notes Claims); Class 7 (Unsecured

Claims); Class 8 (Convenience Claims); and Class 11 (Existing Parent Equity Interests), as of the Voting Record Date, who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan.

30.     The record holders of Claims shall be determined, as of the Voting Record Date, based upon the records of the Debtors and the Voting Agent.  Accordingly, any notice of claim transfer received by the record holder of the Debtors' debt securities, the Debtors, the Voting Agent, or other similarly situated registrar after the Voting Record Date shall not be recognized for purposes of voting or receipt of the Plan confirmation materials.

31.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

### Temporary Allowance / Disallowance of Claims

32.     **RBL Claims**. The amount of each RBL Claim for voting purposes only is established by reference to the list of participant lenders to the RBL Facility and those participant lenders' corresponding RBL amounts as of the Voting Record Date as reflected on the loan register maintained by the RBL Agent, which shall be provided by the RBL Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

33.  **Unsecured Claims and Convenience Claims**. The amount of each Unsecured Claim and Convenience Claim, for voting purposes, only (with the exception of Unsecured Claims arising from Secured 1.5L Notes or Unsecured Notes) shall be established pursuant to the following hierarchy:

(a)  If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b)  If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c)  If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim  timely filed in accordance with the Bar Date Order as of the Voting Record Date, provided that if the amount set forth on a timely-submitted proof of claim is wholly liquidated, contingent, and/or disputed, then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00; and

(d)  If neither (a), (b), nor (c) apply, then in the liquidated, non-contingent, and  undisputed amount set forth on the Debtors' Schedules, provided that if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

34.  Any creditor holding an Unsecured Claim that elects to be treated as a Convenience Class Claim in 8 shall have its Claim reduced to $100,000 for voting purposes.

35.  **1.5L Notes Claims and Unsecured Notes Claims**.  The amount of each 1.5L Notes Claim and Unsecured Notes Claim for voting purposes only is  established by reference to the books and records of the applicable Nominee (defined below) as of the Voting Record as evidenced by the securities position report from the Depository Trust Company ("**DTC**"), which

shall be provided to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

36.     For solicitation and tabulation purposes, the Debtors will provide one ballot to a Holder of a 1.5L Notes Claim for the purpose of voting the Holder's Claims in both Class 6 and Class 7 simultaneously in the applicable amounts as determined by formula.

37.     **Existing Parent Equity Interests**.  The amount of each Existing Parent Equity Interests for voting purposes only is established by reference to (a) the applicable books and records of the Debtors' transfer agent and (b) the books and records of the applicable Nominee (defined below) as of the Voting Record as evidenced by the securities position report from DTC, which shall be provided by the transfer agent and DTC to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

38.     If any creditor seeks to challenge the allowance of its Claim for voting purposes, such creditor shall file with this Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court and served on the Notice Parties so as to be actually received not later than 4:00 p.m. (Prevailing Central Time) on February 3, 2020.

39.     Upon the filing of any such motion, such creditor's Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a different amount by an order of this Court entered prior to or concurrent with entry of an order confirming the Plan.

**Solicitation Packages**

40.     The Solicitation Packages are APPROVED.

41.     The Debtors shall mail the Solicitation Packages no later than five business days following the date of entry of the this Order (the "**Solicitation Date**") to (i) the U.S. Trustee, (ii) holders of Claims in Voting Classes entitled to vote on the Plan as of the Voting Record Date, and (iii) holders of Interests in Class 11 (Existing Parent Equity Interests), as required by Bankruptcy Rule 3017(d).

42.     Solicitation Packages shall contain copies of:

(a)     this Order (without attachments);

(b)     the Confirmation Hearing Notice;

(c)     a CD-ROM or USB flash drive containing the Disclosure Statement, which shall include the Plan as an attachment (except as provided below); and

(d)     if the recipient is entitled to vote on the Plan, a Ballot customized for such holder in the form described below, and a postage-prepaid return envelope.

43.     If the recipient is a holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan (as set forth herein), then they will be served the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status as defined and described more fully in the Motion only.

44.     Any creditor for which service by CD-ROM or USB poses a hardship may request an additional copy of the Disclosure Statement (and attachments) in paper format by contacting Prime Clerk by email at  EPEnergyinfo@primeclerk.com, or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada).  Upon receipt of a telephonic or written request, the Debtors will provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor within five (5) days thereafter. Alternatively, holders in Class 3, Class 7, Class 8, and Class 11 may submit their Ballots via Prime Clerk's online E-Balloting Portal by visiting https://cases.primeclerk.com/EPEnergy, clicking on

the "Submit E-Ballot" section of the website, and following the instructions set forth on the E-Ballot.

45.     The Debtors shall not be required to send Solicitation Packages to creditors that have Claims that have already been paid in full; *provided*, *however*, that if any such creditor would be entitled to receive a Solicitation Package for any other reason, then the Debtors shall send such creditor a Solicitation Package in accordance with the procedures set forth herein.

46.     With respect to addresses from which Solicitation Packages are returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Voting Deadline, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

**Notice of Non-Voting Status**

47.     The Notice of Non-Voting Status is APPROVED.

48.     To the holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes Claims), Class 5 (1.25L Notes Claims), Class 9 (Intercompany Claims), and Class 13 (Intercompany Interests), the Debtors shall mail a Confirmation Hearing Notice and a Notice of Non-Voting Status, substantially in the form attached hereto as Exhibit 12, in lieu of a Solicitation Package.

49.     The Debtors shall also mail the Confirmation Hearing Notice and Notice of Non-Voting Status to the holders of Claims or Interests in Class 10 (Subordinated Claims) and Class 12 (Other Equity Interests), in lieu of the Solicitation Package.

**Ballots**

50.     The Ballots are APPROVED.

51.     The Voting Deadline shall be February 6, 2020 at 4:00 p.m. (CT).

52.     All Ballots must be properly executed, completed, and delivered to the Voting Agent (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via Prime Clerk's online balloting portal, so that they are actually received by the Voting Agent no later than the Voting Deadline.

53.     The Debtors will distribute the following two forms of Ballots to holders of Claims entitled to vote on the Plan in Class 6 (Secured 1.5L Notes Claims): (i) a form of Ballot for a beneficial owner holding a Secured 1.5L Notes Claims through a nominee or as record holder in its own name (the "**Class 6 Beneficial Holder Ballot**") and (ii) a form of Ballot for a nominee (a "**Class 6 Nominee**") that is the registered holder of a Secured 1.5L Notes Claims (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Class 6 Master Ballot**").  In addition, the Debtors propose to distribute the following three forms of Ballots to holders of Claims entitled to vote on the Plan in Class 7 (Unsecured Claims), as applicable: (i) a form of Ballot for a holder of General Unsecured Claims; (ii) a form of Ballot for a beneficial owner ("**Class 7 Beneficial Holder**") holding Unsecured Notes Claims and/or 1.5L Notes Deficiency Claims through a nominee or as record holder in its own name (the "**Class 7 Beneficial Holder Ballot**") and (iii) a form of Ballot for a nominee (a "**Class 7 Nominee**") that is the registered holder of Unsecured Notes Claims and/or 1.5L Notes Deficiency Claims (or agent thereof) to transmit the

votes of one or more beneficial owners (the "**Class 7 Master Ballot**").  In addition, Debtors

propose to distribute the following three forms of Ballots to holders of Interests entitled to vote on

the Plan in Class 11 (Existing Parent Equity Interests): (i) a form of Ballot for registered holders

of Existing Parent Equity Interests (the "**Class 11 Registered Holder Ballot**"); (ii) a form of Ballot

for beneficial owners of Existing Parent Equity Interests through a Nominee (the "**Class 11**

**Beneficial Holder Ballot**" and, together with the Class 6 Beneficial Holder Ballot and Class 7

Beneficial Holder Ballot, the "**Beneficial Holder Ballots**"); and (iii) a form of ballot for a nominee

(a "**Class 11 Nominee**" and, together with Class 6 Nominees and Class 7 Nominees, the

"**Nominees**") that is the registered holder of Existing Parent Equity Interests (or agent thereof) to

transmit the votes of one or more beneficial holders of Existing Parent Equity Interests (the "**Class**

**11 Master Ballot**" and, together with the Class 6 Master Ballot and Class 7 Master Ballot, the

"**Master Ballots**").

        54.    Such Nominees shall, upon receipt of the Solicitation Packages, promptly

distribute such Solicitation Packages to Beneficial Holders (including Beneficial Holder Ballots)

using the following method within five business days of receipt of the Solicitation Packages:

> The Nominee shall obtain the votes of Beneficial Holders by forwarding to
> the Beneficial Holders the unsigned Beneficial Holder Ballots, together
> with the Solicitation Package, a pre-addressed, postage-paid return
> envelope provided by, and addressed to, the Nominee, and other materials
> requested to be forwarded.  Each such Beneficial Holder must then indicate
> her, his, or its vote on the Beneficial Holder Ballot, complete the
> information requested on the Beneficial Holder Ballot, review the
> certifications contained on the Beneficial Holder Ballot, execute the
> Beneficial Holder Ballot, and return the Beneficial Holder Ballot to the
> Nominee.  After collecting the Beneficial Holder Ballots, the Nominee
> should, in turn, complete the Master Ballot compiling the votes and other
> information from the Beneficial Holder Ballots, execute the Master Ballot,
> and deliver the Master Ballot to the Voting Agent so that it is RECEIVED
> by the Voting Agent on or before the Voting Deadline.  Each Nominee
> should advise its Beneficial Holders to return their Beneficial Holder
> Ballots to the Nominee by a date calculated by the Nominee to allow it

sufficient time to prepare and return the Master Ballot to the Voting Agent so that it is RECEIVED by the Voting Agent on or before the Voting Deadline. For the avoidance of doubt, if it is the Nominee's customary practice to transmit the information contained in the Solicitation Package to its Beneficial Holder clients by e-mail or any other method, the Nominee is authorized to follow those customary practices. Moreover, if it is the Nominee's customary practice to collect votes from its Beneficial Holder clients by telephone, e-mail, "voter information form", or otherwise (in lieu of a Beneficial Holder Ballot), the Nominee is authorized the follow those customary practices.

**Tabulation Procedures**

55.     The following tabulation procedures are APPROVED.

(a)     Whenever a holder of Claims or Interests casts more than one Ballot voting the same Claim(s) or Interests before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent, and thus, to supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked; *provided*, that in the case of any Ballot cast by a Supporting Noteholder with respect to its Claims in Class 6, such Supporting Noteholder shall be permitted, by written notice to the Debtors, to revoke such Ballot at any time following the termination of the Plan Support Agreement.

(b)     Whenever a holder of Claims or Interests casts a Ballot that is properly completed, executed and timely returned to the Voting Agent, but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c)     Whenever a holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent, but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)     A holder of Claims or Interest shall be deemed to have voted the full amount of its Claim or Interest in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor. Any such holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e)     A holder of Claims or Interests against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f) Whenever holder of Claims or Interests casts multiple Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

(g) A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h) The following Ballots shall not be counted:

    i. Any Ballot received after the Voting Deadline, unless the Debtors, shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

    ii. Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii. Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

    iv. Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim or Interest in a Voting Class;

    v. Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

    vi. Any Ballot for which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

    vii. Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

56. **For Votes Cast by (or on Behalf of) Beneficial Holders of the Debtors'**

**Securities.** The following procedures apply to tabulating Ballots cast by (or on behalf of)

Beneficial Holders of the Debtors' Securities:

(a) votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees of certain Notes Claims and Interests, as applicable, as of the Voting Record Date, as evidenced by the applicable records. Votes submitted by a Nominee will not be counted in excess of the amount of such Claims or Interests held by such Nominee as of the Voting Record Date;

(b) if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominee;

    (c)    if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date, of certain Notes Claims or Interests;

    (d)    each Beneficial Holder shall have the amount voted adjusted by the Solicitation Agent through the application of a factor as provided by the Debtors' professionals to account for interest that comprises their claim; and

    (e)    a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

57.    Each holder of Claims or Interests that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim or Interest therefor.

58.    To assist in the solicitation process, the Voting Agent may, but is not obligated to, contact parties that submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

59.    The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, with the consent of the Initial Supporting Noteholders, not to be unreasonably withheld, which determination will be final and binding.

60.     The Debtors are authorized to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

61.     The Debtors are further authorized to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Claim holders, with the consent of the Initial Supporting Noteholders, not to be unreasonably withheld.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

62.     The Debtors or their Voting Agent shall file the Ballot Certification on or before February 8, 2020.

**Rights Offering Procedures**

63.     The Rights Offering Procedures, including the Rights Commencement Date and the Rights Expiration Time, as set forth in Exhibit F of the Disclosure Statement, are approved.

64.     The Debtors are hereby authorized and empowered to conduct the Rights Offering pursuant to the terms and provisions of the Rights Offering Procedures, and may take such actions, as necessary to effectuate the Rights Offering.

**The Confirmation Hearing**

65.     The Confirmation Hearing shall be held on February 13, 2020 at 8:30 a.m. (Prevailing Central Time); *provided*, *however*, that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

**Objection Procedures**

66.     The deadline to object or respond to confirmation of the Plan shall be February 6, 2020 at 4:00 p.m. (Prevailing Central Time) (the "**Plan Objection Deadline**").

67.     Objections and responses, if any, to confirmation of the Plan, must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; the basis for the objection, and the specific grounds therefor; and (iv) be filed with the Court, together with proof of service.

68.     Registered users of this Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline.  All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

69.     Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

70.     Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

71.     The Debtors and any parties in interest are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before February 11, 2020.

**Plan Supplement**

72.     The Debtors are authorized to file the Plan Supplement with the Bankruptcy Court no later than seven calendar days before the Voting Deadline (the "**Plan Supplement Filing Deadline**").

**Confirmation Hearing Notice**

73.     The Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 1** is APPROVED.

74.     The form and proposed manner of service of the Confirmation Hearing Notice comply with all applicable Bankruptcy Rules and Local Rules, and no further notice is necessary.

75.     The Debtors are authorized, in their discretion, to give supplemental publication notice of the Confirmation Hearing, no later than 28 days prior to the Confirmation Hearing, in the *Houston Chronicle* and the national edition of *USA Today*.

**General**

76.     The Debtors are authorized to make non-substantive changes (subject to the consent rights provided in the Plan Support Agreement, dated October 18, 2019, to which each Debtor is a party), to the Disclosure Statement, the Plan, the Ballots, and related documents without further order of the Court including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

77.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

78.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2020
      Houston, Texas


                     _____
                     UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT,**
**(II) ESTABLISHMENT OF VOTING RECORD DATE, (III) HEARING ON**
**CONFIRMATION OF THE PLAN, (IV) PROCEDURES AND DEADLINE**
**FOR OBJECTING TO THE CONFIRMATION OF THE PLAN,**
**(V) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN, AND**
**(VI) NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION**
**OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| | |
|---|---|
| EP Energy Corporation | Case No. 19-35654 |
| EPE Acquisition, LLC | Case No. 19-35653 |
| EP Energy LLC | Case No. 19-35652 |
| Everest Acquisition Finance Inc. | Case No. 19-35651 |
| EP Energy Global LLC | Case No. 19-35650 |
| EP Energy Management, L.L.C. | Case No. 19-35649 |
| EP Energy Resale Company, L.L.C. | Case No. 19-35648 |
| EP Energy E&P Company, L.P. | Case No. 19-35647 |

**PLEASE TAKE NOTICE THAT**:

1.     ***Approval of Disclosure Statement.***     On January 6, 2020 the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**")[2] of EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be further amended, the "**Plan**").

2. ***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled for February 13, 2020 at 8:30 a.m. (Prevailing Central Time), before the Honorable Marvin Isgur, United States Bankruptcy Judge, in the Bankruptcy Court. The Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice other than by a Court announcement providing for such adjournment or continuation on its agenda. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3. ***Voting Record Date.*** Holders of Claims or Interests in Class 3 (RBL Claims); Class 6 (Secured 1.5L Notes Claims); Class 7 (Unsecured Claims); Class 8 (Convenience Claims); and Class 11 (Existing Parent Equity Interests), as of the Voting Record Date, who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of January 6, 2020 (the "**Voting Record Date**").

4. ***Voting Deadline.*** All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Prime Clerk LLC, at EP Energy Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 by no later than **February 6, 2020 at 4:00 p.m. (Prevailing Central Time)** (the "**Voting Deadline**"). Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

5. ***Parties in Interest Not Entitled to Vote.*** Holders of Unimpaired Claims, holders of Subordinated Claims, and holders of Other Equity Interests are not entitled to vote on the Plan and will not receive a Ballot. If you disagree with the amount set forth by the Debtors for your Claim in the Schedules or if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim and believe that you should be entitled to vote on the Plan in a different amount or class, then you must serve on the parties identified in paragraph 8 below and file with the Bankruptcy Court a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount or in a different class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before **February 3, 2020 at 4:00 p.m. (Prevailing Center Time)**. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered. As to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Bankruptcy Court. Creditors may contact Prime Clerk in writing at EP Energy Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada) to receive an appropriate

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

Ballot for any Claim for which a Proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted.

6. **_Objections to Confirmation._**  The deadline to object or respond to confirmation of the Plan is **February 6, 2020 at 4:00 p.m. (Prevailing Central Time)** (the **"Plan Objection Deadline"**).

7. **_Form and Manner of Objections to Confirmation._**  Objections and responses, if any, to confirmation of the Plan, must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds therefor; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, no later than the Plan Objection Deadline.

8. **IF AN OBJECTION TO THE CONFIRMATION IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE CONFIRMATION OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.**

9. **_Additional Information._**  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other Solicitation Materials should contact the Debtors' voting and tabulation agent, Prime Clerk LLC by email at EPEnergyinfo@primeclerk.com, or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada).  Interested parties may also review the Disclosure Statement and the Plan free of charge at  https://cases.primeclerk.com/EPEnergy/Home-Index.  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5**   **Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees,**

agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**Section 10.6**    <u>Plan Injunction</u>

       (a)    Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

       (b)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7**    <u>Releases</u>

       (c)    <u>RELEASES BY THE DEBTORS</u>. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE

ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND

REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(d)      RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.  AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS, AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY

REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

(e)      *Release of Liens*.  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Reinstated Debt and the  Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

Section 10.8   Exculpation

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR

**DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9**     <u>**Injunction Related to Releases and Exculpation**</u>

       **The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

       "**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

       "**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures

10.     Please take notice that, in accordance with Section 8.1 and 8.2 of the Plan and sections 365 and 1123 of the Bankruptcy Code, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease: (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts (as defined in the Plan), which shall be acceptable to the Initial Supporting Noteholders.

11.     Please take further notice that, in accordance with Section 8.1 of the Plan, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) on the Business Day immediately before the Confirmation Hearing, or such earlier time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Rejected Contracts, subject to the consent of the Initial Supporting Noteholders, to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the Business Day immediately before the rescheduled or continued Confirmation Hearing.

12.     Pursuant to Section 8.2 of the Plan, the Debtors shall serve a Cure Notice (as defined in the Plan), which shall be reasonably acceptable to the Initial Supporting Noteholders, on parties to executory contracts and unexpired leases no later than 30 days prior to the Confirmation Hearing.  Section 8.2 of the Plan further provides that if you are a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign and you do not receive a Cure Notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0). Any counterparty to an executory contract or unexpired lease shall have until the Plan Objection

Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount listed on the Cure Notice.

13.     Please take notice that, pursuant to Section 8.2 of the Plan, the Bankruptcy Court will determine any Assumption Dispute (as defined in the Plan) by entry of an order; *provided*, that the Debtors or the Reorganized Debtors, as applicable, may settle any Assumption Dispute with the consent of the Initial Supporting Noteholders, and without any further notice to any other party or any action, order, or approval of the Bankruptcy Court; *provided, further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtors may, with the consent of the Initial Supporting Noteholders, assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such Assumption Dispute.

14.     If you are a counterparty to any executory contract or unexpired lease, your receipt of this notice reflects the Debtors' intention to assume the executory contracts or unexpired leases in connection with the Plan (unless one of the exceptions set forth in Section 8.1 of the Plan applies) and indicates that the Cure Amount shall be zero dollars ($0) unless you received a separate Cure Notice.

15.     If  you are a counterparty to an executory contract or unexpired lease (unless one of the exceptions set forth in Section 8.1 of the Plan applies), if no Objection is timely received with respect to your assumed executory contract or unexpired lease (an "**Assumed Contract**"), (a) you shall be deemed to have assented to (i) the assumption of such Assumed Contract, (ii) the date of such assumption, and (iii) the satisfaction of section 365(b)(1)(C) of the Bankruptcy Code requiring the Debtors to provide adequate assurance of future performance under such Assumed Contract, and (b) you shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or the adequate assurance of future performance contemplated herein.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

---

If you have questions about this Confirmation Hearing Notice, please contact Prime Clerk LLC
**Telephone**: (877) 502-9869 (Toll-Free) or (917) 947-2373 (outside U.S. or Canada)
**Email**: EPEnergyinfo@primeclerk.com
**Website**: https://cases.primeclerk.com/EPEnergy/Home-Index

---

Dated: [●], 2020
     Houston, Texas

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Ronit Berkovich (admitted *pro hac vice*)
Scott R. Bowling (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Matt.Barr@weil.com
       Ronit.Berkovich@weil.com
       Scott.Bowling@weil.com
       DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## **Exhibit 2**

**Form of Ballot for Class 3 (RBL Claims)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  | § |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
|  | § |  |
|  | § | (Jointly Administered) |
| Debtors.[2] | § |  |
|  | § |  |

### BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS

### CLASS 3:  RBL CLAIMS

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS _ACTUALLY RECEIVED_ BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "_VOTING DEADLINE_"), UNLESS EXTENDED BY THE DEBTORS.**

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**").  The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the **"Disclosure Statement"**).

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6, 2020 (the "**Voting Record Date**"), a holder of a claim (a "**Holder**") against the Debtors arising under that certain Credit Agreement, dated as of May 24, 2012 (as amended, restated, amended and restated, modified or otherwise supplemented from time to time), by and among EP Energy, as borrower, EPE Acquisition, LLC, the Prepetition RBL Agent, and the lenders party thereto from time to time, as in effect immediately prior to the Effective Date (the "**Prepetition RBL Credit Agreement**").

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 3 RBL Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 3**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, each holder of an Allowed RBL Claim will receive, on a dollar-for-dollar basis, first lien, second-out term loans under the Exit Credit Agreement; *provided*, that each holder of an Allowed RBL Claim that elects to participate in the first-out revolving portion of the Exit Facility by the Voting Deadline shall receive on a dollar-for-dollar basis first lien, first-out revolving loans under the Exit Credit Agreement and letter of credit participations under the Exit Credit Agreement.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 3 RBL Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5    Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6    Plan Injunction**

**(a)    Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner**

or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7**   <u>Releases</u>

(a)     ***RELEASES BY THE DEBTORS.***  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE

RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)      ***RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*** **As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.**

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND,

**FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

        **(c)**     *Release of Liens.* **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**Section 10.8**   <u>**Exculpation**</u>

        **TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED**

**PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.   THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9    <u>Injunction Related to Releases and Exculpation</u>**

> **The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

**<u>Relevant Definitions Related to Release and Exculpation Provisions</u>:**

> "**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

> "**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR
COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting
Record Date, the undersigned was the holder (or authorized signatory of such a holder) of RBL
Claims in the amount set forth below.

$

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your
Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept
and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release,
injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and
10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan
and, in each case, do not check the box in Item 3 below, you shall be deemed to have
consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description
of the release, injunction, and exculpation.**

The undersigned holder of a Class 3 RBL Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the
releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above,
or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to
grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your
option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if
you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting
Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box
below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to
the fullest extent permitted by applicable law.  The Holder of the Class 3 RBL Claim set forth in
Item 1 elects to:

☐ **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Election to Participate in the First-Out Revolving Portion of the Exit Facility.**  As noted in the Plan, on the Effective Date, each holder of an Allowed RBL Claim will receive, on a dollar-for-dollar basis, first lien, second-out term loans under the Exit Credit Agreement; *provided*, that each holder of an Allowed RBL Claim that elects to participate in the first-out revolving portion of the Exit Facility by the Voting Deadline shall receive on a dollar-for-dollar basis first lien, first-out revolving loans under the Exit Credit Agreement and letter of credit participations under the Exit Credit Agreement. **A Holder of Class 3 RBL Claims that does not elect to participate in the first-out revolving portion of the Exit Facility will receive its pro rata share of the first lien, second-out term loans under the Exit Credit Agreement.**  Furthermore, any transfer of a Class 3 RBL Claim shall be subject to such transferee purchasing such interest subject to the election of the transferor to participate in the Exit Facility. The Holder of the Class 3 RBL Claim set forth in Item 1 elects to:

☐     **Elects** to participate in the first-out revolving portion of the Exit Facility

☐     **Declines** to participate in the first-out revolving portion of the Exit Facility

**Item 5.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the RBL Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

<u>**E-Ballot Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/EPEenergy, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (Prevailing Central Time) on February 6, 2020, the Voting Deadline, unless such time is extended by the Debtors. <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.</u> Prime Clerk's "E-Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will <u>not</u> be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

          **Unique E-Ballot ID#:  _____**

To submit your Ballot via the "E-Ballot" platform, please visit the website at the following link: https://cases.primeclerk.com/EPEenergy.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.  Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk:

VIA PHONE AT 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR EMAIL AT EPENERGYBALLOTS@PRIMECLERK.COM.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE ADDRESS BELOW:**

**EP ENERGY BALLOT PROCESSING
C/O PRIME CLERK, LLC
830 THIRD AVENUE, 3RD FLOOR
NEW YORK, NY 10022**

**<u>Exhibit 3</u>**

**Form of Master Ballot for 1.5L Notes Claims: Secured 1.5L Notes Claims (Class 6)
and 1.5L Deficiency Claims  (Class 7)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EP ENERGY CORPORATION, *et al.*, | § § | Case No. 19-35654 (MI) |
| Debtors.[2] | § § § § | (Jointly Administered) |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT
CHAPTER 11 PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED
DEBTORS**

**MASTER BALLOT FOR 1.5L NOTES CLAIMS:  SECURED 1.5L NOTES CLAIMS
(CLASS 6) AND 1.5L DEFICIENCY CLAIMS (CLASS 7)**

> IN ORDER FOR VOTES TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, BALLOTS MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT THEY ARE **ACTUALLY RECEIVED** BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "**VOTING DEADLINE**"), UNLESS EXTENDED BY THE DEBTORS.

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("**Nominees**") of beneficial holders of certain Claims (a "**Beneficial Holder**") against EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") in connection with the solicitation of votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended,

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

modified or supplemented from time to time, the "**Plan**").  The Plan is attached as __**Exhibit A**__ to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders of Claims (the "**1.5 Lien Noteholders**") against the Debtors, as of January 6, 2020 (the "**Voting Record Date**"), arising under or relating to that certain Indenture (as amended, modified, or otherwise supplemented from time to time, the "**2024 1.5L Indenture**", and the claims thereunder, the "**2024 1.5L Notes Claims**"), dated as of January 3, 2018, among the EP Co-Issuers, the Debtors' Guarantors, and Wilmington Trust, National Association, as indenture trustee and notes collateral agent and/or that certain Indenture (as amended, modified, or otherwise supplemented from time to time, the "**2025 1.5L Indenture**", and together with the 2024 1.5L Indenture, the "**1.5L Indentures**", and the claims under the 1.5L Indentures collectively, the "**1.5L Notes Claims**"), dated as of February 6, 2017, among the EP Co-Issuers, the Debtors' Guarantors, and Wilmington Trust, National Association, as indenture trustee and notes collateral agent. Nominees should use this Master Ballot to tabulate votes on behalf of the 1.5 Lien Noteholders to accept or reject the Plan.

The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan.  If you are a 1.5 Lien Noteholder and do not have a Disclosure Statement, you may obtain a copy from (i) Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international).  Upon receipt of these materials, you should immediately forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, or as provided in the attached instructions.  You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of Class 6 Secured 1.5L Notes Claims and Class 7 1.5L Deficiency Claims under the Plan.

---

### IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, each holder of an Allowed 1.5L Notes Claim will receive on account of the secured portion of such Allowed 1.5L Notes Claim, in full and final satisfaction of the secured portion of such Allowed 1.5L Notes Claim, its Pro Rata share of (i) 99.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares, and (ii) the right to participate in the Rights Offering in

---

[The CUSIP/ISIN information is included on Exhibit A hereto.]

accordance with the Rights Offering Procedures.  On the Effective Date, the 1.5L Notes will be cancelled, released and extinguished and will be of no further force or effect except as set forth herein, whether surrendered for cancellation or otherwise.

### IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, holders of Allowed Unsecured Notes Claims, 1.5L Notes Deficiency Claims, and General Unsecured Claims will receive, in full and final satisfaction of such Claims, their Pro Rata share of 1.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares (the "**Unsecured Shares**").  On the Effective Date, the Unsecured Notes Claims, 1.5L Notes Deficiency Claims and General Unsecured Claims will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

### PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on the 1.5 Lien Noteholders whether or not such holders vote or if such holders vote to reject the Plan.  To have a holder's vote counted, such holder must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Receipt of this Master Ballot does not indicate that a Beneficial Holder's Claim(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, 1.5L Notes Claims.

### NOTICE REGARDING CERTAIN RELEASE, <br> EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If a Beneficial Holder (i) votes to accept the Plan, (ii) does not vote either to accept or to reject the Plan and does not opt out of granting the releases set forth in the Plan, or (iii) votes to reject the Plan but does not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Section 10.5    Injunction against Interference with the Plan**

Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**Section 10.6    Plan Injunction**

(a)    Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7    Releases**

(a)    *RELEASES BY THE DEBTORS.*  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE

[The CUSIP/ISIN information is included on Exhibit A hereto.]

ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)  *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A

[The CUSIP/ISIN information is included on Exhibit A hereto.]

BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

(c)     *Release of Liens.*  **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**Section 10.8   Exculpation**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9    Injunction Related to Releases and Exculpation**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other

[The CUSIP/ISIN information is included on Exhibit A hereto.]

holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Ballot for Beneficial Holders of Secured 1.5L Notes Claims in Class 6 and 1.5L Deficiency Claims in Class 7

**PLEASE READ THE ATTACHED VOTING INFORMATION AND**
**INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT**

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐  is a Nominee for the Beneficial Holders in the principal amount of 1.5L Notes Claims listed in Item 2 below and is the registered holder of such 1.5L Notes Claims;

☐  is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of 1.5L Notes Claims in the principal amount listed in Item 2 below; or

☐  has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of 1.5L Notes Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the 1.5L Notes Claims listed in Item 2 below.

**Item 2.  Vote on the Plan.**  The undersigned transmits the following votes of Beneficial Holders in respect of their 1.5L Notes Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

Please check one box on **Exhibit A** attached to this Master Ballot to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on this Master Ballot or on a schedule hereto). If you check more than one CUSIP/ISIN or do not clearly indicate which CUSIP/ISIN is being voted through this Master Ballot, the Voting Agent will invalidate this Master Ballot.

---

[3] Indicate in the appropriate column the principal amount of the 1.5L Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

10

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Ballot for Beneficial Holders of Secured 1.5L Notes Claims in Class 6 and 1.5L Deficiency Claims in Class 7**

| Your Customer Account Number for Each Beneficial Holder of 1.5L Notes Claims that Voted | Principal Amount of 1.5L Notes Claims Held by Your Customer | Item 2. 1.5L Notes Claims Vote on Plan | | Item 3. Opt-Out Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 3.  Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to 1.5L Notes Claims Voted Through Other Ballots.**  The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 4 of the Beneficial Holder Ballot, identifying any 1.5L Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

[The CUSIP/ISIN information is included on Exhibit A hereto.]

| Your Customer Account Number for Each Beneficial Holder that Completed Item 4 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | |
| --- | --- | --- | --- |
| | Account Number | Name of Beneficial Holder | Principal Amount of 1.5L Notes Claims Voted |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Item 4.  Certification.**  By signing this Master Ballot, the undersigned certifies that:

(a) (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot, and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding 1.5L Notes Claims through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b) the undersigned has properly disclosed: (i) the number of Beneficial Holders voting 1.5L Notes Claims through the undersigned; (ii) the respective amounts of 1.5L Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c) if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's 1.5L Notes Claims, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d) each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e) the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtor, as the case may be, if so ordered.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Item 5.  Nominee Information and Signature.**

Name of Nominee:

_____

(Print or Type)

Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____


**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS OR EMAIL ADDRES:**

**EP ENERGY BALLOT PROCESSING
C/O PRIME CLERK, LLC
830 THIRD AVENUE, 3RD FLOOR
NEW YORK, NY 10022
EMAIL:  EPENERGYBALLOTS@PRIMECLERK.COM
TELEPHONE: 1-877-502-9869 (DOMESTIC TOLL FREE) OR
            1-917-947-2373 (INTERNATIONAL)**


**THE VOTING DEADLINE IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

13

[The CUSIP/ISIN information is included on Exhibit A hereto.]

## MASTER BALLOT INSTRUCTIONS

1.  To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot (which may be a pre-validated ballot, as described in ¶ 2 below), with a return envelope addressed to you (or the Voting Agent in the case of a pre-validated ballot), so such holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated ballot, return their Beneficial Holder Ballot to the Voting Agent before the Voting Deadline. Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

2.  You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the name of the Nominee and DTC Participant Number, (ii) the amount of the 1.5L Notes Claims held by the Nominee for the Beneficial Holder, and (iii) forwarding such Beneficial Holder Ballot, together with the Disclosure Statement, a preaddressed, postage-paid return envelope addressed to, and provided by, the Voting Agent. The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, and Item 4 of the Beneficial Holder Ballot and return the Beneficial Holder Ballot directly to the Voting Agent so that it is received before the Voting Deadline.

3.  With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

4.  Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court). You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Bankruptcy Court.

5.  For the avoidance of doubt, if it is your customary practice to collect votes from your beneficial holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

6.  If you are both the Nominee and Beneficial Holder, and you wish to vote such 1.5L Notes Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

7.  In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall

14

[The CUSIP/ISIN information is included on Exhibit A hereto.]

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

9.  The Master Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of a Claim.

10. The following ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature (except with respect to Master Ballots emailed to the Voting Agent), and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

11. If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

12. If a Beneficial Holder holds a Claim(s) in Class 6 and a Claim(s) in Class 7, the Master Ballot will be tabulated in Class 6 and Class 7 based on a rate provided by the Debtors' professionals representing the secured and deficiency portion of each 1.5L Notes Claim.

13. If a Beneficial Holder submits ballots for multiple 1.5L Notes Claims, whether held in other accounts or other record names, and such ballots indicate *different or inconsistent* votes to accept or reject the Plan, then all such ballots will not be counted.

14. If a Beneficial Holder submits more than one ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

15. To the extent that conflicting votes or "overvotes" are submitted by a Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any overvotes are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated beneficial ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

16. The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

17. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

18.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTOR, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

19.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.    PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

20.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS OR EMAIL ADDRESS:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**
>
> **EMAIL: EPENERGY@PRIMECLERK.COM**
>
> **TELEPHONE: 1-877-502-9869 (DOMESTIC TOLL FREE) OR**
> **1-917-947-2373 (INTERNATIONAL)**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

## Exhibit A

**Please check one box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, you risk the votes being conveyed through this Master Ballot being deemed defective and invalid.**

| Class 3—1.5L Notes Claims | | |
|---|---|---|
| ❑ | 9.375% Senior Secured Notes due 2024 (144A) | 268787AH1 / US268787AH11 |
| ❑ | 9.375% Senior Secured Notes due 2024 (Reg S) | U2937LAE4 / USU2937LAE49 |
| ❑ | 8.000% senior secured Notes due 2025 (144A) | 268787AF5 / US268787AF54 |
| ❑ | 8.000% Senior Secured Notes due 2025 (Reg S) | U2937LAD6 / USU2937LAD65 |

**<u>Exhibit 4</u>**

**Form of Beneficial Holder Ballot for 1.5L Notes Claims: Secured 1.5L Notes Claims (Class 6) and 1.5L Deficiency Claims (Class 7)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[2] | § | |
| | § | |

## BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

**BENEFICIAL HOLDER BALLOT FOR 1.5L NOTES CLAIMS: SECURED 1.5L NOTES CLAIMS (CLASS 6) AND 1.5L DEFICIENCY CLAIMS (CLASS 7)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE VOTING AGENT BY FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE VOTING AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.**

---

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6, 2020 (the "**Voting Record Date**"), a Beneficial Holder of Claims (a "**1.5 Lien Noteholder**") against certain of the Debtors arising under or relating to that certain Indenture (as amended, modified, or otherwise supplemented from time to time, the "**2024 1.5L Indenture**", and the claims thereunder, the "**2024 1.5L Notes Claims**"), dated as of January 3, 2018, among the EP Co-Issuers, the Debtors' Guarantors, and Wilmington Trust, National Association, as indenture trustee and notes collateral agent and/or that certain Indenture (as amended, modified, or otherwise supplemented from time to time, the "**2025 1.5L Indenture**", and together with the 2024 1.5L Indenture, the "**1.5L Indentures**", and the claims under the 1.5L Indentures collectively, the "**1.5L Notes Claims**"), dated as of February 6, 2017, among the EP Co-Issuers, the Debtors' Guarantors, and Wilmington Trust, National Association, as indenture trustee and notes collateral agent.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at

[The CUSIP/ISIN information is included on Exhibit A hereto.]

EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please Contact your Nominee. If you have any questions about the Debtors' chapter 11, please contact the Voting Agent at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6 Secured 1.5L Notes Claims and Class 7 1.5L Deficiency Claims under the Plan.

**THIS BALLOT IS TO BE USED FOR VOTING BY HOLDERS OF CLASS 6 SECURED 1.5L NOTES CLAIMS AND CLASS 7 1.5L DEFICIENCY CLAIMS. IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE (AS DEFINED BELOW), IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE PROPERLY COMPLETED, SIGNED, AND RETURNED BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE, UNLESS SUCH TIME IS EXTENDED BY THE DEBTORS.**

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, each holder of an Allowed 1.5L Notes Claim will receive on account of the secured portion of such Allowed 1.5L Notes Claim, in full and final satisfaction of the secured portion of such Allowed 1.5L Notes Claim, its Pro Rata share of (i) 99.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares, and (ii) the right to participate in the Rights Offering in accordance with the Rights Offering Procedures. On the Effective Date, the 1.5L Notes will be cancelled, released and extinguished and will be of no further force or effect except as set forth herein, whether surrendered for cancellation or otherwise.

**TO PARTICIPATE IN THE RIGHTS OFFERING (AS DEFINED IN THE PLAN), EACH ELIGIBLE HOLDER IS REQUIRED TO COMPLETE AND RETURN THE SUBSCRIPTION FORM PROVIDED IN A SEPARATE PACKAGE OF RIGHTS OFFERING MATERIALS.**

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, holders of Allowed Unsecured Notes Claims, 1.5L Notes Deficiency Claims, and General Unsecured Claims will receive, in full and final satisfaction of such Claims, their Pro Rata share of 1.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares (the "**Unsecured Shares**"). On the Effective Date, the Unsecured Notes Claims, 1.5L Notes Deficiency Claims

---

[The CUSIP/ISIN information is included on Exhibit A hereto.]

and General Unsecured Claims will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, 1.5L Notes Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5**   **Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6**   **Plan Injunction**

**(a)      Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

Section 10.7   Releases

(a)     *RELEASES BY THE DEBTORS.*  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty,

[The CUSIP/ISIN information is included on Exhibit A hereto.]

right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)     ***RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*** As of the Effective Date, except for the rights ***and*** remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

(c) ***Release of Liens.*** **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**Section 10.8   Exculpation**

**TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9**   **Injunction Related to Releases and Exculpation**

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns,

[The CUSIP/ISIN information is included on Exhibit A hereto.]

subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Ballot for Beneficial Holders of 1.5L Notes Claims in Class 6 and Class 7

## PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of 1.5L Notes Claims in the amount set forth below.

$

Please be certain to check only one box on Exhibit A attached to this Beneficial Holder Ballot to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.  If you check more than one CUSIP/ISIN, you risk having your vote deemed invalid.

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**
>
> **If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned holder of a 1.5L Notes Claim votes to (check <u>one</u> box):

☐   **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to

10

[The CUSIP/ISIN information is included on Exhibit A hereto.]

the fullest extent permitted by applicable law.  The Holder of the 1.5L Notes Claim set forth in Item 1 elects to:

☐      **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the 1.5L Notes Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.     Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided, or as indicated by your Nominee (as defined below).  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.  Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

2.     Please return the Ballot in the envelope provided, or as otherwise directed by your broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**").  **The Voting Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

3.     If it is your Nominee's customary practice to collect your vote via voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

4.     Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

5.     You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

6.     The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

7.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.     If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

9.    If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.   There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.   PLEASE RETURN YOUR BALLOT PROMPTLY.

13.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.

IF YOU (I) HAVE ANY QUESTIONS REGARDING THE BALLOT, (II) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (III) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE REACH OUT TO THE VOTING AGENT AT 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO:

EPENERGYBALLOTS@PRIMECLERK.COM

PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

## Exhibit A

**Please check one box below to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot pertains (or clearly indicate such information directly on the Beneficial Holder Ballot or on a schedule thereto). If you check more than one box below, you risk the votes being conveyed through this Beneficial Holder Ballot being deemed defective and invalid.**

| Class 3—1.5L Notes Claims | | |
|---|---|---|
| ❑ | 9.375% Senior Secured Notes due 2024 (144A) | 268787AH1 / US268787AH11 |
| ❑ | 9.375% Senior Secured Notes due 2024 (Reg S) | U2937LAE4 / USU2937LAE49 |
| ❑ | 8.000% Senior Secured Notes due 2025 (144A) | 268787AF5 / US268787AF54 |
| ❑ | 8.000% Senior Secured Notes due 2025 (Reg S) | U2937LAD6 / USU2937LAD65 |

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Exhibit 5**

**Form of Ballot for General Unsecured Claims (Class 7)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[2] | § | |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
## PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS

### CLASS 7: GENERAL UNSECURED CLAIMS

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global Finance, L.L.C. (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6], 2020 (the "**Voting Record Date**"), a holder of a General Unsecured Claim in Class 7.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice.

As noted below, you may elect to have your General Unsecured Claim treated as a Convenience Claim (Class 8) in accordance with Section 4.8 of the Plan.  You may wish to seek legal advice concerning the Plan and the classification and treatment of Class 7 Unsecured Claims and Class 8 Convenience Claims under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, holders of Allowed Unsecured Notes Claims, 1.5L Notes Deficiency Claims, and General Unsecured Claims will receive, in full and final satisfaction of such Claims, their Pro Rata share of 1.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares (the "**Unsecured Shares**").  On the Effective Date, the Unsecured Notes Claims, 1.5L Notes Deficiency Claims and General Unsecured Claims will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 8**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, except to the extent that a holder of an Allowed Convenience Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Convenience Claim, each holder of an Allowed Convenience Claim will receive, on the later of (i) the Effective Date and (ii) the date on which such Convenience Claim becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, the lesser of (a) payment in Cash of [10]% of such Allowed Convenience Claim, or (b) its Pro Rata share of the Convenience Claim Distribution Amount.  Allowed Convenience Claims shall not include interest from and after the Petition Date or include any penalty on such Claim.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 7 Unsecured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5   Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6   Plan Injunction**

**(a)     Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or**

direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

Section 10.7   <u>Releases</u>

(a)     *RELEASES BY THE DEBTORS*.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the

purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

(b)   *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that

is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

        **(c)** *Release of Liens*. **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or OTHER agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**Section 10.8    Exculpation**

        **TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE**

**DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9    Injunction Related to Releases and Exculpation**

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR
COUNTED AS HAVING BEEN CAST.

**Item 1.  Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of General Unsecured Claims in the amount set forth below.

$

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned holder of a Class 7 General Unsecured Claim votes to (check <u>one</u> box):

☐  **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 7 General Unsecured Claim set forth in Item 1 elects to:

☐  **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  OPTIONAL – Convenience Claim Election.**  Check the box below if you elect to have your General Unsecured Claim irrevocably reduced to the amount of $100,000 and, therefore, to be treated as a Convenience Claim in accordance with Section 4.8 of the Plan.  By making this Convenience Claim election, your response to Item 2 above will be counted as a vote in Class 8 with respect to your Convenience Claim.  If you make a convenience Claim Election, you will not be entitled to any other recovery or distribution on account of your General Unsecured Claim in Class 7.

☐      The undersigned certifies that it elects to voluntarily and irrevocably reduce the amount of its Allowed General Unsecured Claim to $100,000, such that it will be entitled to receive a distribution as a holder of a Convenience Claim pursuant to Section 4.8 of the Plan.  Holders of General Unsecured Claims that make such election shall only be entitled to a distribution on one Convenience Claim against the Debtors in full and final satisfaction of all of such holders' Claims that are based on the same liability or obligation as the Convenience Claim.

**Item 5.  Acknowledgments.** By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Unsecured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Print or Type Name of Claimant:     _____

Last Four (4) Digits of Social Security
or Federal Tax I.D. No. of Claimant:     _____

Signature:     _____

Name of Signatory (if different than Claimant):     _____

If by Authorized Agent, Title of Agent:     _____

Street Address:     _____

City, State, and Zip Code:     _____

Telephone Number:     _____

E-mail Address:     _____

Date Completed:     _____

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

## E-Ballot Voting Instructions

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases/primeclerk.com/EPEnergy, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (Prevailing Central Time) on February 6, 2020, the Voting Deadline, unless such time is extended by the Debtors.  HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.  Prime Clerk's "E-Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

To submit your Ballot via the "E-Ballot" platform, please visit the website at the following link: https://cases/primeclerk.com/EPEnergy.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.  Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk:

VIA PHONE AT 1-877-502-9869 (DOMESTIC TOLL-FREE) or 1-917-947-2373 (INTERNATIONAL) OR EMAIL AT EPENERGYBALLOTS@PRIMECLERK.COM.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING VIA A PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE ADDRESS BELOW:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**

## **Exhibit 6**

**Master Ballot for Unsecured Notes Claims in Class 7**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| EP ENERGY CORPORATION, *et al.*, | § § | Case No. 19-35654 (MI) |
| | § § | (Jointly Administered) |
| Debtors.[2] | § § § | |

MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT
CHAPTER 11 PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED
DEBTORS

MASTER BALLOT FOR CLASS 7:  UNSECURED NOTES CLAIMS

IN ORDER FOR VOTES TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, BALLOTS MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT THEY ARE **ACTUALLY RECEIVED** BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "**VOTING DEADLINE**"), UNLESS EXTENDED BY THE DEBTORS.

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("**Nominees**") of beneficial holders of certain Claims (a "**Beneficial Holder**") against EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") in connection with the solicitation of votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**").  The Plan is attached as **Exhibit A** to

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

Specifically, this Master Ballot is being submitted to Nominees of holders (the "**Unsecured Noteholders**") of Unsecured Notes Claims (as defined in the Plan), as of January 6, 2020 (the "**Voting Record Date**"). Nominees should use this Master Ballot to tabulate votes on behalf of such Unsecured Noteholders to accept or reject the Plan.

The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan. If you are an Unsecured Noteholder and do not have a Disclosure Statement, you may obtain a copy from (i) Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international). Upon receipt of these materials, you should immediately forward to the Unsecured Noteholders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, or as provided in the attached instructions. You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-877-502-9869 (domestic toll-free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of Class 7 Unsecured Claims under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, holders of Allowed Unsecured Notes Claims, 1.5L Notes Deficiency Claims, and General Unsecured Claims will receive, in full and final satisfaction of such Claims, their Pro Rata share of 1.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares (the "**Unsecured Shares**"). On the Effective Date, the Unsecured Notes Claims, 1.5L Notes Deficiency Claims and General Unsecured Claims will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the

[The CUSIP/ISIN information is included on Exhibit A hereto.]

applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Unsecured Noteholders whether or not such holders vote or if such holders vote to reject the Plan. To have a holder's vote counted, such holder must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Receipt of this Master Ballot does not indicate that a Beneficial Holder's Claim(s) has been or will be Allowed. This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Unsecured Notes Claims.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If a Beneficial Holder (i) votes to accept the Plan, (ii) does not vote either to accept or to reject the Plan and does not opt out of granting the releases set forth in the Plan, or (iii) votes to reject the Plan but does not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5** <u>**Injunction against Interference with the Plan**</u>

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6** <u>**Plan Injunction**</u>

**(a)     Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7   Releases**

(a)     *RELEASES BY THE DEBTORS.*   As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b) *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.* As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto,

5

[The CUSIP/ISIN information is included on Exhibit A hereto.]

or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

(c)     *Release of Liens.*  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

Section 10.8   <u>Exculpation</u>

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION

[The CUSIP/ISIN information is included on Exhibit A hereto.]

WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**Section 10.9** <u>Injunction Related to Releases and Exculpation</u>

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

<u>Relevant Definitions Related to Release and Exculpation Provisions</u>:

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties,

[The CUSIP/ISIN information is included on Exhibit A hereto.]

(viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

## PLEASE READ THE ATTACHED VOTING INFORMATION AND <u>INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT</u>

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for the Unsecured Noteholders in the principal amount of Unsecured Notes Claims listed in Item 2 below and is the registered holder of such Unsecured Notes Claims;

☐ is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Unsecured Notes Claims in the principal amount listed in Item 2 below; or

☐ has been granted a proxy (an original of which is annexed hereto) from a Nominee or an Unsecured Noteholder that is the registered holder of the principal amount of Unsecured Notes Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Unsecured Noteholders listed in Item 2 below.

**Item 2.  Vote on the Plan.**  The undersigned transmits the following votes of Unsecured Noteholders in respect of their Unsecured Notes Claims and certifies that the following Unsecured Noteholders, as identified by their respective customer account numbers set forth below, are Unsecured Noteholders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

Please check one box on **Exhibit A** attached to this Master Ballot to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on this Master Ballot or on a schedule hereto). If you check more than one CUSIP/ISIN or do not clearly indicate which CUSIP/ISIN is being voted through this Master Ballot, the Voting Agent will invalidate this Master Ballot.

---

[3] Indicate in the appropriate column the principal amount of the Unsecured Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Unsecured Holder must vote all of such Unsecured Holder's Claims to accept or to reject the Plan and may not split such vote. Any ballot executed by an Unsecured Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

9

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Beneficial Holder Ballot for Unsecured Notes Claims in Class 7**

| Your Customer Account Number for Each Beneficial Holder of Unsecured Notes Claims that Voted | Principal Amount of Unsecured Notes Claims Held by Your Customer | Item 2. Class 7 Unsecured Claims Vote on Plan | | Item 3. Opt-Out Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 3.  Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 7 Unsecured Notes Claims Voted Through Other Ballots.**  The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 4 of the Beneficial Holder Ballot, identifying any Class 7 Unsecured Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Beneficial Holder Ballot for Unsecured Notes Claims in Class 7

| Your Customer Account Number for Each Beneficial Holder that Completed Item 4 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | |
| --- | --- | --- | --- |
| | Account Number | Name of Beneficial Holder | Principal Amount of Unsecured Notes Claims Voted |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Item 4.  Certification.**  By signing this Master Ballot, the undersigned certifies that:

(a)     (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot, and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 7 Unsecured Notes Claims through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)     the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 7 Unsecured Notes Claims through the undersigned; (ii) the respective amounts of Class 7 Unsecured Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c)     if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 7 Unsecured Notes Claims, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(d)     each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(e)     the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtor, as the case may be, if so ordered.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Item 5.  Nominee Information and Signature.**

Name of Nominee:

_____

(Print or Type)

Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS OR EMAIL ADDRES:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**
>
> **EMAIL: EPENERGYBALLOTS@PRIMECLERK.COM**
>
> **TELEPHONE: 1-877-502-9869 (DOMESTIC TOLL-FREE) OR**
> **1-917-947-2373 (INTERNATIONAL)**

**THE VOTING DEADLINE IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

## MASTER BALLOT INSTRUCTIONS

1.    To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot (which may be a pre-validated ballot, as described in ¶ 2 below), with a return envelope addressed to you (or the Voting Agent in the case of a pre-validated ballot), so such holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated ballot, return their Beneficial Holder Ballot to the Voting Agent before the Voting Deadline. Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

2.    You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the name of the Nominee and DTC Participant Number, (ii) the amount of the Unsecured Notes Claims held by the Nominee for the Beneficial Holder, and (iii) forwarding such Beneficial Holder Ballot, together with the Disclosure Statement, a preaddressed, postage-paid return envelope addressed to, and provided by, the Voting Agent.  The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, and Item 4 of the Beneficial Holder Ballot and return the Beneficial Holder Ballot directly to the Voting Agent so that it is received before the Voting Deadline.

3.    With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

4.    Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Bankruptcy Court.

5.    For the avoidance of doubt, if it is your customary practice to collect votes from your beneficial holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

6.    If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 7 Unsecured Notes Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

7.    In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall

[The CUSIP/ISIN information is included on Exhibit A hereto.]

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

9.      The Master Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of a Claim.

10.     The following ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature (except with respect to Master Ballots emailed to the Voting Agent), and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

11.     If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

12.     If a Beneficial Holder submits ballots for multiple Class 7 Unsecured Notes Claims, whether held in other accounts or other record names, and such ballots indicate *different or inconsistent* votes to accept or reject the Plan, then all such ballots will not be counted.

13.     If a Beneficial Holder submits more than one ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

14.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any overvotes are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated beneficial ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

15.     The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

16.     There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

17.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Beneficial Holder Ballot for Unsecured Notes Claims in Class 7**

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTOR, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

18. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

19. THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS OR EMAIL ADDRESS:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**
>
> **EMAIL: EPENERGYBALLOTS@PRIMECLERK.COM**
>
> **TELEPHONE: 1-877-502-9869 (DOMESTIC TOLL-FREE) OR**
> **1-917-947-2373 (INTERNATIONAL)**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Master Ballot for Unsecured Notes Claims in Class 7

### Exhibit A

**Please check one box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, you risk the votes being conveyed through this Master Ballot being demed defective and invalid.**

| Class 3—1.5L Notes Claims | | |
|---|---|---|
| ❑ | | |
| ❑ | | |

## Exhibit 7

**Beneficial Holder Ballot for Unsecured Notes Claims in Class 7**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| EP ENERGY CORPORATION, *et al.*, | § § | Case No. 19-35654 (MI) |
| Debtors.[2] | § § § § | (Jointly Administered) |

## BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**BENEFICIAL HOLDER BALLOT FOR CLASS 7: UNSECURED NOTES CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE VOTING AGENT BY FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE VOTING AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.**

---

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6, 2020 (the "**Voting Record Date**"), a holder (the "**Unsecured Noteholder**") of Unsecured Notes Claims (each as defined in the Plan).

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please contact your nominee. If you have any questions about the Debtors' chapter 11, please contact the Voting Agent at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 7 Unsecured Claims under the Plan.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**THIS BALLOT IS TO BE USED FOR VOTING BY HOLDERS OF CLASS 7 UNSECURED NOTES CLAIMS. IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE (AS DEFINED BELOW), IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE PROPERLY COMPLETED, SIGNED, AND RETURNED BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE, UNLESS SUCH TIME IS EXTENDED BY THE DEBTORS.**

---

### IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, holders of Allowed Unsecured Notes Claims, 1.5L Notes Deficiency Claims, and General Unsecured Claims will receive, in full and final satisfaction of such Claims, their Pro Rata share of 1.0% of the New Common Shares, subject to dilution by the Rights Offering Shares, the Backstop Commitment Premium, the Private Placement (if applicable), the Jeter Shares (if applicable), and the EIP Shares (the "**Unsecured Shares**"). On the Effective Date, the Unsecured Notes Claims, 1.5L Notes Deficiency Claims and General Unsecured Claims will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Unsecured Notes Claims in Class 7. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

## NOTICE REGARDING CERTAIN RELEASE,
## EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5    Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6    Plan Injunction**

**(a)    Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan;** ***provided***, **that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.**

4

[The CUSIP/ISIN information is included on Exhibit A hereto.]

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7** **Releases**

(a)     ***RELEASES BY THE DEBTORS.*** **As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**(b)** ***RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*** **As of the Effective Date, except for the rights *and* remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

        **(c)**    ***Release of Liens.***  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

**Section 10.8**  <u>Exculpation</u>

        TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR

7

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9    <u>Injunction Related to Releases and Exculpation</u>**

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

**<u>Relevant Definitions Related to Release and Exculpation Provisions</u>:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the

8

[The CUSIP/ISIN information is included on Exhibit A hereto.]

opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Beneficial Holder Ballot for Unsecured Notes Claims in Class 7**

### PLEASE READ THE ATTACHED VOTING INFORMATION
### AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of Unsecured Notes Claims as set forth in Exhibit A hereto in the principal amount set forth below.

$

Please be certain to check only one box on **Exhibit A** attached to Beneficial Holder Ballot to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot pertains. If you check more than one CUSIP/ISIN, you risk having your vote deemed invalid.

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned holder of a Class 7 Unsecured Claim votes to (check one box):

☐  **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to

10

[The CUSIP/ISIN information is included on Exhibit A hereto.]

the fullest extent permitted by applicable law.  The Holder of the Class 7 Unsecured Notes Claim set forth in Item 1 elects to:

☐      **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Unsecured Notes Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

11

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Beneficial Holder Ballot for Unsecured Notes Claims in Class 7**

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.   Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided, or as indicated by your Nominee (as defined below).  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.  Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

2.   Please return the Ballot in the envelope provided, or as otherwise directed by your broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**").  **The Voting Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

3.   If it is your Nominee's customary practice to collect your vote via a voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

4.   Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

5.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

6.   The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

7.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.   If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

**Beneficial Holder Ballot for Unsecured Notes Claims in Class 7**

9. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12. PLEASE RETURN YOUR BALLOT PROMPTLY.

13. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14. THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.

IF YOU (I) HAVE ANY QUESTIONS REGARDING THE BALLOT, (II) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (III) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE REACH OUT TO THE VOTING AGENT AT 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO:

EPENERGYBALLOTS@PRIMECLERK.COM

PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

[The CUSIP/ISIN information is included on Exhibit A hereto.]

Beneficial Holder Ballot for Unsecured Notes Claims in Class 7

## Exhibit A

**Please check one box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, you risk the votes being conveyed through this Master Ballot being deemed defective and invalid.**

| Class 7 - Unsecured Notes Claims | | |
|---|---|---|
| ❑ | 9.375% Senior Notes due 2020 | 29977HAB6 / US29977HAB69 |
| ❑ | 9.375% Senior Notes due 2020 (144A) | 29977HAA8 / US29977HAA86 |
| ❑ | 9.375% Senior Notes due 2020 (Reg S) | U2993NAA9 / USU2993NAA91 |
| ❑ | 7.750% Senior Notes due 2022 | 268787AB4 / US268787AB41 |
| ❑ | 7.750% Senior Notes due 2022 (144A) | 268787AA6 / US268787AA67 |
| ❑ | 7.750% Senior Notes due 2022 (Reg S) | U2937LAA2 / USU2937LAA27 |
| ❑ | 6.375% Senior Notes due 2023 | 268787AD0 / US268787AD07 |
| ❑ | 6.375% Senior Notes due 2023 (144A) | 268787AC2 / US268787AC24 |
| ❑ | 6.375% Senior Notes due 2023 (Reg S) | U2937LAB0 / USU2937LAB00 |

**Exhibit 8**

**Form of Ballot for Convenience Claims (Class 8)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| EP ENERGY CORPORATION, *et al.*, | § § | Case No. 19-35654 (MI) |
| Debtors.[2] | § § § § | (Jointly Administered) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS**

**CLASS 8: CONVENIENCE CLAIMS**

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6, 2020 (the "**Voting Record Date**"), a holder of a Class 8 Convenience Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 8 Convenience Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 8**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, except to the extent that a holder of an Allowed Convenience Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Convenience Claim, each holder of an Allowed Convenience Claim will receive, on the later of (i) the Effective Date and (ii) the date on which such Convenience Claim becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, the lesser of (a) payment in Cash of [10]% of such Allowed Convenience Claim, or (b) its Pro Rata share of the Convenience Claim Distribution Amount. Allowed Convenience Claims shall not include interest from and after the Petition Date or include any penalty on such Claim.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the

purpose of allowance or disallowance of, or distribution on account of, Class 8 Convenience Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5   Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6   Plan Injunction**

**(a)   Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; _provided_, that nothing contained in the Plan shall preclude such Persons who have**

held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section [10.6] of the Plan.

**Section 10.7     <u>Releases</u>**

(a)     ***RELEASES BY THE DEBTORS.***  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR

**RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**(b)** ***RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*** **As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE**

CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

(c)   *Release of Liens.*  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or OTHER agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

Section 10.8   Exculpation

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND

**DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.   THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9**  **Injunction Related to Releases and Exculpation**

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## PLEASE READ THE ATTACHED VOTING INFORMATION
## AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of Convenience Claims in the amount set forth below.

$ 

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned holder of a Class 8 Convenience Claim votes to (check <u>one</u> box):

☐   **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 8 Convenience Claim set forth in Item 1 elects to:

9

☐      **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.   Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Convenience Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Print or Type Name of Claimant:                    _____

Last Four (4) Digits of Social Security
or Federal Tax I.D. No. of Claimant:               _____

Signature:                                         _____

Name of Signatory (if different than Claimant):    _____

If by Authorized Agent, Title of Agent:            _____

Street Address:                                    _____

City, State, and Zip Code:                         _____

Telephone Number:                                  _____

E-mail Address:                                    _____

Date Completed:                                    _____

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

### E-Ballot Voting Instructions

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/EPEnergy, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (Prevailing Central Time) on February 6, 2020, the Voting Deadline, unless such time is extended by the Debtors. HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM. Prime Clerk's "E-Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

            **Unique E-Ballot ID#:**  _____

To submit your Ballot via the "E-Ballot" platform, please visit the website at the following link: https://cases.primeclerk.com/EPEnergy. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot. Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk:

VIA PHONE AT 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 OR EMAIL AT EPENERGYBALLOTS@PRIMECLERK.COM.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**Ballot for Convenience Claims in Class 8**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING VIA A PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE ADDRESS BELOW:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**

**<u>Exhibit 9</u>**

**Master Ballot for Existing Parent Equity Interests in Class 11**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EP ENERGY CORPORATION, *et al.*, | § § | Case No. 19-35654 (MI) |
| | § § | (Jointly Administered) |
| Debtors.[2] | § § § | |

## MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS

## MASTER BALLOT FOR CLASS 11:  EXISTING PARENT EQUITY INTERESTS

IN ORDER FOR VOTES TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, BALLOTS MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT THEY ARE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agents or nominees ("**Nominees**") of beneficial holders of certain Interests (a "**Beneficial Holder**") against EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") in connection with the solicitation of votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**").  The Plan is attached as <u>**Exhibit A**</u> to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation*

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>**Exhibit A**</u> to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

*and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the **"Disclosure Statement"**).

Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders. Nominees should use this Master Ballot to tabulate votes on behalf of the Beneficial Holders to accept or reject the Plan.

The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan. If you or a holder of an Existing Parent Equity Interest do not have a Disclosure Statement, you may obtain a copy from (i) Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at [EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international). Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, or as provided in the attached instructions. You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of Class 11 Existing Parent Equity Interests under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 11**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, Existing Parent Equity Interests will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on holders of Existing Parent Equity Interests whether or not such holders vote or if

such holders vote to reject the Plan.  To have a holder's vote counted, such holder must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Receipt of this Master Ballot does not indicate that a Beneficial Holder's Interests(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 11 Existing Parent Equity Interests.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If a Beneficial Holder (i) votes to accept the Plan, (ii) does not vote either to accept or to reject the Plan and does not opt out of granting the releases set forth in the Plan, or (iii) votes to reject the Plan but does not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5**   **Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6**   **Plan Injunction**

**(a)   Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any**

property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

Section 10.7   Releases

(a)     *RELEASES BY THE DEBTORS*.  AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS

GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)     *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*  AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS, AND THE DOCUMENTS IN THE PLAN SUPPLEMENT  OR AS OTHERWISE PROVIDED IN ANY ORDER OF THE BANKRUPTCY COURT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS,

**ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

(c)      ***Release of Liens.*** **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their**

successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

**Section 10.8** <u>Exculpation</u>

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**Section 10.9** <u>Injunction Related to Releases and Exculpation</u>

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits,

judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for the Beneficial Holders in the amount of Class 11 Existing Parent Equity Interests listed in Item 2 below and is the registered holder of such Class 11 Existing Parent Equity Interests;

☐ is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Existing Parent Equity Interests in the amount listed in Item 2 below; or

☐ has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of Class 11 Existing Parent Equity Interests listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 11 Existing Parent Equity Interests listed in Item 2 below.

**Item 2.  Vote on the Plan.**  The undersigned transmits the following votes of Beneficial Holders in respect of their Class 11 Existing Parent Equity Interests and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3] Indicate in the appropriate column the amount of the Class 11 Existing Parent Equity Interests voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Interests to accept or to reject the Plan and may not split such vote. Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

Master Ballot for Existing Parent Equity Interests in Class 11

| Your Customer Account Number for Each Beneficial Holder of Class 11 Existing Parent Equity Interests that Voted | Number of Shares of Class A common stock of EP Energy Corporation Held by Your Customer | Item 2. Vote on Plan | | Item 3. Opt-Out Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 3.  Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 11 Existing Parent Equity Interests Voted Through Other Ballots.**  The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 4 of the Beneficial Holder Ballot, identifying any Class 11 Existing Parent Equity Interests for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

Master Ballot for Existing Parent Equity Interests in Class 11

| Your Customer Account Number for Each Beneficial Holder that Completed Item 4 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | |
|---|---|---|---|
| | Account Number | Name of Beneficial Holder | Number of Shares of Class A common stock of EP Energy Corporation Voted |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Item 4. Certification.** By signing this Master Ballot, the undersigned certifies that:

(f)     (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot, and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 11 Existing Parent Equity Interests through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(g)     the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 11 Existing Parent Equity Interests through the undersigned; (ii) the respective amounts of Class 11 Existing Parent Equity Interests owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(h)     if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 11 Existing Parent Equity Interests, the undersigned confirms and attests to each of the certifications in Item 4 of the Beneficial Holder Ballot;

(i)     each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan; and

(j)     the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtor, as the case may be, if so ordered.

**Item 5.  Nominee Information and Signature.**

Name of Nominee:

_____

(Print or Type)

Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS OR EMAIL ADDRES:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**
>
> **EMAIL:** EPENERGYBALLOTS@PRIMECLERK.COM
>
> **TELEPHONE: 1-877-502-9869 (DOMESTIC TOLL FREE) OR**
> **1-917-947-2373 (INTERNATIONAL)**

**THE VOTING DEADLINE IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

## <u>MASTER BALLOT INSTRUCTIONS</u>

1.  To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot (which may be a pre-validated ballot, as described in ¶ 2 below), with a return envelope addressed to you (or the Voting Agent in the case of a pre-validated ballot), so such holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated ballot, return their Beneficial Holder Ballot to the Voting Agent before the Voting Deadline. Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

2.  You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the name of the Nominee and DTC Participant Number, (ii) the number of shares of Class A common stock of EP Energy Corporation held by the Nominee for the Beneficial Holder, and (iii) forwarding such Beneficial Holder Ballot, together with the Disclosure Statement, a preaddressed, postage-paid return envelope addressed to, and provided by, the Voting Agent. The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, and Item 4 of the Beneficial Holder Ballot and return the Beneficial Holder Ballot directly to the Voting Agent so that it is received before the Voting Deadline.

3.  With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

4.  Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court). You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Bankruptcy Court.

5.  For the avoidance of doubt, if it is your customary practice to collect votes from your beneficial holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

6.  If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 11 Existing Parent Equity Interests for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

7.  In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.    The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

9.    The Master Ballot does not constitute, and shall not be deemed to be, a proof of Claim or Interest or an assertion or admission of Claims or Interests.

10.   The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature (except with respect to Master Ballots emailed to the Voting Agent), and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

11.   If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors. The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

12.   If a Beneficial Holder submits ballots for multiple Class 11 Existing Parent Equity Interests, whether held in other accounts or other record names, and such ballots indicate *different or inconsistent* votes to accept or reject the Plan, then all such ballots will not be counted.

13.   If a Beneficial Holder submits more than one ballot voting the same Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

14.   To the extent that conflicting votes or "overvotes" are submitted by a Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Nominee. To the extent that any overvotes are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated beneficial ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

15.   The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

16.   There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

17.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

**Master Ballot for Existing Parent Equity Interests in Class 11**

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTOR, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

18.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.    PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

19.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS OR EMAIL ADDRESS:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**
>
> **EMAIL: EPENERGYBALLOTS@PRIMECLERK.COM**
>
> **TELEPHONE: 1-877-502-9869 (DOMESTIC TOLL-FREE) OR**
> **1-917-947-2373 (INTERNATIONAL)**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

## Exhibit 10

**Form of Beneficial Holder Ballot for Existing Parent Equity Interests in Class 11**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **EP ENERGY CORPORATION**, *et al.*, | § | Case No. 19-35654 (MI) |
|  | § |  |
|  | § | (Jointly Administered) |
| Debtors.[2] | § |  |
|  | § |  |

## BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE
## JOINT CHAPTER 11 PLAN OF EP ENERGY CORPORATION
## <u>AND ITS AFFILIATED DEBTORS</u>

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

## BENEFICIAL HOLDER BALLOT FOR CLASS 11:
### EXISTING PARENT EQUITY INTERESTS

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE VOTING AGENT BY FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE VOTING AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.**

---

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6, 2020 (the "**Voting Record Date**"), a beneficial holder of certain Interests (a "**Beneficial Holder**") against EP Energy Corporation.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please contact your Nominee. If you have questions about the Debtors' chapter 11, please contact the Voting Agent at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 11 Existing Parent Equity Interests under the Plan.

2

Case 19-35654 Document 435 Filed in TXSB on 11/19/19 Page 208 of 251
Beneficial Holder Ballot for Existing Parent Equity Interests in Class 11

**THIS BALLOT IS TO BE USED FOR VOTING BY HOLDERS OF CLASS 11 EXISTING PARENT EQUITY INTERESTS. IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE (AS DEFINED BELOW), IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE PROPERLY COMPLETED, SIGNED, AND RETURNED BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE, UNLESS SUCH TIME IS EXTENDED BY THE DEBTORS.**

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 11**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, Existing Parent Equity Interests will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on holders of Existing Parent Equity Interests whether or not such holders vote or if such holders vote to reject the Plan. To have a holder's vote counted, such holder must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 11 Existing Parent Equity Interests. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5    Injunction against Interference with the Plan**

Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**Section 10.6    Plan Injunction**

(a)    Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7    Releases**

(a)    *RELEASES BY THE DEBTORS*.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the

Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

     (b)    *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS*.  **As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

     (c)    *Release of Liens*.  Except as otherwise specifically provided in the Plan or in any contract, *instrument*, release, or other agreement or document contemplated under

or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

**Section 10.8     <u>Exculpation</u>**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.   THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**Section 10.9**     <u>Injunction Related to Releases and Exculpation</u>

       **The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions**</u>**:**

       "**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

       "**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

       "**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Beneficial Holder Ballot for Existing Parent Equity Interests in Class 11**

## PLEASE READ THE ATTACHED VOTING INFORMATION
## AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT

> PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Number of Common Shares**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of the following number of shares of Class A common stock of EP Energy Corporation.

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**
>
> **If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned holder of Class 11 Existing Parent Equity Interests votes to (check <u>one</u> box):

☐  **Accept** the Plan          ☐  **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 11 Existing Parent Equity Interests set forth in Item 1 elects to:

☐  **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Beneficial Holder Ballot for Existing Parent Equity Interests in Class 11**

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Class 11 Existing Parent Equity Interests described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided, or as indicated by your Nominee (as defined below). Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan. Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

2. Please return the Ballot in the envelope provided, or as otherwise directed by your broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**"). **The Voting Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline. IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

3. If it is your Nominee's customary practice to collect your vote via voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

4. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

5. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

6. The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or Interest or an assertion or admission of Claims or Interests.

7. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

**Beneficial Holder Ballot for Existing Parent Equity Interests in Class 11**

9.     If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

10.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

11.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.    PLEASE RETURN YOUR BALLOT PROMPTLY.

13.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.

IF YOU (I) HAVE ANY QUESTIONS REGARDING THE BALLOT, (II) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN, OR (III) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE REACH OUT TO THE VOTING AGENT AT 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO:

EPENERGYBALLOTS@PRIMECLERK.COM

PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

**<u>Exhibit 11</u>**

**Form of Registered Holder Ballot for Existing Parent Equity Interests in Class 11**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EP ENERGY CORPORATION, *et al.*, | § § | Case No. 19-35654 (MI) |
| | § § | (Jointly Administered) |
| Debtors.[2] | § § § | |

### REGISTERED HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT
### THE JOINT CHAPTER 11 PLAN OF EP ENERGY
### CORPORATION AND ITS AFFILIATED DEBTORS

### REGISTERED HOLDER BALLOT FOR CLASS 11:
### EXISTING PARENT EQUITY INTERESTS

---

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

---

EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, modified or supplemented from time to time, the "**Plan**").  The Plan is attached as **Exhibit A** to the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy*

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

*Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be further amended, the **"Disclosure Statement"**).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 6, 2020 (the **"Voting Record Date"**), a holder (each a **"Holder"**) of Interests against EP Energy Corporation (the **"Existing Parent Equity Interests"**).

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the **"Voting Agent"**) at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/EPEnergy/Home-Index, by email at EPEnergyinfo@primeclerk.com, or by telephone at 1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at1-877-502-9869 (Domestic Toll-Free) or 1-917-947-2373 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 11 Existing Parent Equity Interests under the Plan.

**THIS BALLOT IS TO BE USED FOR VOTING BY HOLDERS OF CLASS 11 (EXISTING PARENT EQUITY INTERESTS). IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE PROPERLY COMPLETED, SIGNED, AND RETURNED TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED NO LATER THAN THE VOTING DEADLINE, UNLESS SUCH TIME IS EXTENDED BY THE DEBTORS.**

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 11**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, on the Effective Date, Existing Parent Equity Interests will be cancelled, released, and extinguished and will be of no further force or effect, whether surrendered for cancellation or otherwise.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the **"Bankruptcy Court"**) and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote

counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Interest(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 11 Existing Parent Equity Interests. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5** <u>**Injunction against Interference with the Plan**</u>

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6** <u>**Plan Injunction**</u>

**(a)     Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any**

property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

Section 10.7     Releases

(a)     *RELEASES BY THE DEBTORS.*  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action, losses, remedies, or liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirements or otherwise that the Debtors, the Reorganized Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**(b)      *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Definitive Documents, and the documents in the Plan Supplement  or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise by statute, violations of federal or state securities laws or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claims or Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the PSA, the Definitive Documents and the documents in the Plan Supplement, or related agreements, instruments, or other documents, relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrences taking place on or before the Effective Date.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

**(c)      *Release of Liens.*  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or OTHER agreement or document contemplated under or executed in connection with the Plan, including the Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

**Section 10.8   <u>Exculpation</u>**

**TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED**

TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.   THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**Section 10.9** **Injunction Related to Releases and Exculpation**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory

board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Number of Common Shares**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of the following number of shares of Class A common stock of EP Energy Corporation.

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

---

The undersigned holder of a Class 11 Existing Parent Equity Interest votes to (check <u>one</u> box):

☐  **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of Class 11 Existing Parent Equity Interests set forth in Item 1 elects to:

☐  **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Class 11 Existing Parent Equity Interests described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Print or Type Name of Claimant: _____

Last Four (4) Digits of Social Security
or Federal Tax I.D. No. of Claimant: _____

Signature: _____

Name of Signatory (if different than Holder): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, and Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**Registered Holder Ballot for Existing Parent Equity Interests in Class 11**

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Interests within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Interests within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or Interest or an assertion or admission of Claims or Interests.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917-947-2373 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO EPENERGYBALLOTS@PRIMECLERK.COM WITH "EP ENERGY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

### E-Ballot Voting Instructions

**To properly submit your Ballot electronically, you must electronically complete, sign, and return the customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/EPEnergy, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (Prevailing Central Time) on February 6, 2020, the Voting Deadline, unless such time is extended by the Debtors.  HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.  Prime Clerk's "E-Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

To submit your Ballot via the "E-Ballot" platform, please visit the website at the following link: https://cases.primeclerk.com/EPEnergy.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.  Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk:

VIA PHONE AT 1-877-502-9869 (DOMESTIC TOLL-FREE) OR 1-917- 947-2373 OR EMAIL AT EPENERGYBALLOTS@PRIMECLERK.COM.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2020 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING VIA A PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE ADDRESS BELOW:**

> **EP ENERGY BALLOT PROCESSING**
> **C/O PRIME CLERK, LLC**
> **830 THIRD AVENUE, 3RD FLOOR**
> **NEW YORK, NY 10022**

**EXHIBIT 12**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **EP ENERGY CORPORATION**, *et al.*, | § | **Case No. 19-35654 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

### NOTICE OF NON-VOTING STATUS

On October 3, 2019 (the "**Petition Date**"), EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases, (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On January 6, 2020, the Bankruptcy Court held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 430) (as may be amended, "**Disclosure Statement**")[2] of EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases, and thereafter entered an order (the "**Order**") with respect thereto. The Order, among other things, authorizes the Debtors to solicit votes to accept the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, filed on November 18, 2019 (Docket No. 429) (as may be amended, the "**Plan**"). If you have any questions about the status of your Interest or if you wish to obtain paper copies of the Plan and Disclosure Statement, you may contact the Debtors' Voting Agent, Prime Clerk LLC, by email at EPEnergyinfo@primeclerk.com, or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada). Copies of the Plan and Disclosure Statement can also be accessed online at https://cases.primeclerk.com/EPEnergy/Home-Index. Please be advised that Prime Clerk LLC cannot provide legal advice.

**You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a holder of:**

(i) **Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes), Class 5 (1.25L Notes Claims), Class 9 (Intercompany**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

Claims), and/or **Class 13 (Intercompany Interests)** under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan; and/or

(ii) **Class 10 (Subordinated Claims) and/or Class 12 (Other Equity Interests)** under the Plan, which provides that your Interest in the Debtors is not entitled to a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and not entitled to vote on the Plan.

The deadline for filing objections to confirmation of the Plan is **February 6, 2020, at 4:00 p.m. (Prevailing Central Time)** (the "**Objection Deadline**"). Any objections to the Plan must be: (i) in writing; (ii) filed with the Clerk of the Bankruptcy Court together with proof of service thereof; (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection; and (iv) conform to the applicable Bankruptcy Rules and the Local Rules.

---

If you have questions about this Notice of Non-Voting Status, please contact Prime Clerk LLC
**Telephone**: (877) 502-9869 (Toll-Free) or (917) 947-2373 (outside U.S. or Canada)
**Email**: EPEnergyinfo@primeclerk.com
**Website**: https://cases.primeclerk.com/EPEnergy/Home-Index

---

2

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be presumed to have consented to the releases contained in Section 10 of the Plan.**

**Section 10.5**   **Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.**

**Section 10.6**   **Plan Injunction**

**(a)   Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.**

3

**(b)** **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.**

**Section 10.7** **Releases**

**(a)** ***RELEASES BY THE DEBTORS.*** **AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH**

4

RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "__DEBTOR RELEASES__"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)   *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS*.  AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS, AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE

5

OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

(c)    *Release of Liens*.  Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Reinstated Debt and the  Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

**Section 10.8    Exculpation**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY

6

**WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM OR CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, EXIT FACILITY, THE RIGHTS OFFERING, THE PRIVATE PLACEMENT, THE EMPLOYEE INCENTIVE PLAN, THE DISCLOSURE STATEMENT, THE PSA, THE RESTRUCTURING, AND THE PLAN (INCLUDING THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**Section 10.9**    <u>Injunction Related to Releases and Exculpation</u>

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions**</u>**:**

**"Exculpated Parties"** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the members of any statutory committee appointed in the Chapter 11 Cases, and (iv) with respect to each of the

7

foregoing Persons in clauses (i) through (iii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: [●], 2019
      Houston, Texas

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Ronit Berkovich (admitted *pro hac vice*)
Scott R. Bowling (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Matt.Barr@weil.com
      Ronit.Berkovich@weil.com
      Scott.Bowling@weil.com
      DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "**Release Opt Out Form**") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors* (the "**Plan**").[1] A holder of Claims and/or Interests is deemed to grant the third-party releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the third-party releases set forth in Section 10.7(b) of the Plan, please complete, sign and date this Release Opt Out Form and return it promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Voting Agent at the address set forth below:

To ensure that your Release Opt Out Form is counted, clearly sign and return your Release Opt Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to:

**EP Energy Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY FEBRUARY 6, AT 4:))  (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").  IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1**.  **Amount of Claim**.  The undersigned certifies that, as of February 6, 2019, the undersigned was the holder of Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (1.125L Notes Claims), Class 5 (1.25L Notes Claims), Class 10 (Subordinated Claims), and/or Class 12 (Other Equity Interests), as indicated below:

| | |
|---|---|
| Class 1 (Other Secured Claims) | **Amount $**_____ |
| Class 2 (Other Priority Claims) | **Amount $**_____ |
| Class 4 (1.125L Notes Claims) | **Amount $**_____ |
| Class 5 (1.25L Notes Claims) | **Amount $**_____ |
| Class 10 (Subordinated Claims) | **Amount $**_____ |
| Class 12 (Other Equity Interests) | **Amount $**_____ |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement.

**Item 2.  Releases**.

**The Plan contains the following release provisions:**

**Section 10.7**   **Releases**

(a)   *RELEASES BY THE DEBTORS*.  AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION,

2

TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b) *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.* AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS, AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS

3

**GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE PSA, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

(c)    *Release of Liens*.  **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Reinstated Debt and the  Exit Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions**</u>**:**

"**Released Parties**" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Supporting Noteholders, (iv) the arrangers, agents and lenders under the Exit Facility, (v) the DIP Agent and DIP Lenders under the DIP Facility, (vi) the Prepetition RBL Agent

and the Prepetition RBL Lenders under the Prepetition RBL Facility, (vii) the Backstop Parties, (viii) holders of Existing Parent Equity Interests, on account of their contributions under the Plan, and (ix) with respect to each of the foregoing Persons, in clauses (i) through (viii), each of their affiliates, predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. Notwithstanding the foregoing, any Person that opts out of the releases set forth in section 10.7(b) of the Plan shall not be deemed a Released Party hereunder.

"**Releasing Parties**" means collectively, (i) the holders of all Claims or Interests that vote to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTERESTS WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.7(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.7(b) OF THE PLAN.**

**By checking the box below, the undersigned holder of the Claims and/or Interests identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.7(b) of the Plan:**

☐   **Elects to <u>opt out</u> of the releases contained in Section 10.7(b) of the Plan.**

**Item 3. Certifications.**  By signing this Release Opt Out Form, the undersigned certifies that:

(a)      as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)      the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)      the undersigned has submitted the same election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)      that no other Release Opt Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Release Opt Out Forms have

been submitted with respect to such Claims or Interests, then any such earlier Release Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| Signature: | _____ |
| Name and Title of Signatory (if different than Holder): | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| E-mail Address: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY MAIL, OVERNIGHT OR HAND DELIVERY TO:**

**EP Energy Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

**THE OPT OUT DEADLINE IS FEBRUARY 6, 2020 AT 4:00 p.m. (PREVAILING CENTRAL TIME).**

## <u>EXHIBIT B</u>

**Notice of Disclosure Statement Hearing**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **EP ENERGY CORPORATION,** *et al.*, | § | **Case No. 19-35654 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

**NOTICE OF HEARING TO CONSIDER APPROVAL OF**
**PROPOSED DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN**
<u>**OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**</u>

**TO PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| | |
|---|---|
| EP Energy Corporation | Case No. 19-35654 |
| EPE Acquisition, LLC | Case No. 19-35653 |
| EP Energy LLC | Case No. 19-35652 |
| Everest Acquisition Finance Inc. | Case No. 19-35651 |
| EP Energy Global LLC | Case No. 19-35650 |
| EP Energy Management, L.L.C. | Case No. 19-35649 |
| EP Energy Resale Company, L.L.C. | Case No. 19-35648 |
| EP Energy E&P Company, L.P. | Case No. 19-35647 |

**PLEASE TAKE NOTICE THAT,** on November 18, 2019, EP Energy Corporation and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed the *Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, dated November 18, 2019 (Docket No. 429) (as may be further amended, the "**Plan**") and the proposed *Disclosure Statement for the Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors*, dated November 18, 2019 (Docket No. 430) (as may be further amended, the "**Proposed Disclosure Statement**"), pursuant to section 1125 of Title 11 of the United States Code (the "**Bankruptcy Code**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 1001 Louisiana Street, Houston, TX 77002.

**PLEASE TAKE FURTHER NOTICE THAT:**

1.      A hearing (the "**Disclosure Statement Hearing**") will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on January 6, 2020 at 2:00 p.m. (Prevailing Central Time), or as soon thereafter as counsel can be heard, to consider entry of an order determining, among other things, that the Proposed Disclosure Statement contains "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and approving the Proposed Disclosure Statement.[2]

2.      Any party in interest wishing to obtain a copy of the Proposed Disclosure Statement and the Plan should contact Prime Clerk LLC by email at EPEnergyinfo@primeclerk.com, or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada).  Interested parties may also review the Proposed Disclosure Statement and the Plan free of charge at https://cases.primeclerk.com/EPEnergy/Home-Index.

3.      Objections, if any, to approval of the Proposed Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by such party against the Debtors' estates or property; (iv) provide the basis for objection and specific grounds thereof; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, so as to be actually received by December 19, 2019 at 4:00 p.m. (Prevailing Central Time).

4.      **IF AN OBJECTION TO THE PROPOSED DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY WILL BE BARRED FROM OBJECTING TO THE PROPOSED DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND WILL NOT BE HEARD AT THE DISCLOSURE STATEMENT HEARING.**

5.      Upon approval of the Proposed Disclosure Statement by the Bankruptcy Court (as approved, the "**Disclosure Statement**"), any party in interest that is entitled to vote on the Plan, will receive a copy of the Disclosure Statement, the Plan, one or more Ballots, and various documents related thereto, unless otherwise ordered by the Bankruptcy Court.

6.      The Disclosure Statement Hearing may be adjourned from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Disclosure Statement Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Proposed Disclosure Statement.

Dated: [●], 2019
      Houston, Texas

_____

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Ronit Berkovich (admitted *pro hac vice*)
Scott R. Bowling (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Matt.Barr@weil.com
       Ronit.Berkovich@weil.com
       Scott.Bowling@weil.com
       DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*