## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No. 19-35654 (MI)** |
| **EP ENERGY CORPORATION,** *et. al.,* | § | |
| | § | **Chapter 11** |
| **Debtors.** | § | |
| | § | **Jointly administered** |

### UNITED STATES' OBJECTION TO DISCLOSURE STATEMENT FOR AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF <u>EP ENERGY CORPORATION AND ITS AFFILIATED DEBTORS</u>

(Relates to ECF Nos. 435, 537)

The United States, on behalf of the United States Department of the Interior ("<u>Interior</u>"), hereby files this objection and reservation of rights (the "<u>Objection</u>") with respect to the adequacy of the *Disclosure Statement for Amended Joint Chapter 11 Plan of Reorganization of EP Energy Corporation and its Affiliated Debtors*, dated December 12, 2019 (ECF No. 537) (the "<u>Amended Disclosure Statement</u>"), which describes the separately filed *Amended Joint Chapter 11 Plan of Reorganization of EP Energy Corporation and its Affiliated Debtors*, dated December 12, 2019 (ECF No. 536) (the "<u>Amended Plan</u>")[1] pursuant to 11 U.S.C. § 1125; and in support of its Objection, respectfully states as follows

### PRELIMINARY STATEMENT

1.      The Disclosure Statement fails to provide adequate information as required by sections 1125(a)(1) and 1125(b) of the Bankruptcy Code because the Disclosure Statement: (i) fails to indicate that any and all assignments and/or transfers of federal oil and gas and Indian leases and grants of rights of way (collectively, the "<u>Federal Leases</u>") are subject to the United

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings attributed to them in the Amended Plan.

1

States' consent pursuant to 11 U.S.C. § 365(c) and applicable federal laws and regulations; and (ii) omits any explanation of the above-captioned debtors' (collectively, the "Debtors"), and any assignee's, *continuing* liability for any and all decommissioning, reclamation and/or plugging and abandonment obligations (collectively, the "P&A Obligations") that have accrued under their Federal Leases and applicable laws, including the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA"), the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 *et seq.* ("MLA"), the Mineral Leasing Act for Acquired Lands, 30 U.S.C. §§ 351 *et seq.* ("MLAAL") and the Indian Mineral Leasing Act, 25 U.S.C. §§ 396a-g ("IMLA"), as applicable, and their respective implementing regulations (collectively with OCSLA, MLA, MLAAL, the IMLA and any other applicable statutes and regulations, the "Applicable Laws")

2.      More importantly, the currently proposed Amended Plan cannot be confirmed because it violates 11 U.S.C. § 1129(a)(1) and 1129(a)(3) by: (i) seeking to vest all Assets of the Estates in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and interests, in violation of their continuing P&A Obligations under the Applicable Laws; and (ii) providing that the assumption and assignment of any unexpired Federal Leases will result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or *non-monetary*, which would prohibitively include the Debtors' *continuing* liability to perform P&A Obligations under Applicable Laws.

## BACKGROUND

3.      The Debtors are oil and gas exploration and production companies which hold, or previously held, interests in various Federal Leases covering onshore federal and Indian lands, as well as the Outer Continental Shelf (the "OCS"). The Debtors also serve as the operator for several Leases both on federal and Indian lands onshore and on the OCS.

4.      On October 3, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  The Debtors' chapter 11 cases are being jointly administered.

5.      Based on Interior's records, performance of decommissioning is currently overdue on at least 12 offshore OCS Leases (00251, 00253, 00254, G00978, G01777, G04379, G04586, G04767, G12027, G12427, G13628 and G13925).  BLM and BIA are still assessing the status of reclamation and plugging and abandonment obligations across the Debtors' onshore federal and Indian leases. BIA, however, currently estimates that the Debtors have approximately 150 trust oil and gas leases on the Uintah and Ouray Reservation in northeastern Utah, of which 72 are on allotted land and 78 are on Tribal land, with approximately 370 wells, and associated plugging and abandonment obligations.  These compliance obligations are estimated roughly to cost the Debtors anywhere between $18.5 million to 27.75 million.[2]

6.      On November 18, 2019, the Debtors filed their Disclosure Statement for Joint Chapter 11 Plan of Reorganization of EP Energy Corporation and Its Affiliated Debtors (ECF No. 430) and the Joint Chapter 11 Plan of Reorganization of EP Energy Corporation and Its Affiliated Debtors (ECF No. 429), which was amended by the Amended Disclosure Statement and Amended Plan on December 12, 2019.

7.      The Amended Disclosure Statement and Amended Plan make no mention of the Debtors' P&A Obligations under their Federal Leases nor do they mention that the United States' consent is required for the assignment or transfer of any Federal Leases.

8.      The Amended Plan further provides that all unexpired leases to which any of the Debtors are parties are deemed assumed unless otherwise rejected, but then goes on to state that

---

[2] The estimates of P&A Obligations for Indian leases may be asserted in higher amounts in any proof of claim after further research.

3

the assumption, or assumption and *assignment*, of these unexpired leases shall result in "the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary *or non-monetary*."  *See* Amended Disclosure Statement Art. VI.G.1, Amended Plan, §§ 8.1 and 8.3 (emphasis added).

9.     The Amended Plan also provides that all Assets of the Estates "shall vest in each respective Reorganized Debtor *free and clear* of Claims, Liens, charges, other encumbrances and interests" and that "the distributions, rights and treatment to be made under the Amended Plan, shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever."  *See* Amended Disclosure Statement, Art. VI.I.2 and VI.I.3, Amended Plan. §§ 10.2 and 10.3 (emphasis added).

## OBJECTION

### I.     THE AMENDED DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION REQUIRED BY SECTION 1125

10.     A disclosure statement should not be approved unless it contains "adequate information," that is, information sufficient to enable those with claims against or interests in the Debtors "to make an informed judgment about the plan." 11 U.S.C. §§ 1125(a)(1) and 1125(b). "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court." *In re Little*, 126 B.R. 861, 867 (Bankr. N.D. Miss. 1991).  The determination of what constitutes "adequate information" for purposes of disclosure should be made on a case-by-case basis and "[b]oth the kind and form of information [required] are left essentially to the judicial discretion of the court" based on the circumstances of each case. *Matter of Cajun Elec. Power Co-op, Inc.*, 150 F.3d 503, 518 (5th Cir. 1998).  The Bankruptcy Code, however, "requires that the debtor adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan."

4

*Westland Oil Development Corp. v. MCorp Mgmt.Sols., Inc.*, 157 B.R. 100, 104 (S.D. Tex. 1993).

A. **The Amended Disclosure Statement Fails to Describe the United States' Consent Rights With Respect to Any Assignment and/or Transfer of Federal Leases**

11.    The Amended Disclosure Statement fails to provide adequate information regarding the United States' rights to consent, or withhold consent, to the assignment or transfer of any Federal Leases.

12.    Several federal statutes and regulations prohibit assignment of unexpired Federal Leases without the United States' consent.  First, the MLA and its implementing regulations provide that no federal lease or grant of right-of-way may be assigned, sublet, or otherwise transferred without the consent of the Secretary of the Interior.  *See* 30 U.S.C. §§ 187, 187a; *see also*, 43 C.F.R. Subpart 3106 (regulating transfers and/or assignments of oil and gas lease interests and the conditions required to obtain BLM's consent).  The MLAAL provides that the MLA and its implementing regulations extend to the minerals subject to the MLAAL, including the requirement that the Secretary of the Interior consent to any transfer or assignment.  *See* 30 U.S.C. §§ 352, 359.  The conditions for having an approved Indian lease are set forth in the IMLA and the 1909 Act and their implementing regulations and is subject to the discretion of the Secretary of the Interior.  *See* 25 U.S.C. §§ 396, 396a-396d.  Approved Indian leases, or any interest therein, may only be assigned with the approval of the Secretary of the Interior and, in some cases, the Indian mineral owner.  *See* 25 C.F.R. §§ 211.53, 212.53.

13.    The Prohibition of Transfer of Contracts Act also forbids any transfer of contracts with the United States to third parties without the United States' consent, and provides:

> [t]he party to whom the Federal Government gives a contract . . .
> may not transfer the contract . . . or any interest in the contract . . .

5

> to another party.  A purported transfer in violation of this subsection
> annuls the contract . . . so far as the Federal Government is
> concerned.

41 U.S.C. § 6305(a).

14.     Given that the Debtors' Federal Leases are among their most significant assets and that the Amended Plan indicates that that all unexpired leases are deemed assumed, or assumed and assigned, unless rejected in section 8.1 of the Amended Plan, information pertaining to the requirement of the United States' consent for any contemplated transfer or assignment would be critical to enable creditors to make an informed judgment about the Amended Plan.  Moreover, the Amended Disclosure Statement and Amended Plan must clarify that the Amended Plan does not purport to abrogate Interior's rights to consent or deny consent.

B.     **The Amended Disclosure Statement Fails to Describe the Debtors' and Reorganized Debtors' Obligations to Perform P&A Obligations and to Comply With Other Regulatory Obligations**

15.     The Amended Disclosure Statement wholly fails to mention the Debtors' and Reorganized Debtors' continuing P&A Obligations under the Federal Leases.

16.     OCSLA and the regulations enacted pursuant thereto, notices to lessees, the terms of the offshore Federal Leases and other applicable laws and regulations require the Debtors and the Reorganized Debtors to, among other things: (i) permanently plug all wells; (ii) remove all platforms and other facilities; (iii) decommission all pipelines; and (iv) clear the seafloor of all obstructions created by the lease and pipeline right-of-way operations within one year after lease termination.  43 U.S.C. § 1334; 30 C.F.R. §§ 250.1006, 250.1703, 250.1710 and 250.1725.

17.     Offshore decommissioning obligations accrue when the lessees or the owners or holders of operating rights:

(a)     Drill a well;

(b)     Install a platform, pipeline, or other facility;

> (c)     Create an obstruction to other users of the OCS;
>
> (d)     [Is] or become[s] a lessee or the owner of operating rights of a
>         lease on which there is a well that has not been permanently
>         plugged according to this subpart, a platform, a lease term pipeline,
>         or other facility, or an obstruction;
>
> * * *
>
> (f)     Re-enters a well that was previously plugged according to this
>         subpart.

30 C.F.R. § 250.1702.

18.     In the onshore context, operators must permanently plug all wells with respect to a lease when it stops producing oil or gas. *See* 43 C.F.R. §3162.3-4 (onshore wells) and 43 C.F.R. § 3102.5-1 (in order to qualify as a lessee of an onshore lease, compliance with plugging and abandonment requirements is mandatory); 30 U.S.C. 226(g). In the Indian context, the lessee must securely plug all wells and effectively shut off all water from the oil or gas-bearing strata before abandoning them. *See* 25 C.F.R. §§ 211.47(e), 212.47(e) and 43 C.F.R. §3162.3-4, *supra* (applicable to Indian leases through 25 C.F.R. §§ 211.4 and 212.4). Onshore P&A Obligations arise for the lessee and the operating rights owner arise when these entities commence drilling, installing or using onshore federal facilities, whether it is on federal or Indian land, 43 C.F.R. § 3162.3-1 and 43 C.F.R. § 3162.3-4.

19.     Moreover, the Debtors' liability for offshore P&A Obligations are joint and several in nature. *See* 30 C.F.R. § 250.1701 ("Lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases"). For onshore and Indian leases, P&A Obligations are continuing in nature and cannot be divested by assignment or transfer. *See* 43 C.F.R. §§ 3106.7-2 ("After BLM approves the assignment or transfer, you will *continue* to be responsible for lease obligations that accrued before the approval date, whether or not they were identified at the time of the assignment or transfer),

7

3106.7-6 (if you acquire record title or an operating rights interest in an onshore Federal Lease, "[y]ou assume the responsibility to plug and abandon all wells which are no longer capable of producing, reclaim the lease site, and remedy all environmental problems in existence and that a purchaser exercising reasonable diligence should have known at the time"); *see also*, 25 C.F.R. §§ 211.47(c), (d), (e), (g) and (i) (for tribal leases) and 25 C.F.R. § 212.47 (applicable to allotted leases).

20.     Applicable Laws also require the Debtor to satisfy various monitoring and maintenance obligations (the "Monitoring and Maintenance Obligations") including, without limitation, with respect to offshore OCS leases (i) performing pollution inspections, and making any necessary maintenance or repairs associated therewith, in compliance with 30 C.F.R. §250.300 and 30 C.F.R. §250.301; (ii) monitoring casing pressure for wells in compliance with 30 C.F.R. §§ 250.518, 250.519 and 250.520; (iii) bringing navigational aids for fixed structures and vessels in compliance with 33 C.F.R. §143.15; (iv) maintaining either a boat landing or heliport in service in compliance with 30 C.F.R. 250.132 to properly perform pollution inspections and maintenance or repairs and allow BSEE to safely conduct any inspections; (v) demonstrating oil spill financial responsibility ("OSFR")[3] to BOEM pursuant to The Oil

---

[3] The Oil Pollution Action of 1990, 33 U.S.C. § 2701 *et seq.* and its implementing regulations found in 30 C.F.R. Part 553 (the "OSFR Regulations") require that a responsible party for a covered offshore facility (a "COF") designate an applicant (a "Designated Applicant") to demonstrate oil spill financial responsibility ("OSFR") to BOEM. *See* 30 C.F.R. § 553.11. Demonstration of OSFR ensures that the Designated Applicant for a COF has the financial resources necessary to pay for cleanup and damages that can be caused by oil spill discharges. *See* 30 C.F.R. § 553.5. Continuous OSFR coverage must be maintained for all COFs. *See* 30 C.F.R. § 553.15. The amount of OSFR that must be demonstrated is set forth in the OSFR Regulations and varies based on the worst case oil spill discharge volume that can be expected. *See* 30 C.F.R. § 553.13. A Designated Applicant must demonstrate OSFR and may be a responsible party authorized under the OSFR Regulations and other applicable federal regulations. *See* 30 C.F.R. § 553.11. A Designated Applicant may demonstrate OSFR by various means provided for in the OSFR Regulations, including self-insurance, insurance, indemnification, surety bonds or alternative methods that may be approved by the Director of BOEM. *See* 30 C.F.R. § 553.20.

Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.* and its implementing regulations found in 30 C.F.R. Part 553; and (vi) maintenance of an approved SEMs program pursuant to 30 C.F.R. Part 250, Subpart S. [4]  With respect to onshore leasing, BLM personnel may enter the leased lands to perform inspections to ensure compliance with the applicable provisions of law or regulations, lease terms, orders or directives. 43 C.F.R. §3161.3.  For Indian leases, the Debtor must exercise diligence in drilling and operating wells on the leased lands while minerals production can be secured in paying quantities; protect the lease from drainage, including drilling of offset wells and/or payment of compensatory royalties, if required; carry on operations in a good and workmanlike manner in accordance with approved methods and practices; have due regard for the prevention of waste of oil, gas or other minerals, the entrance of water to other strata, to the destruction or injury of the oil or gas, other mineral deposits, or fresh water aquifers, the preservation and conservation of the property for future productive operations, and the health and safety of workmen and employees; not construct any well pad location within 200 feet of any structures or improvements without the Indian surface owner's written consent; carry out, at the Debtor's expense, all reasonable orders and requirements of the BLM relative to prevention of waste, including compliance with applicable BLM regulations; bury all pipelines crossing tillable lands below plow depth unless other arrangements are made with the Indian surface owner; and pay the Indian surface owner all damages, including damages to crops, buildings, and other improvements of the Indian surface owner occasioned by the lessee's operations as determined by the BIA.  *See* 25 C.F.R. §§ 211.4, 211.47(a)-(d) and (f)-(i), 211.49, 212.4, 212.47 *and* 212.49.

---

[4] The list of Monitoring and Maintenance Obligations set forth in this Objection are not meant to be exhaustive and Interior expressly reserves the right to enforce any and all Monitoring and Maintenance Obligations whether described in this Objection or not.

21.     Finally, Debtors must provide financial assurance to secure its P&A Obligations (the "Financial Assurance Obligations").  *See* 30 C.F.R. Part 556, Subpart 1 and BOEM NTL 2016-01, Notice to Lessees and Operators of Federal Oil and Gas and Sulfur Leases and Holders of Pipeline Right of Way and Right of Use and Easement Grants in the Outer Continental Shelf effective September 12, 2016 (the "2016 NTL"); *see also*, 43 C.F.R. § 3104.1(a) (with respect to federal onshore leases, the lessee, the operating rights owner or the operator must submit a personal or surety bond to BLM prior to the commencement of surface disturbance activities); For Indian leases, the lessee, permittee or prospective lessee acquiring a lease, or any interest therein, by assignment shall furnish with each lease, permit or assignment a surety bond or personal bond in an amount sufficient to ensure compliance with all of the terms and conditions of the lease(s), permit(s), or assignment(s) and the statutes and regulations applicable to the lease, permit, or assignment, and in a form specified by the regulations.  25 C.F.R. §§ 211.24 *and* 212.24.

22.     Failure to meet P&A Obligations, Maintenance and Monitoring Obligations and Financial Assurance Obligations constitutes a violation of the terms of an OCS lease and regulatory requirements and avails Interior the remedies outlined in 43 U.S.C. § 1350, including injunctive relief and civil penalties.  In the onshore context, whenever any person fails or refuses to comply with any regulations under 43 C.F.R. §3100, the terms of any lease or permit, or the requirements of any notice or order, Interior may assess penalties, suspend operations and initiate actions to cancel the lease.  *See* 43 C.F.R. § 3163.  Violation of the terms of an Indian lease or the relevant statutes or regulations may prompt the Secretary to serve a notice of non-compliance on the lessee.  25 C.F.R. § 211.54 *and* 212.54.  If the violation is not corrected, the Secretary

may proceed to impose penalties or cancel the lease.  25 C.F.R. §§ 211.54, 211.55, 212.54, and 212.55.

23.     The offshore P&A Obligations alone, for which the Debtors are jointly and severally liable under expired Federal Leases, are currently estimated to cost the Debtors over $36 million.  Although liability is still being analyzed, P&A Obligations on Indian leases are currently estimated to cost the Debtors between $18.5 million and $27.5 million.  The Debtors' onshore P&A Obligations are still currently being analyzed and estimated.  The failure to mention, let alone describe, these significant P&A Obligations, Maintenance and Monitoring Obligations and Financial Assurance Obligations, fails to provide adequate information to creditors that would enable a creditor to determine whether to vote in favor, or against, the Amended Plan.

## II.     THE AMENDED PLAN, AS CURRENTLY PROPOSED, CANNOT BE CONFIRMED

24.     The Amended Plan, as currently proposed, cannot be confirmed because it violates 11 U.S.C. §§ 1129(a)(1) and 1129(a)(3).  Prior to confirming any plan, this Court has an independent duty to determine whether the standards set forth in 11 U.S.C. § 1129 have been satisfied.  *Matter of Williams,* 850 F.2d 250, 253 (5th Cir. 1988); *In re Lively,* 467 B.R. 884, 888 (Bankr. S.D. Tex. 2012).  It is well-settled that bankruptcy courts in this Circuit and throughout the nation have the authority to refuse approval of disclosure statements when the chapter 11 plans underlying them are unconfirmable.  *See, e.g., In re David Sanders,* Case No. 14-02271, 2015 WL 7568469 at *5 (Bankr. S.D. Miss. Nov. 23, 2015) (finding "it is well-settled that a bankruptcy court may disapprove a disclosure statement, even if it contains adequate information, if there is a defect that renders a proposed plan 'inherently or patently unconfirmable'"); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) (same).

The Court ensures that 11 U.S.C. § 1129 is satisfied "to avoid engaging in a wasteful and fruitless exercise of sending the disclosure statements to creditors and soliciting votes on the proposed plan when the plan is unconfirmable on its face." *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).  Thus, while a determination of whether a debtor's plan satisfies the requirements of 11 U.S.C. § 1129 is generally addressed at confirmation, courts consider whether a plan is confirmable at the disclosure statement stage to conserve judicial resources and the debtor's estate.  *Id.*

25.     Sections 1129(a)(1) and 1129(a)(3) of the Bankruptcy Code provide that "[t]he court shall confirm a plan only if . . .  [t]he plan complies with applicable provisions of this title. . . and . . . [t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. §§ 1129(a)(1) and 1129(a)(3).

**A.     The Vesting Provision is Impermissible With Respect to the Federal Leases**

26.     The Amended Plan currently contemplates that all Assets of the Estates will vest in the respective Reorganized Debtor "free and clear" of all Claims, Liens, charges and other encumbrances and Interests.  *See* Plan § 10.2 (the "Vesting Provision").  The Vesting Provision of the Plan presumably relies on Section 1141(c) of the Bankruptcy Code.

27.     Section 1141(c) of the Bankruptcy Code provides, in relevant part:

> except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders and of general partners in the debtor.

11 U.S.C. § 1141(c).

28.     P&A Obligations, however, are not "Claims" as defined by Section 101(5) of the Bankruptcy Code or "Interests" as defined by Section 1.1 of the Amended Plan that can vest in the Reorganized Debtors free and clear of such obligations, but are instead mandatory

*performance* obligations intended to protect the public health and safety. *See Sheerin v. Davis*, 3 F.3d 113, 116 (5th Cir. 1993) (holding that creditors entitled to an equitable remedy *are not required to select a suboptimal remedy of money damages*) (emphasis added). OCSLA, MLA, MLAAL, the 1909 Act, and the IMLA are laws intended to, among other things, protect the public health and safety. *See* 43 C.F.R. §3162.5 (MLA and MLAAL's implementing regulations seek to ensure operations are conducted "in a manner which protects the mineral resources, and environmental quality."); *see also*, 30 U.S.C. 226(g) (the Secretary of the Interior will "establish such standards as may be necessary to ensure that an adequate bond, surety, or other financial arrangement will be established prior to the commencement of surface-disturbing activities on any lease, to ensure the complete and timely restoration of any lands or surface waters adversely affected by lease operations after the abandonment or cessation of oil and gas operations on the lease."); 25 C.F.R. §§ 211.1(a) and 212.1(a) (IMLA's implementing regulations seek to ensure that Indian mineral owners' resources are developed in a manner that, among other things, "minimizes the adverse environmental impacts . . . resulting from such development."); *see also*, *In re Amer. Coastal Energy, Inc.*, 399 B.R. 805, 813 (Bankr. S.D. Tex. 2009) ("This Court need not make a determination whether the environmental hazard presents an imminent or identifiable harm. It is enough that the Commission's claim arises from a state law designed to protect the public from an identified hazard. It is not the Court's prerogative to replace the legislature's judgment with its own judgment as to what conduct constitutes a sufficient threat to the public."); *see also*, *In re Federal-Mogul Global Inc.*, 684 F.3d 355 (3d Cir. 2012) *and In re Baker & Drake, Inc*, 35 F.3d 1348, 1354 (9th Cir. 1994) (Bankruptcy Code does not "mandate that every company be reorganized at all costs"; if reorganized debtor could not comply with applicable laws, it could not reorganize).

29.     OCSLA, MLA, MLAAL, the 1909 Act and the IMSLA do not give a lessee the option of paying money to Interior in lieu of *performing* its P&A Obligations.  Federal Leases, thus, cannot vest in, the Reorganized Debtors "free and clear" of any joint and several P&A Obligations that have accrued under applicable non-bankruptcy laws and the terms of the Federal Leases.  *See* 30 C.F.R. Part 250, Subpart Q.

**B.      Federal Leases Cannot Be Assumed and Assigned With a Full Release of P&A Obligations and Other Regulatory Obligations**

30.     Likewise, any assumption and assignment, or transfer, of Federal Leases cannot be free and clear free of environmental and other regulatory obligations that are attached to ownership of the Federal Leases and any associated properties.

31.     Section 1123 of the Bankruptcy Code cannot preempt federal laws concerned with protecting the public health and safety or allow the Debtors to sell, transfer and/or assign the Federal Leases pursuant to the Plan in a manner which would violate such laws. *Montgomery County, MD v. Barwood, Inc.*, 422 B.R. 40, 47-49 (D. Md. 2009) (holding that the "notwithstanding" clause of Section 1123 does not preempt otherwise applicable nonbankruptcy laws concerned with protecting the public health, safety and welfare); *see also*, *In re Braniff Airways, Inc.*, 700 F.2d 935, 942-43 (5th Cir. 1983) (finding that transfers of federal licenses and leases are subject to the continuing jurisdiction and approval of the applicable federal agency, including its regulatory authority to approve or deny any assignments and/or transfers).

32.     It is well established that any entity who owns or operates property must comply with all environmental laws and is not entitled to disregard laws that protect the public health and safety and the environment.  *See Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) (holding that anyone in possession of a site, or a trustee seeking to abandon a property, must comply with applicable environmental laws and "may not maintain a nuisance, pollute the waters . . .  or refuse to

14

remove the source of such conditions."); *see also, Matter of CMC Heartland Partners*, 966 F.2d 1143, 1147 (7th Cir. 1992) ("Just as security interests and other liens pass through a bankruptcy unaffected, . . . and stick with the asset on transfer to any new buyer, so a statutory obligation attached to current ownership of the land survives bankruptcy."); *In re Torwico Electronics, Inc.*, 8 F.3d 146, 151 (3d Cir. 1993) (holding that, where the debtor is no longer in possession, obligations to remedy a continuing environmental hazard under applicable law can "run with the waste" even if they don't "run with the land" and such remedial obligations are not dischargeable "claims" where the government does not have the option of accepting payment in lieu of compliance).  Likewise, other regulatory requirements associated with the Federal Leases cannot be stripped in any asset sale.  *See In re Welker*, 163 B.R. 488, 489 (Bankr. N.D. Tex. 1994) (holding that the trustee could sell free and clear of HUD liens, but did not excuse compliance with HUD procedures).

33.    The Amended Plan also impermissibly provides that as all unexpired leases are deemed assumed unless otherwise rejected, and that the assumption, or assumption and assignment, of an unexpired lease "shall result in the full release and satisfaction of any Claims or defaults against any Debtor or defaults by any Debtor, *whether monetary or non-monetary* . . . arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease." (the "Assignment Release").   *See* Amended Plan, § 8.3(b).  To the extent that the Assignment Release seeks to release any joint and several, or continuing, P&A Obligations accrued to the Debtors, it violates section 1129(a)(3) of the Bankruptcy Code.  *See In re Cajun Electric Power Cooperative, Inc.*, 150 F.3d 503, 519 (5th Cir. 1998) (finding that plan must not propose any "independent illegality"); *Matter of Texas Extrusion Corp.,* 844 F.2d 1142, 1160 (5th Cir. 1988)

(reviewing whether the plan was "forbidden by law" under Section 1129(a)(3) because it may violate antitrust laws); *see also* 16 COLLIER ON BANKRUPTCY ¶ 1129.02[3][b][ii] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) (2017) (a plan may comply with title 11, but still violate other laws, including regulations, and thus confirmation would be precluded).

34.    The Reorganized Debtors, as assignees and/or transferees of any Federal Leases to be assigned or transferred to them pursuant to the Amended Plan, or as the post-bankruptcy entity in whom the Federal Leases will vest, must be subject to the same compliance obligations as all other owners or operators of Federal Leases.  The Bankruptcy Code does not place the Reorganized Debtors in a privileged position, freeing them from compliance with obligations applicable to all other owners and operators of Federal Leases.  If the Reorganized Debtors could be exempted from public health and safety obligations after any bankruptcy assignments, transfers or vesting contemplated in the fine print of a locked up chapter 11 plan, the public would be at risk.

## RESERVATION OF RIGHTS

35.    The United States intends to engage with the Debtors to determine whether the United States' Objection can be resolved prior to the disclosure statement hearing.

36.    The United States also expressly reserves its rights to raise any and all objections to confirmation at the confirmation hearing and to supplement this objection, if necessary, after discussions with the Debtors have concluded.

**WHEREFORE**, the United States respectfully requests that this Court enter an Order: (i) denying the Disclosure Statement because it cannot be confirmed on its face; (ii) requiring the Debtor to include the information set forth in Section I of this Objection to comply with its obligations to provide "adequate information" to its creditors and other stakeholders pursuant to

11 U.S.C. § 1125; and (iii) granting such other and further relief as this Court seems just and

proper.

Dated: Washington, DC
        December 19, 2019

                                                    Respectfully submitted,


                                                    JOSEPH H. HUNT
                                                    Assistant Attorney General


                                                    RYAN K. PATRICK
                                                    United States Attorney
                                                    Southern District of Texas


                                                    /s/ *Eunice R. Hudson*
                                                    RUTH A. HARVEY
                                                    MARGARET M. NEWELL
                                                    EUNICE R. HUDSON
                                                    Civil Division
                                                    U. S. Department of Justice
                                                    P. O. Box 875
                                                    Ben Franklin Station
                                                    Washington, D.C.  20044-0875
                                                    (202) 514-6748 (telephone)
                                                    (202) 514-9163 (facsimile)


                                                    *ATTORNEYS FOR THE UNITED STATES*


                                **CERTIFICATE OF SERVICE**

        I hereby certify that on November 19, 2019 a true and correct copy of the foregoing
Limited Objection was duly served upon all parties requesting service via the Court's electronic
case filing system (ECF).


                                         /s/ *Eunice R. Hudson*
                                         EUNICE R. HUDSON