IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| EP ENERGY CORPORATION, *et al.*, | § | Case No. 19-35654 (MI) |
|  | § |  |
|  | § | (Jointly Administered) |
| Debtors.[1] | § |  |
|  | § |  |

EMERGENCY MOTION OF DEBTORS FOR
ENTRY OF AN ORDER (I) SCHEDULING COMBINED
HEARING ON (A) ADEQUACY OF DISCLOSURE
STATEMENT AND (B) CONFIRMATION OF PLAN;
(II) CONDITIONALLY APPROVING DISCLOSURE STATEMENT;
(III) APPROVING SOLICITATION PROCEDURES AND
FORM AND MANNER OF NOTICE OF, COMBINED HEARING,
AND OBJECTION DEADLINE; (IV) FIXING DEADLINE TO OBJECT
TO DISCLOSURE STATEMENT AND PLAN; (V) APPROVING NOTICE
AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (VI) GRANTING RELATED RELIEF

EMERGENCY RELIEF HAS BEEN REQUESTED.  A VIDEO/TELEPHONIC HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 20, 2020 AT 1:30 PM (PREVAILING CENTRAL TIME).  PARTIES WISHING TO PARTICIPATE IN THE HEARING MUST DIAL IN USING THE COURT'S TELECONFERENCING SYSTEM AT 1-832-917-1510 AND ENTERING CONFERENCE CODE 954554.  PARTIES WHO WISH TO PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN INTERNET CONNECTION, USING THE WEBSITE WWW.JOIN.ME, ELECTING "JOIN A MEETING" AND ENTERING MEETING CODE "JUDGEISGUR".

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN JULY 20, 2020.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  EP Energy Corporation (2728), EPE Acquisition, LLC (5855), EP Energy LLC (1021), Everest Acquisition Finance Inc. (0996), EP Energy Global LLC (7534), EP Energy Management, L.L.C. (5013), EP Energy Resale Company, L.L.C. (9561), and EP Energy E&P Company, L.P. (7092).  The Debtors' primary mailing address is 601 Travis St., Suite 1400, Houston, TX 77002.

EP Energy Corporation and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**"), respectfully represent as follows in support of this motion (this "**Motion**"):

## Relief Requested

1.      Pursuant to sections 1125, 1126, 1128, 1145, and 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3003, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 3016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of February 24, 2020, the "**Complex Chapter 11 Procedures**"), the Debtors request approval of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"):

    i.    scheduling a combined hearing (the "**Combined Hearing**") to (a) approve the *Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors* (Docket No. 1326) (the "**Disclosure Statement**") and (b) consider confirmation of the *Fifth Amended Joint Chapter 11 Plan of EP Energy Corporation and Its Affiliated Debtors* (Docket No. 1326, **Exhibit A**) (the "**Amended Plan**");[2]

    ii.    conditionally approving the Disclosure Statement;

    iii.    establishing July 15, 2020 as the record date for the purpose of determining which holders of Claims and/or Interests are entitled to vote on the Amended Plan and/or receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

    iv.    approving the Solicitation Procedures (as defined below) with respect to the Amended Plan, including the form of Ballots and Notice of Non-Voting Status (each as defined below) and tabulation procedures;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Plan.

     v.      establishing the deadline (the "**Objection Deadline**") to object to the adequacy of the Disclosure Statement and confirmation of the Amended Plan;

     vi.      approving the form and manner of notice of the Combined Hearing and the Objection Deadline;

     vii.      approving notice and objection procedures for the assumption of executory contracts and unexpired leases; and

     viii.      granting related relief.

     2.      For the convenience of the Court and parties in interest, the below chart provides a summary of the key dates sought pursuant to the Proposed Order:

| Event | Date/Deadline |
|---|---|
| Conditional Disclosure Statement Hearing | Monday, July 20, 2020 at 1:30 PM (prevailing central time) |
| Voting Record Date | Wednesday, July 15, 2020 |
| Solicitation Mailing | To commence within two (2) business days of entry of the Disclosure Statement Order – Solicitation Mailing expected to occur Wednesday, July 22, 2020 |
| Mailing Deadline for Combined Notice | Wednesday, July 22, 2020 |
| Plan Supplement Filing Deadline | Wednesday, August 12, 2020 |
| Rule 3018 Deadline | Monday, August 10, 2020 |
| Plan Voting Deadline | Wednesday, August 19, 2020 |
| Plan/Disclosure Statement Objection Deadline | Wednesday, August 19, 2020 |
| Plan/Disclosure Statement Reply Deadline | Monday, August 24, 2020 |
| Combined Hearing | Thursday, August 27, 2020 |

     3.      For further reference of the Court and parties in interest, the Debtors provide below a list of the various exhibits and documents cited throughout this Motion:

| Document | Exhibit |
|---|---|
| Proposed Order | Exhibit A to the Motion |
| Disclosure Statement | Filed Contemporaneously Herewith |
| Amended Plan | Exhibit A to the Disclosure Statement |
| Combined Hearing Notice | Exhibit 1 to the Proposed Order |
| Notice of Non-Voting Status | Exhibit 2 to the Proposed Order |
| Form of RBL Claims (Class 3) Ballot | Exhibit 3  to the Proposed Order |
| Form of 1.125 Notes Claims (Class 4) Master Ballot | Exhibit 4 to the Proposed Order |
| Form of 1.125 Notes Claims (Class 4) Beneficial Holder Ballot | Exhibit 5 to the Proposed Order |
| Form of Parent Unsecured Claims (Class 5B) Ballot | Exhibit 6 to the Proposed Order |
| Form of Convenience Class (Class 6) Ballot | Exhibit 7 to the Proposed Order |

| Document | Exhibit |
|----------|---------|
| Form of Existing Parent Equity Interests (Class 9) Master Ballot | Exhibit 8 to the Proposed Order |
| Form of Existing Parent Equity Interests (Class 9) Beneficial Holder Ballot | Exhibit 9 to the Proposed Order |
| Form of Existing Parent Equity Interests (Class 9) Registered Holder Ballot | Exhibit 10 to the Proposed Order |

## Jurisdiction

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.     On October 3, 2019 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

7.     On October 21, 2019, the United States Trustee for the Southern District of Texas (Houston Division) (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases (the "**Creditors' Committee**").  *See Notice of Appointment of Official Committee of Unsecured Creditors* (Docket No. 200).  No trustee, examiner, or statutory committee—other than the Creditors' Committee—has been appointed in these chapter 11 cases.

8.     The Debtors are an oil and natural gas exploration and production company headquartered in Houston, Texas.  The Company operates through a diverse base of producing assets and is focused on the development of drilling inventory located in three areas:  the Eagle Ford shale in South Texas, the Permian basin in West Texas, and Northeastern Utah.

9.     Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of David Rush in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (Docket No. 16).

### Summary of Amended Plan

10.     The Amended Plan is the result of extensive good faith negotiations, overseen by the independent special committee of the Company's board of directors, among the Debtors, the parties to the Prepetition RBL Credit Agreement (the "**Prepetition RBL Agent**" and the "**Prepetition RBL Lenders**"), and the advisors to the ad hoc group comprising certain holders of, among other claims, 1.125L Notes Claims (the "**Ad Hoc 1.125L Noteholder Group**").  The holders of approximately 98% of the Claims under the Debtors' Prepetition RBL Facility have agreed to support the exit term sheet attached to the Amended Commitment Letter (as defined in the Disclosure Statement) and the Debtors are hopeful that 100% of the holders of such claims (and 100% of the holders of DIP Claims) will execute the Amended Commitment Letter and agree to provide similar support.[3]  Moreover, based on negotiations with the advisors to the Ad Hoc 1.125L Noteholder Group, the Debtors expect that the holders of Claims in the Ad Hoc 1.125L Noteholder Group will support the Amended Plan.

11.     The Amended Plan provides for a comprehensive restructuring of the Company's balance sheet.  The transactions contemplated in the Amended Plan will strengthen

---

[3] To the extent any holder of RBL Claims does not execute the Amended Commitment Letter by the Voting Deadline, then (1) with respect to its Allowed RBL Claim such non-consenting RBL Lender will receive first lien, second-out term loans under the Exit Credit Agreement on a dollar-for-dollar basis under the Plan; and (2) with respect to its Allowed DIP Claim, such non-consenting RBL Lender will receive such treatment as may be agreed or as may otherwise comply with the Bankruptcy Code.

the Company by substantially reducing its debt and preserve in excess of 450 jobs.  Specifically,

the proposed restructuring contemplates, among other things:

- a reduction of current debt on the Debtors' balance sheet by approximately $4.4 billion; and

- access to an approximately $629 million exit credit facility (the "**Exit Facility**"), which Prepetition RBL Lenders holding 98% of the Claims under the Debtors' Prepetition RBL Facility have committed to provide support for, and which the Debtors' Prepetition RBL Facility and postpetition DIP Facility will "roll" into on the effective date of the Amended Plan ("**Effective Date**").

12.     The Debtors believe that upon consummation of the Amended Plan and the

transactions contemplated thereby, the post-emergence enterprise will have the ability to withstand

the challenges and volatility of the oil and gas industry and succeed as a leading operator in their

three main regions: Northeastern Utah, the Eagle Ford shale in South Texas, and the Permian basin

in West Texas.

## Relief Requested Should Be Granted

**A.     Conditional Approval of the Disclosure Statement Is Warranted**

13.     The Debtors seek limited relief from the requirements of section 1125(b) of

the  Bankruptcy  Code[4]  solely  for  the  purposes  of  permitting  the  Debtors  to

solicit acceptances of the Amended Plan from holders of Claims in Class 3 (RBL Claims), Class

4 (1.125L Notes Claims), Class 5B (Parent Unsecured Claims), Class 6 (Convenience Claims) and

Class 9 (Existing Parent Equity Interests); with final approval of the Disclosure Statement to be

determined at the Combined Hearing.  Such relief is consistent with Rules 34, 35, and 36 of the

---

[4] Section 1125(b) of the Bankruptcy Code provides, in relevant part, "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."

Complex Chapter 11 Procedures, which provides that the Court may consider motions seeking conditional approval of a disclosure statement.

14.     Conditional approval of the Disclosure Statement is warranted and appropriate in these cases because it will enable the Debtors to commence solicitation, eliminate the need for the scheduling of a separate disclosure statement hearing, shorten the length of these cases, facilitate the expeditious confirmation and consummation of the Amended Plan, and materially reduce administrative expenses.

15.     Accordingly, the Court should conditionally approve the Disclosure Statement and authorize the Debtors to use the Disclosure Statement for solicitation of acceptances and rejections of the Amended Plan from holders of claims in Class 3 (RBL Claims), Class 4 (1.125L Notes Claims), Class 5B (Parent Unsecured Claims), Class 6 (Convenience Claims), and Class 9 (Existing Parent Equity Interests).

**B.      A Combined Hearing Is Appropriate in These Cases**

16.     The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Amended Plan.  Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."

17.     Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of a chapter 11 plan.  Notably, Rule 34 of the Complex Chapter 11 Procedures provides that "[c]ontemporaneously with the filing of a disclosure statement and proposed plan, a plan

proponent may file a motion requesting . . . the scheduling of a joint hearing to consider final approval of the adequacy of the disclosure statement and confirmation of the proposed plan." This Court routinely enters orders conditionally approving the disclosure statement and scheduling a Combined Hearing. *See In re Unit Corp.,* Case No. 20-32740 (DRJ) (Bankr. S.D. Tex. June 19, 2020) (Docket No. 175) (conditionally approving disclosure statement and combining the hearing on plan and disclosure statement); *In re Alta Mesa Res., Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex. Apr. 27, 2020) (Docket No. 1623) (same); *In re Halcón Res. Corp.*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex. Aug. 9, 2019) (Docket No. 84) (same).

18.     The Debtors submit that holding a Combined Hearing is appropriate and respectfully request that the Court schedule the Combined Hearing on August 27, 2020 at 9:30 a.m. (Prevailing Central Time), or as soon thereafter as is practicable in light of the Court's calendar. The Debtors have already completed the most difficult tasks required to effectuate their restructuring—the Debtors (i) developed a new business plan, (ii) explored strategic alternatives with their advisors, (iii) engaged in discussions with several of their major stakeholders, including the Prepetition RBL Lenders and the Ad Hoc 1.125L Noteholder Group regarding potential paths forward, and (iv) took steps to reduce their costs, including rejecting several burdensome executory contracts and implementing a reduction in their workforce. The only remaining task left is to consummate the Amended Plan and the transactions contemplated thereby.

19.     A Combined Hearing in these chapter 11 cases will promote judicial economy and save administrative expenses by allowing the Debtors to quickly confirm the Amended Plan and emerge as an enterprise with the ability to withstand the challenges and volatility of the oil and gas industry and succeed as a leading operator in their three main regions: Northeastern Utah, the Eagle Ford shale in South Texas, and the Permian basin in West Texas.

20. The Debtors have negotiated the Amended Plan and most of the related documents with the advisors to the Prepetition RBL Lenders and advisors to the Ad Hoc 1.125L Noteholder Group —the estates' key constituents—including exchanging multiple drafts of the Amended Plan, Disclosure Statement, and this Motion, incorporating changes, and aligning on timing for confirmation. The majority of the Prepetition RBL Lenders have committed to support the Exit Facility, and the majority of the Ad Hoc 1.125L Noteholder Group has approved the form and substance of the Disclosure Statement and Amended Plan and have consented to the Debtors seeking conditional approval of the Disclosure Statement now, with final approval to follow at the Combined Hearing.

21. The proposed schedule set forth herein affords holders of Claims against and Interests in the Debtors and all other parties in interest ample notice of the Amended Plan and the Combined Hearing. With the Amended Plan having been filed on July 13, 2020, by the time of the Combined Hearing, parties will have had approximately 45 days' notice of the Amended Plan and Disclosure Statement to evaluate their rights and approximately 45 days' notice of the proposed Combined Hearing. Given the facts and circumstances of these cases, no party in interest will be prejudiced by the requested relief.

## C. Objection Procedures

22. Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement, and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to confirmation of a plan. Bankruptcy Rules 2002(b), 2002(d), and 3017(a) generally provide that parties in interest must receive not less than 28 days' notice by mail of the time fixed for filing objections to approval of a disclosure statement and confirmation of a plan. However, Bankruptcy Rule 9006(c)(1) provides that the Court for cause

shown may in its discretion order the time periods reduced, unless Bankruptcy Rule 9006(c)(2) (which is not applicable here) prohibits such reduction.  Further, Bankruptcy Rule 9007 generally provides that the Court may designate the "time within which, the entities to whom, and the form and manner in which" notices shall be given, and this Court has previously indicated a willingness to shorten confirmation-related notice periods.

23.     The Debtors request that the Court set August 19, 2020 at 4:00 p.m. (Prevailing Central Time), as the deadline to file objections to the adequacy of the Disclosure Statement or confirmation of the Amended Plan (the "**Objection Deadline**").  The proposed Objection Deadline will provide holders of Claims and Interests with sufficient notice of the deadline for filing objections to the Disclosure Statement and Amended Plan, while still affording the Debtors, and other parties in interest, time to file a responsive brief and, if possible, consensually resolve any objections received.

24.     The Debtors further request that they be authorized to file and serve an omnibus reply (the "**Omnibus Reply**") to any such objections and that the Court set August 24, 2020 as the deadline for filing and service of replies or an Omnibus Reply to any objections to confirmation of the Amended Plan.

25.     The Debtors respectfully request that the Court approve the procedures for filing objections to the Amended Plan and Disclosure Schedule and replies thereto and find that such procedures comply with Bankruptcy Rules 2002, 3017, and 3020.

**D.     Form and Manner of Notice of the Combined Hearing and Objection Deadline**

26.     As soon as possible after the Court's entry of the Proposed Order, the Debtors propose to serve a notice (the "**Combined Notice**"), substantially in the form annexed as Exhibit 1 to the Proposed Order, on the Debtors' creditor matrix and all interest holders of record,

excluding the Debtors and their affiliates.  The Combined Notice sets forth (i) the date, time, and place of the Combined Hearing, (ii) instructions for obtaining copies of the Disclosure Statement and the Amended Plan, and (iii) the Objection Deadline and the procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Amended Plan.

27.     In addition, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Combined Hearing, no later than 28 days prior to the Combined Hearing, or as soon thereafter as practicable, once in the *Houston Chronicle* and the national edition of *USA Today*.

28.     As an additional form of notice to parties in interest in these cases, the Debtors intend to post to the Voting Agent's website various chapter 11 documents, including (i) the Amended Plan, (ii) the Disclosure Statement, (iii) this Motion and any orders entered in connection with this Motion, and (iv) the Combined Notice.

29.     The proposed service of the Combined Notice, together with the proposed publication notice and website posting, will provide sufficient notice to all parties in interest in the Debtors' chapter 11 cases of the date, time, and place of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement or confirmation of the Amended Plan.

## E.     Proposed Disclosure Statement Should Be Approved

30.     At the Combined Hearing, the Debtors will seek approval of the Disclosure Statement.  Under section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests with "adequate information" regarding a debtor's proposed plan, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

31.     Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan. *See, e.g.*, *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015) ("The proponent of a reorganization plan . . . must provide a court-approved disclosure statement that contains 'adequate information' about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan."); *In re Tex. Rangers Baseball Partners,* 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan.").  The essential requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)).

32.     Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation."  11 U.S.C. § 1125(d).  Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement.  *See, e.g.*, *Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988) (noting that the

determination of what is adequate information is "largely within the discretion of the bankruptcy court"); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement." (citing *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995))).  Congress granted bankruptcy courts wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various facts and circumstances that accompany chapter 11 cases.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977); *see also In re Cajun Elec. Power Coop. Inc.*, 150 F.3d 503, 518 (5th Cir. 1998) ("[W]ith respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court.'" (quoting S. Rep. No. 95-989, at 121 (1978)).  Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See In re Texas Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.").

33.     Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the Court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.  There will be a balancing of interests in each case.

H.R. Rep. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365.  *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir.

1988) (opining that what constitutes adequate information is "subjective," "made on a case-by-case basis," and "largely in the discretion of the bankruptcy court").

34.     The Disclosure Statement is extensive and comprehensive.  It includes descriptions of (i) the Amended Plan, (ii) the Debtors' business operations, (iii) key events leading to the commencement of these chapter 11 cases, (iv) key events during these chapter 11 cases, (v) the Debtors' significant prepetition indebtedness, (vi) the proposed distributions pursuant to the Amended Plan, (vii) a liquidation analysis setting forth the estimated return that holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation, (viii) risk factors associated with the Amended Plan, (ix) a valuation; and (x) federal tax law consequences of the Amended Plan.

35.     At the Combined Hearing, the Debtors will demonstrate, as summarized above, that the Disclosure Statement provides "adequate information" under Bankruptcy Code section 1125(a) and, therefore, should be approved by the Court.

**F.     The Proposed Disclosure Statement Provides Adequate Notice of Release, Exculpation, and Injunction Provisions in the Amended Plan**

36.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction."  Fed. R. Bankr. P. 3016(c).

37.     The Amended Plan includes injunctions, releases, and exculpations in sections 10.5, 10.6, 10.7, 10.8, and 10.9.  The Disclosure Statement in Exhibit G describes in detail the releases provided under the Amended Plan, the entities to be providing such releases, the entities to be released, and the Claims and causes of action to be released.  Additionally, Exhibit G

sets forth the terms of the proposed exculpation provision under the Amended Plan, and the proposed injunction related to the release and exculpation provisions in the Amended Plan. Each of the foregoing sections is set forth in the Disclosure Statement in conspicuous, bold print. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**G.    Approval of Solicitation Procedures, Forms of Solicitation Materials, and Procedures for Vote Tabulation Is Appropriate**

38.    The Debtors also request that the Court approve the solicitation, balloting, tabulation, and related activities to be undertaken in connection with the Amended Plan (collectively, the "**Solicitation Procedures**"). As set forth below, the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Rules, Bankruptcy Code, and Complex Chapter 11 Procedures, and should be approved.

<u>**The Solicitation Procedures**</u>

39.    In connection with the Disclosure Statement and Amended Plan, the Debtors propose to implement the solicitation and balloting procedures described below. The Debtors have retained Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**") as their claims, noticing, and solicitation agent through the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 114).

**A.    Parties Entitled to Vote**

40.    Pursuant to the Amended Plan, the Debtors have created twelve (12) classes of Claims and Interests. Of those classes, the Debtors submit that the following classes are Impaired but entitled to receive distributions under the Amended Plan and, thus, may vote to accept or reject the Amended Plan, subject to certain exceptions discussed below (collectively, the "**Voting Classes**"):

| Class | Description |
|-------|-------------|
| Class 3 | RBL Claims |
| Class 4 | 1.125L Notes Claims |
| Class 5B | Parent Unsecured Claims |
| Class 6 | Convenience Claims |
| Class 9 | Existing Parent Equity Interests |

41.     A creditor or interest holder that holds a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)     as of the Voting Record Date, the outstanding amount of such creditor's Claim is zero ($0.00);

(b)     as of the Voting Record Date, such creditor's Claim or interest holder's Interest has been disallowed, expunged, disqualified or suspended;

(c)     such creditor has not timely filed a proof of Claim in accordance with the *Order Setting Bar Date for Filing Proofs of Claims* (Docket No. 98) (the "**Bar Date Order**")[5] as of the Voting Record Date and the Debtors have not scheduled such creditor's claim or otherwise scheduled such creditor's claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)     such creditor's Claim or interest holder's Interest is subject to an objection or request for estimation filed on or before July 25, 2020, subject to the procedures set forth below.

42.     Section 1126(f) of the Bankruptcy Code provides that, for purposes of soliciting votes on confirmation of a plan of reorganization, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).  The Amended Plan leaves

---

[5] Pursuant to the Bar Date Order, the deadline for creditors or other parties in interest to file a proof of Claim was December 16, 2019.  The deadline for governmental units to file a proof of claim was March 31, 2020.

unimpaired certain Claims and Interests.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Claims and Interests are conclusively presumed to accept the Amended Plan and, accordingly, are not entitled to vote on the Amended Plan (collectively, the "**Unimpaired Classes**").

43.     Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."  11 U.S.C. § 1126(g).  Holders of Subordinated Claims, Unsecured Claims, and Other Equity Interests will receive no recovery under the Amended Plan. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, such holders are deemed to reject the Amended Plan and are not entitled to vote on the Amended Plan (collectively, the "**Deemed Rejecting Classes**" and, together with the Unimpaired Classes, the "**Non-Voting Classes**").

44.     Holders of Claims or Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 5A | Unsecured Claims | Impaired | Deemed to Reject |
| Class 7 | Intercompany Claims | Unimpaired | Presumed to Accept |
| Class 8 | Subordinated Claims | Impaired | Deemed to Reject |
| Class 10 | Other Equity Interests | Impaired | Deemed to Reject |
| Class 11 | Intercompany Interests | Unimpaired | Presumed to Accept |

**B.**     **The Voting Record Date**

45.     Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, and except to the extent the Court orders otherwise, the debtor must mail the relevant solicitation materials to all creditors and equity security holders, including "holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).

46.     To identify and establish the universe of creditors entitled to vote on the Amended Plan, the Debtors request that the Court set the Voting Record Date as July 15, 2020 as the date for determining (i) which creditors and equity security holders in Class 3 (RBL Claims), Class 4 (1.125L Notes Claims), Class 5B (Parent Unsecured Claims), Class 6 (Convenience Claims), and Class 9 (Existing Parent Equity Interests) are entitled to vote on the Amended Plan and (ii) which creditors and equity security holders in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status (as defined below).

47.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (defined below) and, if the holder of such Claim is otherwise entitled to vote with respect to the Amended Plan, cast a Ballot (defined below) on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Amended Plan made by the holder of such Claim as of the Voting Record Date.

48.     The Debtors believe that the Voting Record Date is appropriate, as it facilitates the determination of which creditors and equity security holders are entitled to vote on the Amended Plan or, in the case of non-voting creditors and equity security holders in the Non-Voting Classes, to receive the Notice of Non-Voting Status.  Accordingly, the Debtors request the Court approve such date.

## C.     Temporary Allowance / Disallowance of Claims

49.     Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim or interest may accept or reject a chapter 11 plan.  A class of claims accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that voted.  11 U.S.C. § 1126(c).  A class of interests accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount of the allowed interests of such class held by creditors that voted. 11 U.S.C. § 1126(c).  Bankruptcy Rule 3018(a) provides that the Court may temporarily allow a claim in an amount that the Court deems appropriate for the purpose of such claim holder accepting or rejecting a plan.

## D.     Establishing Claims or Interest Amounts for Voting Purposes

50.     **Class 3 RBL Claims**.  The amount of each RBL Claim for voting purposes only will be established by reference to the list of participant lenders to the Prepetition RBL Facility and those participant lenders' corresponding Prepetition RBL Facility amounts as of the Voting Record Date as reflected on the loan register maintained by the Prepetition RBL Agent, which shall be provided by the Prepetition RBL Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

51. **Class 4 1.125 Notes Claims**. The amount of each 1.125 Notes Claim, for voting purposes only will be established by reference to the books and records of the applicable Nominee (defined below) as of the Voting Record Date as evidenced by the securities position report from the Depository Trust Company ("**DTC**"), which shall be provided to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

52. **Class 5B Parent Unsecured Claims and Class 6 Convenience Claims**. The amount of each Parent Unsecured Claim and Convenience Claim, for voting purposes, only shall be established pursuant to the following hierarchy:

(a) If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b) If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c) If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim  timely filed in accordance with the Bar Date Order as of the Voting Record Date, provided that if the amount set forth on a timely-submitted proof of claim is wholly liquidated, contingent, and/or disputed, then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00; and

(d) If neither (a), (b), nor (c) apply, then in the liquidated, non-contingent, and  undisputed amount set forth on the Debtors' Schedules, provided that if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

53. Any creditor holding a General Unsecured Claim that would otherwise be counted for voting purposes as being in an amount greater than $100,000 that elects to be treated as a Convenience Claim in Class 6 shall have its Claim reduced to $100,000 for voting purposes (if not contingent, unliquidated, or disputed) and capped at $100,000 for all other purposes.

Holders of General Unsecured Claims will receive a Convenience Claim Ballot that includes an election (the "**Convenience Claim Election**") by which the Holder may elect to have its Allowed General Unsecured Claim irrevocably reduced to the amount of $100,000, and therefore, be treated as a Convenience Claim in accordance with Section 4.7 of the Plan.[6]

54.     **Class 9 Existing Parent Equity Interests**.  The amount of each Existing Parent Equity Interests for voting purposes only will be established by reference to (a) the applicable books and records of the Debtors' transfer agent and (b) the books and records of the applicable Nominee (defined below) as of the Voting Record as evidenced by the securities position report from DTC, which shall be provided by the transfer agent and DTC to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

55.     The Debtors further request that, if the Debtors have filed an objection to, or a request for estimation of, a Claim or Interest on or before **July 25, 2020**, such Claim is temporarily disallowed for voting purposes, except as ordered by the Court before the Voting Deadline (as defined below); *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim or Interest, then such Claim or Interest is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by this Court prior to or concurrent with entry of an order confirming the Amended Plan.

56.     The Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process.  If any creditor seeks to challenge the allowance of its claim for

---

[6] The Convenience Claim Ballot includes an instruction that provides that if a Holder of a General Unsecured Claim in excess of $100,000 so wishes, the Holder may elect to have their General Unsecured Claim irrevocably reduced to the amount of $100,000 and therefore, to be treated as a Convenience Claim in accordance with Section 4.7 of the Plan. If a Holder of a General Unsecured Claim in an amount in excess of the Convenience Claim Amount does not wish to make the Convenience Claim Election, the Holder should not complete the Convenience Claim Ballot.

voting purposes, the Debtors propose that the creditor file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes in a different amount.  The Debtors request that the Court, pursuant to section 105(a) of the Bankruptcy Code, (a) fix **August 10, 2020 at 4:00 p.m. (Prevailing Central Time)** (the "**Rule 3018(a) Motion Deadline**") as the deadline for the filing and serving of motions pursuant to Bankruptcy Rule 3018(a) requesting temporary allowance of a movant's Claim for purposes of voting (collectively, the "**Rule 3018(a) Motions**") and (b) require that such Rule 3018(a) Motions be filed with the Court and served on undersigned counsel and the other Notice Parties (as defined below) so as to be **actually received** not later than the Rule 3018(a) Motion Deadline.  The Debtors propose that the Court consider only those Rule 3018(a) Motions that have been timely filed and served in accordance with the provisions of this paragraph.  The Debtors further propose that for purposes of filing the final voting results, the Solicitation Agent tabulate any votes on account of Claims subject to a Rule 3018(a) Motion according to the hierarchy set forth in paragraph 52 above unless the Court enter an order on or before the Voting Deadline granting the 3018(a) Motion.  The Debtors further propose that upon entry of an order of the Court granting a Rule 3018(a) Motion, such creditor's Ballot (as defined below) be counted in accordance with the above designated guidelines, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Amended Plan.

**E.      Approval of Solicitation Packages and Procedures for Distribution Thereof**

57.      Bankruptcy Rule 3017(d) lists the materials that must be provided to holders of claims or interests for the purpose of soliciting votes on a chapter 11 plan and providing

adequate notice of the hearing to consider confirmation thereof.  Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement, — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:
>
> (a)    the plan or a court-approved summary of the plan;
>
> (b)    the disclosure statement approved by the court;
>
> (c)    notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (d)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

58.    In accordance with the foregoing, the Debtors propose to mail, or cause to be mailed, solicitation packages (the "**Solicitation Packages**") containing the information described below as soon as practicable after entry of the Proposed Order approving the Disclosure Statement, but commencing no later than two business days after the date of entry of such order (the "**Solicitation Date**"), to the U.S. Trustee and holders of Claims or Interests in Voting Classes, as required by Bankruptcy Rule 3017(d).

59.    In accordance with Bankruptcy Rule 3017(d), Solicitation Packages shall contain copies of:

(a)    the Notice of (I) Conditional Approval of Disclosure Statement, (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of the Amended Plan and Disclosure Statement, (IV) Procedures for Objecting to the Confirmation of the Amended Plan, and (V) Procedures and Deadline for Voting on the Amended Plan (the "**Combined Hearing Notice**");

(b)    a CD-ROM or USB flash drive containing the (i) Disclosure Statement, which shall include the Amended Plan as an attachment (except as provided

Case 19-35654   Document 1327-1   Filed in TXSB on 07/13/20   Page 24 of 39

below); and (ii) the Proposed Order, as entered by the Court and without attachments; and

(c)     if the recipient is entitled to vote on the Amended Plan (as set forth herein), a Ballot (as defined below) customized for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below, and a postage-prepaid return envelope.[7]

60.     If the recipient is holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Amended Plan (as set forth herein), then it will be served the Combined Hearing Notice and the Notice of Non–Voting Status (as defined and described below) only.

61.     To reduce costs and the impact on the environment, the Debtors propose to send the Disclosure Statement and Amended Plan in electronic format (on a CD-ROM or USB flash drive) instead of printed hard copies.  Moreover, the Amended Plan and Disclosure Statement will be available at no charge via the internet at https://cases.primeclerk.com/EPEnergy/Home-Index.  However, if service by CD-ROM or USB imposes a hardship for any party entitled to receive a copy of the Amended Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a computer or the Internet), the Debtors propose that such party may request a paper copy of the Amended Plan and the Disclosure Statement by contacting Prime Clerk by email at EPEnergyinfo@primeclerk.com, or by telephone at (877) 502-9869 (Toll-Free) or (917) 947-2373 (if calling from outside the U.S. or Canada).  Upon receipt of such request, the Debtors will provide such party with a paper copy of the Amended Plan and the Disclosure Statement at no cost to the party within five (5) days thereafter.

62.     The Debtors will not mail Solicitation Packages to creditors that have Claims that have already been paid in full; *provided, however*, that if any such creditor would be

---

[7] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

entitled to receive a Solicitation Package for any other reason, then the Debtors will send such creditor a Solicitation Package in accordance with the procedures set forth herein.

63.     The Debtors anticipate that the United States Postal Service may return some Solicitation Packages as undeliverable.  The Debtors submit that it is costly and wasteful to mail Solicitation Packages to the same addresses from which mail previously was returned as undeliverable.  Therefore, the Debtors request the Court waive the strict notice requirement and excuse the Debtors from mailing Solicitation Packages to addresses from which the Debtors received mailings returned as undeliverable, unless the Debtors are provided with a new mailing address sufficiently before the Voting Deadline.

64.     Although the Debtors have made, and will make, every effort to ensure that the Solicitation Packages as described herein and as approved by the Court are in final form, the Debtors nonetheless request authority to make non-substantive changes to the Disclosure Statement, the Amended Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Amended Plan, and any other materials in the Solicitation Packages prior to mailing.

65.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and that the proposed Solicitation Packages comply with Bankruptcy Rule 3017(d).  Accordingly, the Debtors request the Court's approval thereof.

F.     **Approval of Notice of Non-Voting Status**

66.     Bankruptcy Rule 3017(d) permits a court to order that the Amended Plan and Disclosure Statement need not be mailed to unimpaired classes.  In lieu thereof, a court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and

address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense . . . and notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to the members of such classes. Fed. R. Bankr. P. 3017(d).

      67.    As discussed above, claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired and presumed to accept the Amended Plan and, therefore, holders in these classes are not entitled to vote on the Amended Plan.  Accordingly, the Debtors propose to mail to holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) in lieu of a Solicitation Package, the Combined Hearing Notice and a notice of non-voting status, substantially in the form attached to the Proposed Order as **Exhibit 2** (the "**Notice of Non-Voting Status**").

      68.    Class 5A (Unsecured Claims), Class 8 (Subordinated Claims), and Class 10 (Other Equity Interests) are Impaired and are expected to receive no recovery under the Amended Plan and, therefore, holders of Claims or Interests in these Classes are deemed to have rejected the Amended Plan and not entitled to vote on the Amended Plan.  Accordingly, the Debtors propose to mail to holders of Class 5A (Unsecured Claims), Class 8 (Subordinated Claims), and Class 10 (Other Equity Interests), in lieu of a Solicitation Package, the Combined Hearing Notice and the Notice of Non-Voting Status.

      69.    The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of the filing of the Amended Plan, (iii) notice of the holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Amended Plan.  In addition, the Non-Voting Status Notice contains the full text of the release, exculpation, and injunction provisions set forth in Article X of the

Amended Plan and advises such holders in Non-Voting Classes that they will be bound by the third-party release provision in Section 10.7 of the Amended Plan unless they timely and properly choose to opt out. The Notice of Non-Voting Status also includes a form to complete and return if the party elects to opt-out of such third-party release provision. The Debtors submit that the Notice of Non-Voting Status satisfies the requirements of paragraph 32 of the Complex Case Procedures regarding consensual releases against non-debtor parties with respect to the holders of Claims or Interests in the Non-Voting Classes.

70.     Additionally, with respect to Class 7 (Intercompany Claims) and Class 11 (Intercompany Interests), the Debtors request a waiver of any requirement to serve the Notice of Non-Voting Status or any other type of notice in connection with solicitation of the Amended Plan because such Claims or Interests are held by the Debtors or the Debtors' affiliates and are Unimpaired by the Amended Plan.

71.     The Debtors submit the above-described notices and procedures with respect to Non-Voting Classes satisfy the requirements of Bankruptcy Rule 3017(d) and, therefore, respectfully request the Court approve them.

**G.      Approval of Forms of Ballots**

72.     Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute to holders of Claims or Interests in Voting Classes that are otherwise eligible to vote (as set forth herein), ballots substantially in the forms attached to the Proposed Order as Exhibits 3, 4, 5, 6, 7, 8, 9, and 10 (collectively, the **"Ballots"**), which are incorporated herein by reference. Although the Ballots are based on Official Bankruptcy Form No. B 314, they have been modified

to address the specific circumstances of these chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate for each Voting Class.

73.     All holders of Claims or Interests in Voting Classes will receive Ballots that include an election regarding certain non-debtor release provisions in the Amended Plan (the "**Non-Debtor Release Provisions**").  Notwithstanding anything contained herein to the contrary, only those holders of Claims or Interests in Voting Classes who vote to reject the Amended Plan or who submit a Ballot but do not vote to accept or reject the Plan may elect to opt out of the third-party release provision in Section 10.7(b) of the Amended Plan.

74.     The Debtors propose to distribute the following two forms of Ballots to holders of 1.125 Notes Claims entitled to vote on the Amended Plan in Class 4 (1.125L Notes Claims): (i) a form of Ballot for a beneficial owner of a 1.125L Notes Claim (the "**1.125L Notes Beneficial Holder**" and the corresponding ballot, the "**1.125L Notes Beneficial Holder Ballot**") and (ii) a form of Ballot for the bank, broker, or other financial institution that holds the 1.125L Notes "in street name" at DTC on behalf of the 1.125L Notes Beneficial Holder (the "**1.125L Notes Nominee**") (or agent thereof) to transmit the votes of one or more beneficial owners (the "**1.125L Notes Master Ballot**").

75.     Finally, the Debtors propose to distribute the following three forms of Ballots, as applicable, to holders of Interests entitled to vote on the Amended Plan in Class 9 (Existing Parent Equity Interests): (i) a form of Ballot for registered holders of Existing Parent Equity Interests (the "**Class 9 Registered Holder Ballot**"); (ii) a form of Ballot for a beneficial holder of Existing Parent Equity Interests (a "**Class 9 Beneficial Holder**," and the corresponding ballot, the "**Class 9 Beneficial Holder Ballot**," together with the 1.125L Notes Beneficial Holder Ballot, the "**Beneficial Holder Ballots**"); and (iii) a form of Ballot for the bank, broker, or other

financial institution "in street name" at DTC on behalf of the Class 9 Beneficial Holder (the "**Class 9 Nominee**," and, together with the Class 4 Nominees, the "**Nominees**) (or agent thereof) to transmit the votes of one or more beneficial owners (the "**Class 9 Master Ballot**" and, together with the 1.125L Notes Master Ballot, the **"Master Ballots"**).  To the extent the administrator of any of the Debtors' employee incentive accounts (an "**Incentive Plan Administrator**") holds Existing Parent Equity Interests and requires assistance soliciting votes from the employee (or former-employee) participants to those incentive accounts, the Debtors seek authorization to permit the Solicitation Agent to coordinate with such Incentive Plan Administrator, including adjusting the applicable Ballot to meet the procedural requirements of the Incentive Plan Administrator.  The Debtors also propose to distribute Ballots to each of the holders of RBL Claims in Class 3, each of the holders of Parent Unsecured Claims in Class 5B, and each of the holders of Convenience Claims in Class 6.

76.     The Debtors request that the Court require such Nominees, upon receipt of the Solicitation Packages, to promptly distribute such Solicitation Packages (including Beneficial Holder Ballots) to Beneficial Holders using the following method within five (5) business days of receipt of the Solicitation Packages:

> The Nominee shall obtain the votes of Beneficial Holders by forwarding to the Beneficial Holders the unsigned Beneficial Holder Ballots, together with the Solicitation Package, a pre-addressed, postage-paid return envelope provided by, and addressed to, the Nominee, and other materials requested to be forwarded. Each such Beneficial Holder must then indicate her, his, or its vote on the Beneficial Holder Ballot, complete the information requested on the Beneficial Holder Ballot, review the certifications contained on the Beneficial Holder Ballot, execute the Beneficial Holder Ballot, and return the Beneficial Holder Ballot to the Nominee. After collecting the Beneficial Holder Ballots, the Nominee should, in turn, complete the Master Ballot compiling the votes and other information from the Beneficial Holder Ballots, execute the Master Ballot, and deliver the Master Ballot to the Voting Agent so that it is RECEIVED by the Voting Agent on or before the Voting Deadline.  Each Nominee should advise its Beneficial Holders to return their Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee

to allow it sufficient time to prepare and return the Master Ballot to the Voting Agent so that it is RECEIVED by the Voting Agent on or before the Voting Deadline.  For the avoidance of doubt, if it is the Nominee's customary practice to transmit the information contained in the Solicitation Package to its Beneficial Holder clients by e-mail or any other method, the Nominee is authorized to follow those customary practices.  Moreover, if it is the Nominee's customary practice to collect votes from its Beneficial Holder clients by telephone, e-mail, "voter information form", or otherwise (in lieu of a Beneficial Holder Ballot), the Nominee is authorized the follow those customary practices.

77.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots from holders of RBL Claims in Class 3, holders of Parent Unsecured Claims in Class 5B, holders of Convenience Claims in Class 6, and registered holders of the Existing Parent Equity Interests in Class 9 (to the extent they are determined to be entitled to vote) via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website maintained by Prime Clerk ("**E-Ballot**").  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing E-Ballot (which allows a holder to submit an electronic signature).  If applicable, instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted through E-Ballot in this manner and the voting party's electronic signature will be deemed to be immediately legally valid and effective.

## H.     The Voting Deadline

78.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan. . . ."  Fed. R. Bankr. P. 3017(c).  The Debtors anticipate mailing substantially all of the Solicitation Packages by no later than five business days after entry of the Proposed Order.  Based on such schedule, the Debtors propose that, to be counted as a vote to

accept or reject the Amended Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent: (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via E-Ballot so that (in each instance) it is actually received by the Voting Agent no later than August 19, 2020 at 4:00 p.m. (Prevailing Central Time) or some other date fixed by the Court (the "**Voting Deadline**"). The Debtors submit that the proposed 24-day solicitation period is a sufficient period within which creditors can make an informed decision whether to accept or reject the Amended Plan.

## I.    Tabulation Procedures

79.    **For Votes Cast Not by (or on Behalf of) Beneficial Holders of the Debtors' Securities**. The Debtors request that the following procedures apply to tabulating Ballots cast not by (or on behalf of) Beneficial Holders of the Debtors securities:

(a)    Whenever a holder of Claims or Interests casts more than one Ballot voting the same Claim(s) or Interests before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent, and thus, to supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked; absent further order of the Court;

(b)    Whenever a holder of Claims or Interests casts a Ballot that is properly completed, executed and timely returned to the Voting Agent, but does not indicate either an acceptance or rejection of the Amended Plan, the Ballot will not be counted.

(c)    Whenever a holder of Claims or Interests casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent, but indicates both an acceptance and a rejection of the Amended Plan, the Ballot will not be counted.

(d)    A holder of Claims or Interests shall be deemed to have voted the full amount of its Claim or Interest in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor. Any such holder's Ballot that partially accepts and partially rejects the Amended Plan, between the same or multiple Debtors, will not be counted.

(e)     A holder of Claims or Interests against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f)     Whenever a holder of Claims or Interests casts multiple Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

(g)     A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h)     The following Ballots shall not be counted:

   i.     Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

   ii.    Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

   iii.   Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Amended Plan;

   iv.    Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim or Interest in a Voting Class;

   v.     Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

   vi.    Any Ballot which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

   vii.   Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

(i)     The Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular ballot at any time, either before or after the close of voting.

80.     **For Votes Cast by (or on Behalf of) Beneficial Holders of the Debtors'**

**Securities.** The Debtors request that the following procedures apply to tabulating Ballots cast by

(or on behalf of) Beneficial Holders (as defined in Exhibit 4 or Exhibit 8 to the Proposed Order, as applicable) of 1.125L Notes Claims and Existing Parent Equity Interests:

(a)     votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees of certain 1.125L Notes Claims and Existing Parent Equity Interests, as applicable, as of the Voting Record Date, as evidenced by the applicable records.  Votes submitted by a Nominee will not be counted in excess of the amount of such Claims or Interests held by such Nominee as of the Voting Record Date;

(b)     if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominee;

(c)     if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Amended Plan in the same proportion as the votes to accept and to reject the Amended Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date, of certain 1.125L Notes Claims or Existing Parent Equity Interests; and

(d)     a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

81.     To assist in the solicitation process, the Debtors request that the Court grant the Voting Agent the authority, without the obligation, to contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies. The Debtors request that the Court give authorization to the Debtors and/or their Voting Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, which determination will be final and binding.

82.     The Debtors request that the Court grant authority to the Debtors to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

83.     The Debtors further request from the Court authorization to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Claim holders.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

**J.      Plan Supplement**

84.     Pursuant to the Amended Plan, the Debtors intend to file a "Plan Supplement" consisting of a supplemental appendix to the Amended Plan which shall contain, but not be limited to (a) the New Corporate Governance Documents of EP Energy, including, for the avoidance of doubt, the Stockholders Agreement, (b) the number and slate of directors to be appointed to the New Board to the extent known and determined, (c) with respect to the members of the New Board, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (d) the EIP Term Sheet; (e) the Exit Credit Agreement, (f) a schedule of retained Causes of Action, (g) the Schedule of Rejected Contracts, (h) the New Executive Employment Agreement Term Sheet, and (i) the New Common Share Distribution Procedures.

85.     The Debtors request that the Court authorize the Debtors to file the Plan Supplement with the Bankruptcy Court no later than ten (10) calendar days before the Voting Deadline (the "**Plan Supplement Filing Deadline**").

86.     The Debtors submit that the Plan Supplement Filing Deadline is prudent and attainable under the circumstances of these chapter 11 cases.  Thus, the Debtors respectfully request that the Court approve the Plan Supplement Filing Deadline.

**K.     Procedures with Respect to the Assumption of Executory Contracts and Unexpired Leases**

87.     Section 8.1 of the Amended Plan provides that each of the Debtors' executory contracts and unexpired leases will be deemed assumed by the applicable Debtor as of the Effective Date, unless such agreement:  (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.  Section 8.1 of the Amended Plan further provides that the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) seven (7) days before the Combined Hearing, or such earlier time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Rejected Contracts, to add or remove any executory contract or unexpired lease; *provided* that if the Combined Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) seven (7) days immediately before the rescheduled or continued Combined Hearing; *provided*, *further* that the Debtors may amend the Schedule of Rejected Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

88.     Pursuant to Section 8.2 of the Amended Plan, the Debtors shall serve a Cure Notice on parties to executory contracts and unexpired leases no later than thirty (30) days prior to the Combined Hearing.  Section 8.2 of the Amended Plan further provides that if a counterparty

to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign does not receive a Cure Notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0). Any counterparty to an executory contract or unexpired lease shall have until the Objection Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount listed on the Cure Notice. Further, the Debtors intend to serve the Combined Hearing Notice on all parties to executory contracts and unexpired leases, reflecting the Debtors' intention to assume the executory contracts or unexpired leases in connection with the Amended Plan (unless one of the exceptions set forth in section 8.1 of the Amended Plan applies) and indicating that the Cure Amount shall be zero dollars ($0) unless such counterparty received a separate Cure Notice.

89.     Section 8.2 of the Amended Plan also provides that the Bankruptcy Court will determine any Assumption Dispute (as defined in the Amended Plan) by entry of an order; *provided*, that the Debtors or the Reorganized Debtors, as applicable, may settle any Assumption Dispute without any further notice to any other party or any action, order, or approval of the Bankruptcy Court; *provided, further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such Assumption Dispute.

90.     The Debtors respectfully submit that the notice of the Debtors' assumption of executory contracts and unexpired leases is appropriate under the circumstances.

## **Emergency Consideration**

91.     The Debtors respectfully request emergency consideration of this Motion. The Debtors' goal is to preserve and maximize the value of the Debtors' estates, which hinges in part on minimizing the time spent in chapter 11.

## **Notice**

92.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas, (ii) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn:  Kristopher M. Hansen, Esq., Frank A. Merola, Esq., Kenneth Pasquale, Esq., Erez R. Gilad, Esq., and Jonathan D. Canfield, Esq.) and Fox Rothschild LLP, 2843 Rusk Street, Houston, TX 77003 (Attn:  Trey Monsour, Esq.), counsel to the Creditors' Committee, (iii) Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, TX 77002 (Attn: Charles S. Kelley, Esq.) and Mayer Brown LLP, 71 S Wacker Drive, Chicago, IL 60606 (Attn: Sean T. Scott, Esq.), counsel to the Prepetition RBL Agent, (vi)  Morrison & Foerster LLP, 250 W 55th Street, New York, NY 10019 (Attn: Dennis L. Jenkins, Esq.), counsel to the Ad Hoc 1.125L Noteholder Group, (v) the Securities and Exchange Commission, (vi) the Office of the United States Attorney, 1000 Louisiana Street, Suite 2300, Houston, TX 77002, (vii) the Internal Revenue Service, and (viii)  all other parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

## **No Previous Request**

93.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 13, 2020
      Houston, Texas

/s/ Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
Stephanie Morrison (admitted *pro hac vice*)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
      Clifford.Carlson@weil.com
      Stephanie.Morrison@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Ronit Berkovich (admitted *pro hac vice*)
Scott R. Bowling (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Matt.Barr@weil.com
      Ronit.Berkovich@weil.com
      Scott.Bowling@weil.com
      DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## EXHIBIT A

**Proposed Order**